**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **DEAN OBEIDALLAH,**<br><br>  Plaintiff,<br><br>  v.<br><br>**ANDREW B. ANGLIN,**<br>  DBA *Daily Stormer*,<br><br>and<br><br>**MOONBASE HOLDINGS, LLC,**<br>  DBA Andrew Anglin,<br><br>and<br><br>**JOHN DOES NUMBERS 1–10,**<br>   **Individuals who also assisted in**<br>   **the publication or representation**<br>   **of false statements regarding**<br>   **Mr. Obeidallah,**<br><br>  **Defendants.** | **CASE NO.**<br><br>**JUDGE**<br><br>**MAGISTRATE JUDGE** |
| **COMPLAINT WITH JURY DEMAND** ||

— **NATURE OF THE ACTION** —

This is an action that arises from the false and defamatory statements in a news article

published by Defendants about Plaintiff Dean Obeidallah. Mr. Obeidallah is a comedian,

commentator, and host of a national daily radio show. With malice and reckless disregard,

Defendants published false statements asserting that Mr. Obeidallah is a terrorist and fabricated

evidence to support those false accusations. As a result, Mr. Obeidallah has endured threats, suffered

emotional distress, and his reputation has been permanently damaged. He brings this case to force Defendants to answer for their malicious conduct.

— **INTRODUCTION** —

1.      On June 1, 2017, Defendants Andrew B. Anglin, Moonbase Holdings, LLC, and John Doe Defendants 1–10 ("John Doe Defendants") published an article entitled "Dean Obeidallah, Mastermind Behind Manchester Bombing, Calls on Trump to Declare Whites the Real Terrorists" (the "Article") on a popular Neo-Nazi and white supremacist website, the *Daily Stormer*.[1] In the Article, Defendants falsely claim that Plaintiff Dean Obeidallah planned and executed the horrific terrorist attack that took place at an Ariana Grande concert in Manchester, United Kingdom a little over a week earlier (on May 22, 2017) (the "Manchester Bombing"). That terrorist attack resulted in 23 deaths and 250 injuries; many of the victims were children.

2.      The *Daily Stormer* holds itself out as a news website that is willing to do "the job other news websites won't do." The *Daily Stormer* has also stated that it is "REAL NEWS" and views itself as "competing with the likes of CNN and the New York Times." It is registered as a trade name with the Ohio Secretary of State with its "general nature of business" being an "Internet news website." On information and belief, it is among the most popular white nationalist / Neo-Nazi websites on the Internet. Data collected by Alexa, a website tracking company, suggests dailystormer.com is visited millions of times each month. For example, from May 13 to June 12, 2017, the "dailystormer.com" was visited approximately 3.18 million times. By comparison, during

---

[1] A copy of the Article is attached as **Exhibit A**. It was publically available at https://www.dailystormer.com/dean-obeidallah-mastermind-behind-manchester-bombing-calls-on-trump-to-declare-whites-the-real-terrorists/ (last visited August 15, 2017). It remains publically available via Tor browser at http://dstormer6em3i4km.onion/dean-obeidallah-mastermind-behind-manchester-bombing-calls-on-trump-to-declare-whites-the-real-terrorists/ (last visited August 15, 2017).

that same period the news website "c-span.org" was visited 2.64 million times. The *Daily Stormer* audience is large, and its articles are routinely distributed beyond those who visit the website.

3. The Article on the *Daily Stormer* makes numerous false statements of fact regarding Mr. Obeidallah. The Article falsely states that Mr. Obeidallah is the "mastermind" of the Manchester Bombing, has celebrated the death of the innocent victims, and has encouraged others to carry out similar attacks. The Article also falsely states that Mr. Obeidallah has fled to Syria and is wanted by law enforcement for his alleged role in that terrorist act. It also claims, without basis, that Mr. Obeidallah uses his radio show and social-media platforms to promote terrorism and violence towards non-Muslims.

4. Mr. Obeidallah is a comedian and frequent political commentator. He is one of the nation's best known Muslim American comedians, and hosts the national daily radio program "The Dean Obeidallah show" on SiriusXM radio. In addition, he writes regular political commentary and can be seen frequently in the national media discussing political issues of the day. As Defendants are fully aware, he is not a terrorist and had no involvement in the Manchester Bombing. Nor is Mr. Obeidallah affiliated with ISIS or any other terror group. Defendants' factual assertions to the contrary are false, offensive, and damaging to Mr. Obeidallah's reputation as a comedian and political commentator.

5. Defendants published and/or republished ("published") the Article without regard to the truth or falsity of the statements it contained. Instead, Defendants either knew the falsity of those statements or acted in reckless disregard of the truth, and chose to manufacture evidence to convince readers of the Article that Mr. Obeidallah is a confessed terrorist.

6. Defendants took numerous steps, including mixing fact with falsehood, in an effort to create confusion and convince readers that the entirety of the Article is, in fact, true. The Article includes fabricated Twitter messages, purportedly captured from Mr. Obeidallah's Twitter account,

in which Defendants make it appear that Mr. Obeidallah is claiming a role in the Manchester Bombing, professing support for further terrorist attacks, and acknowledging that he is wanted by law enforcement. To deceive its readers about the fabricated nature of the Article and falsified Twitter messages, Defendants included genuine messages from Mr. Obeidallah's Twitter account and referenced his real writings and actual guests. Defendants further sought to convince readers that the false statements of fact were true by publishing the Article on the *Daily Stormer*, which represents itself as a news website, claiming to do "the job other news websites won't do."

7. In the Article, Defendants included a "widget" linked to Mr. Obeidallah's actual Twitter account. A "widget" is a technical capability offered by Twitter that enables users to display a live Twitter feed on an Internet website. The widget reproduces actual messages from Mr. Obeidallah's Twitter account (which often indicate Mr. Obeidallah's physical location) in the Article on the *Daily Stormer* website. Defendants embedded the Twitter widget in the Article for readers who "want to go confront" Mr. Obeidallah.

8. The Article invites *Daily Stormer* readers to "confront" Mr. Obeidallah. Following the release of the Article, several threats were made regarding Mr. Obeidallah. He also fears violence in the absence of enhanced security, with good reason: readers of the *Daily Stormer* have been tied to violent attacks, both in the United States and abroad. Further exacerbating the risk of violent confrontations, Defendants in fact sought to convince *Daily Stormer* readers that Mr. Obeidallah is a fugitive wanted by law enforcement for his "confessed" role in the Manchester Bombing, thus opening the door to attempts by *Daily Stormer* readers to confront someone they now believe to be a fugitive from justice. Mr. Obeidallah reasonably fears for his security and cannot reasonably ignore the violent threats that have been generated by Defendants' Article. He has also suffered and continues to suffer emotional distress as a result of the Article.

9.      Mr. Obeidallah is an ardent believer in and defender of the First Amendment. He recognizes the importance of freedom of speech and political discourse, regardless of viewpoint. But the First Amendment does not license defamation. Defendants published false factual statements and fabricated evidence on the *Daily Stormer* that was meant to—and did, in fact—harm Mr. Obeidallah's reputation and business, jeopardize his physical safety, and cause emotional distress and suffering. Defendants have similarly defamed other individuals and entities with the intention of inciting violence, injuring reputations, and harming business opportunities, all while seeking to obtain profits for their own business ventures. Such defamatory publications were likewise made with intent or reckless disregard for the truth and reflect Defendants' pattern and practice of publishing false statements without regard for consequence.

10.     On June 15, 2017, in response to the Article, Mr. Obeidallah, through his counsel, wrote to Defendant Anglin and the *Daily Stormer* to request that the Article be removed and a retraction posted.[2] Mr. Obeidallah received no response, and, to date, Defendants have failed to remove the false statements from the Article or address the violent threats about Mr. Obeidallah that are posted on the *Daily Stormer* message board. *See* https://www.dailystormer.com/dean-obeidallah-mastermind-behind-manchester-bombing-calls-on-trump-to-declare-whites-the-real-terrorists/ (last visited August 15, 2017). Accordingly, Mr. Obeidallah must resort to litigation.

— PARTIES —

11.     Plaintiff Dean Obeidallah is a comedian and commentator who hosts *The Dean Obeidallah Show* on SiriusXM radio; he is the first American Muslim to host a national radio show. He also writes political-opinion pieces to several news outlets, including CNN and *The Daily Beast*. Mr. Obeidallah is a resident of New York.

---

[2] A copy of the letter Mr. Obeidallah sent to Defendant Anglin on June 15, 2017 is attached as **Exhibit B**. As of this date, Mr. Anglin has provided no response.

12.     On information and belief, Defendant Andrew B. Anglin is a resident of Worthington, Ohio. He is the founder and publisher of a website called the *Daily Stormer*, which appears at www.dailystormer.com. Defendant Anglin registered "Daily Stormer" as a trade name with the Ohio Secretary of State in December 2016.[3] The trade name registration for the "Daily Stormer" was signed by Greg Anglin, Defendant Anglin's father, as an authorized representative. On information and belief, Defendant Anglin writes many of the articles on the *Daily Stormer* website; he also maintains the *Daily Stormer* web domain.

13.     Defendant Moonbase Holdings, LLC is an Ohio, for-profit, limited-liability corporation registered by Andrew B. Anglin that, on information and belief, assists in the operation of the *Daily Stormer* and provides Defendant Anglin and the *Daily Stormer* financial support. Defendant Anglin filed the articles of incorporation for Moonbase Holdings with the Ohio Secretary of State in September 2016.[4] Defendant Anglin signed the articles of incorporation as Defendant Moonbase Holdings' statutory agent. In January 2017, Defendant Moonbase Holdings registered the trade name "Andrew Anglin" with the Ohio Secretary of State.[5] The trade-name registration for "Andrew Anglin" was signed by Greg Anglin, Defendant Anglin's father, as an authorized representative of Defendant Moonbase Holdings.

14.     On information and belief, Defendants John Doe Numbers 1–10 are individuals who assisted in the publication of the Article on the *Daily Stormer* or elsewhere, or who have threatened Mr. Obeidallah's personal safety. On information and belief, John Doe Defendants knowingly published the false statements contained in the Article regarding Mr. Obeidallah.

---

[3] A copy of the trade name registration for "Daily Stormer" is attached as **Exhibit C**.

[4] A copy of the articles of incorporation for Moonbase Holdings is attached as **Exhibit D**.

[5] A copy of the trade name registration for "Andrew Anglin" is attached as **Exhibit E**.

— JURISDICTION AND VENUE —

15.     This action arises under Ohio law.

16.     This Court has jurisdiction under Article III of the United States Constitution and 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interests and costs, and there is a diversity of citizenship.

17.     This Court has personal jurisdiction over Andrew B. Anglin because, on information and belief, he is a resident of Ohio and has caused tortious injury to Mr. Obeidallah inside the state. Defendant Anglin has also registered the trade name "Daily Stormer" with the Ohio Secretary of State and conducts business within the state under that name.

18.     This Court has personal jurisdiction over Moonbase Holdings, LLC because Moonbase Holdings is a domestic, for-profit, limited-liability corporation registered in Worthington, Ohio with the Ohio Secretary of State. Defendant Moonbase Holdings has also registered the trade name "Andrew Anglin" with the Ohio Secretary of State and conducts business within the state under that name. Defendant Moonbase Holdings has also caused tortious injury to Mr. Obeidallah inside the state.

19.     The Court has personal jurisdiction over John Doe Defendants 1-10 because, on information and belief, they have caused tortious injury to Mr. Obeidallah inside the state.

20.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because at least one of the Defendants resides in Worthington, Ohio. Venue is also proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in Worthington, Ohio, and under 28 U.S.C. § 1391(b)(3) because at least one of the Defendants is subject to the Court's personal jurisdiction regarding to this Action.

— FACTUAL ALLEGATIONS —

**The defamatory article**

21.     The *Daily Stormer* holds itself out as a news website that is willing to do "the job other news websites won't do." According to Alexa, a prominent website tracking company owned by Amazon, from May 13 – June 12, 2017 the *Daily Stormer* was the most popular white nationalist / Neo-Nazi website on the Internet, and it rivaled other, more mainstream news websites in terms of traffic:

a.     The *Daily Stormer* is ranked 4,594 in the United States, which on information and belief places it in the top 200 news sites in the United States.

b.     The *Daily Stormer* is estimated to have had 3.18 million visits, with 11.4 million page views, during this time period.

c.     Among websites deemed "similar" by Alexa based on audience overlap, the *Daily Stormer* is far more popular than its closest competitor, which is estimated to have had 1.44 million visits, with 5.98 million page views, during this time period.

d.     The *Daily Stormer*'s audience exceeds that of more mainstream news websites in terms of traffic. C-Span's website was visited 2.64 million times, with 6.06 million page views, during the same period. Similarly, *Roll Call*, a news site covering developments in the U.S. Congress, was visited 2.64 million times, with 3.00 million page views, during this time period.

e.     The *Daily Stormer*'s articles are routinely distributed beyond those who visit the website. A total of 1,526 websites link to the *Daily Stormer*, including Yahoo, MSNBC, BBC, CNN, and *Forbes*.

22.     On June 1, 2017, Defendants wrote and published on the *Daily Stormer* an article entitled "Dean Obeidallah, Mastermind Behind Manchester Bombing, Calls on Trump to Declare Whites the Real Terrorists." The Article was authored by "Andrew Anglin." Defendants thereafter republished the *Daily Stormer* Article on Twitter and elsewhere.

23.     The Article refers to Mr. Obeidallah as an "ISIS terrorist" and "the mastermind behind the Machester [sic] Arianacaust," which is a reference to the Manchester Bombing. It also claims that Mr. Obeidallah is a "confessed terrorist wanted by Europol, MI-5, Interpol and a litany of other international authorities." As Defendants knew, these statements are false. Mr. Obeidallah, in fact, has no affiliation to ISIS, is not a terrorist, and is not wanted by any law enforcement authorities, including Europol, MI-5, and Interpol.

**Defendants ignored their obligation
to investigate the truth of their claims
and instead published fabricated evidence**

24.     Defendants published the false statements in the Article with knowledge of the falsity of those statements or with reckless disregard for the truth.

25.     News outlets widely reported the identities of many of those suspected of planning and perpetrating the Manchester Bombing, including the bomber, Salman Abedi, before the Article's publication. Mr. Obeidallah, of course, had no involvement in the Manchester Bombing and was never identified as a suspect by any news outlet. On information and belief, Defendants, with malice and knowledge, or reckless disregard, ignored these widespread news reports in publishing the Article, and Defendants possessed no information to support their false statements of facts regarding Mr. Obeidallah.

26.     On information and belief, Defendants conducted no independent investigation regarding any of the Article's false statements of fact regarding Mr. Obeidallah. Defendants ignored

readily available public information to assert that Mr. Obeidallah planned the Manchester Bombing, was wanted by international law enforcement, and/or that he fled to Syria to seek asylum.

27.     With malice and knowledge of the falsity of the Article's statements, or reckless disregard for the truth, Defendants mixed fact with falsehood in an effort to create confusion and convince readers that the entirety of the Article is, in fact, true.

a.      Defendants fabricated Twitter messages, purportedly authored by Mr. Obeidallah to convince the Article's readers that Mr. Obeidallah had admitted a role in the Manchester Bombing, encouraged others to launch similar attacks, was wanted by law enforcement, and posed a threat to public safety. Those fabricated messages are intended to closely resemble genuine messages found on Mr. Obeidallah's Twitter account. Mr. Obeidallah's name and likeness are juxtaposed against the false statements of fact, and the fabricated messages mimic the number of replies, "retweets," and "likes" associated with the genuine message from Mr. Obeidallah's account. The fabricated messages also reference the dates and times of Mr. Obeidallah's actual appearances in the weeks before the Article's publication. The fabricated Twitter messages from the Article are discussed *infra* in Paragraphs 28 – 44.

b.      To confuse readers and prevent them from identifying which of the Article's statements were false, Defendants included some authentic, unaltered material authored by Mr. Obeidallah. This includes reference to an article Mr. Obeidallah recently wrote for *The Daily Beast*, genuine messages from Mr. Obeidallah's Twitter account, and a "widget" displaying newly posted message from that account.

     c.     Defendants published the Article on the *Daily Stormer*, which represents itself as a news website. The *Daily Stormer*, through Publisher "Andrew Anglin," claims to do "the job other news websites won't do." The *Daily Stormer* is registered as a trade name with the Ohio Secretary of State by Defendant Anglin, with its "general nature of business" being an "Internet news website." *See* **Ex. C**. In December 2016, Defendant Anglin referred to the *Daily Stormer* as "a newspaper" and expressed the goal of "becom[ing] one of the top twenty-five news sites in the world" over the next decade. The *Daily Stormer* continues to represent itself as a news website, claiming on June 27, 2017 that it is "REAL NEWS" and that with better funding it "would now be competing with the likes of CNN and the New York Times."

28.     For example, the Article states that, following the Manchester Bombing, Mr. Obeidallah "caught a flight to Turkey and was smuggled across the border into Syria by the Erdogan military." It further states that "[o]nce safe within the Caliphate, Obeidallah declared responsibility for the attack via Twitter." The Article included the following image purporting to be a message captured directly from Mr. Obeidallah's Twitter account:

**Defendants' fabricated message – No. 1**



29.     On information and belief, Defendants intended this fabricated Twitter message

discussed *supra* in Paragraph 28 to resemble a genuine message that Mr. Obeidallah posted to his

Twitter account on May 27, 2017 at 7:15 AM, which appears below. Defendants mimicked the

number of replies, "retweets," and "likes" associated with that message in an effort to conceal that it

was fabricated.[6] Defendants also included the same hashtag reference—#AMJoy—that Mr.

Obeidallah uses regularly on his Twitter account. In his actual Twitter message, Mr. Obeidallah did

not claim to have planned the Manchester bombing or suggest that he has fled to Syria.

Mr. Obeidallah is not a terrorist, has no terrorist affiliation, and, contrary to Defendants' fabricated

Twitter message, has never claimed responsibility for any terrorist act.

---

[6] There are minor differences between the numbers of replies, "retweets," and "likes" reflected in images of Defendants' fabricated Twitter messages and the legitimate messages throughout this Complaint. The numbers for the legitimate messages are slightly higher because they were collected on June 30, 2017, approximately one month after Defendants created the fabricated messages.

**Mr. Obeidallah's message – No. 1**



30.    The Article also asserted that "Twitter has refused to suspend his account" and that Mr. Obeidallah "has continued to broadcast on Sirius-XM and has even appeared on CNN to talk about how he planned the attack, and encouraged others to carry-out more such attacks." While Mr. Obeidallah continued to appear on his daily radio show and on CNN, he has neither talked about planning terrorist attacks nor encouraged others to carry out such attacks.

31.    In one instance, the Defendants' fake Twitter message states that "Akhi Salman Abedi struggled to gain Allah's merciful blessing, and his reward is paradise eternal." Mr. Salman Abedi was the actual perpetrator of the Manchester Bombing. The Article included the following image purporting to be a message captured directly from Mr. Obeidallah's Twitter account:

**Defendants' fabricated message – No. 2**



32. On information and belief, Defendants intended the fabricated Twitter message discussed *supra* in Paragraph 31 to resemble a genuine message that Mr. Obeidallah posted to his Twitter account on May 28, 2017 at 6:04 AM, which appears below. Defendants' fabricated message mimics the number of replies, "retweets," and "likes" associated with the actual message in an effort to conceal their fabrication. Mr. Obeidallah linked to the same *New York Times* article discussing the Manchester bombing suspect as appears in Defendants' fabricated message, but Mr. Obeidallah never stated that the Manchester Bombing suspect would be rewarded with paradise eternal. Defendants took these steps to convince readers that Mr. Obeidallah actually authored the fake Twitter message contained in the Article and to link Mr. Obeidallah to the actual Manchester Bombing suspect.

**Mr. Obeidallah's message – No. 2**



33.    The Article also falsely claims that "since successfully gaining asylum in Syria, [Mr. Obeidallah] has repeatedly bragged about the attack, trying to disguise his pride under 'glory to Allah' nonsense." The Article states that Mr. Obeidallah "discussed how Moslems should find 'the whitest places in America' to do their attacks." The Article included the following image purporting to be a message captured directly from Mr. Obeidallah's Twitter account:

**Defendants' fabricated message – No. 3**



34.     On information and belief, Defendants intended this fabricated Twitter message discussed *supra* in Paragraph 33 to resemble a genuine message that Mr. Obeidallah posted to his Twitter account on May 31, 2017 at 6:10 AM, which appears below. Defendants' fabricated message mimics the number of replies, "retweets," and "likes" associated with the actual message in an effort to conceal their fabrication. But, unlike Defendants' fabricated message, Mr. Obeidallah did not claim responsibility for the Manchester Bombing. Contrary to Defendants' false statements, Mr. Obeidallah had no role in the planning or perpetration of the Manchester Bombing, has not claimed responsibility for that heinous act, and has not expressed support for those who perpetrated that attack.

**Mr. Obeidallah's message – No. 3**



35.     The Article also claimed that Mr. Obeidallah invited another comedian on his radio show "to talk about how Moslems could carry out Manchester-type terrorist attacks in America." The Article included the following image purporting to be a message captured directly from Mr. Obeidallah's Twitter account:

**Defendants' fabricated message – No. 4**



36.     On information and belief, Defendants intended this fabricated Twitter message discussed *supra* in Paragraph 35 to resemble a genuine message that Mr. Obeidallah posted to his Twitter account on May 30, 2017 at 1:32 PM, which appears below. Defendants' fabricated message mimics the number of replies, "retweets," and "likes" associated with the actual message in an effort to conceal their fabrication. W. Kamau Bell was, in fact, a guest on Mr. Obeidallah's SiriusXM show on May 30. Contrary to Defendants' false statements, neither Mr. Obeidallah, Mr. Bell, nor anyone

else on Mr. Obeidallah's SiriusXM radio show promoted "Manchester-type terrorist attacks," whether in the United States or abroad.

**Mr. Obeidallah's message – No. 4**



37.    The Article also contends that Mr. Obeidallah "was invited onto CNN to explain how he carried out the bombing, and to give advice to others planning similar attacks." The Article included the following image purporting to be a message captured directly from Mr. Obeidallah's Twitter account:

**Defendants' fabricated message – No. 5**



38.     On information and belief, Defendants intended the fabricated Twitter message discussed *supra* in Paragraph 37 to resemble a genuine message that Mr. Obeidallah posted to his Twitter account on May 30, 2017 at 8:03 PM, which appears below. Defendants' fabricated message mimics the number of replies, "retweets," and "likes" associated with the actual message in an effort to conceal their fabrication. The fabricated message also references an actual, planned appearance by Mr. Obeidallah on CNN Tonight that evening at 11:30 PM to prevent readers from discovering their fabrication. Contrary to Defendants' false statements, Mr. Obeidallah did not claim to be the "mastermind" of the Manchester Bombing in that message, nor did he express plans to discuss that terrorist act on CNN Tonight.

**Mr. Obeidallah's message – No. 5**



39.     The Article also shows the following image purporting to be a message captured directly from Mr. Obeidallah's Twitter account, in which Mr. Obeidallah appears to express support for the Manchester Bombing and its perpetrator, Salman Abedi.

**Defendants' fabricated message – No. 6**



40.     On information and belief, Defendants intended the fabricated Twitter message discussed *supra* in Paragraph 39 to resemble a genuine message that Mr. Obeidallah posted to his Twitter account on May 31, 2017 at 6:10 AM, which appears below. Defendants' fabricated message mimics the number of replies, "retweets," and "likes" associated with the actual message in an effort to conceal their fabrication. In fact, Defendants used the same template to fabricate this Twitter message as the Twitter message discussed *supra* in Paragraph 33. Contrary to Defendants' false statements, Mr. Obeidallah's message did not claim responsibility for the Manchester Bombing or express support for those who perpetrated that terrorist attack.

**Mr. Obeidallah's message – No. 6**



41.     The Article states that Mr. Obeidallah "did an entire 3 hour Sirius-XM broadcast speculating about whether more of those injured in the attack would die in the hospital, thus increasing his 'score.'" The Article also states that "[p]eople were calling in to complain about him doing this bombing, and he just called them 'infidel pigs' and said 'you're next' and hung up on them." To support these false claims, the Article included the following image purporting to be a message captured directly from Mr. Obeidallah's Twitter account:

**Defendants' fabricated message – No. 7**



42.     On information and belief, Defendants intended this fabricated Twitter message discussed *supra* in Paragraph 41 to resemble a genuine message that Mr. Obeidallah posted to his Twitter account on May 31, 2017 at 3:05 PM, which appears below. Defendants' fabricated message mimics the number of replies, "retweets," and "likes" associated with the actual message in an effort to conceal their fabrication. Defendants used the actual image from Mr. Obeidallah's SiriusXM promotion, along with the real telephone number of his SiriusXM show, for the same reason. Mr. Obeidallah did, in fact, post a message to Twitter about his show on May 31, 2017, but never suggested that the death of more than 20 innocent victims in the Manchester Bombing constituted "a pretty good score," nor did he state that he hoped "more will die in [the] hospital."

Mr. Obeidallah has also never threatened persons calling in to his radio show, nor has he ever referred to them as "infidel pigs."

**Mr. Obeidallah's message – No. 7**



43.     The aforementioned statements discussed in Paragraphs 28 – 42 contained in the Article (among others) are false, misleading, and defamatory.

44.     Moreover, Defendants fabricated the images purporting to be messages from Mr. Obeidallah's Twitter account identified in Paragraphs 28, 31, 33, 35, 37, 39, and 41, and the images were published on the *Daily Stormer* and/or republished elsewhere.

45.     Defendants' inclusion of a widget in the Article that is linked to Mr. Obeidallah's actual Twitter account also is meant to both convince the reader that the article is true and to provide readers who "want to go confront" Mr. Obeidallah with an opportunity to do so.

**Readers respond to the article with violent threats**

46.     In response to the Article, several commenters threatened Mr. Obeidallah with

violence and/or death. As described below, readers of the Article suggested Mr. Obeidallah should

die to pay for the actions falsely attributed to him in the Article.

47.     The following comment appeared on the message board, including a threat to

"drone that faggot into eternity":



The post's use of "faggot" is a reference to Mr. Obeidallah. The post states that the Article's false

statements regarding Mr. Obeidallah has the author "steaming mad with a hell-rage." The post

threatens to kill Mr. Obeidallah through an armed drone attack.

48.     The following comment appeared on the message board, including the invitation to

"look down this barrel and verify if my gun is clean like a good terrorist":



The post's use of "Dean" is a reference to Mr. Obeidallah. The post threatens to kill Mr. Obeidallah by gunshot to the head and features an individual pointing a handgun at the camera.

49.     The following comment appeared on the message board, including a threat to "hang" Mr. Obeidallah:



The post's use of "beaner" is a reference to Mr. Obeidallah. The post threatens to kill Mr. Obeidallah by hanging.

50.     The following comment appeared on the message board, including the threat that "Dean better pray that he dies of natural causes before we get there":



The post's use of "Dean" is a reference to Mr. Obeidallah. The post threatens to kill Mr. Obeidallah

and similarly situated persons, and further proposes that Mr. Obeidallah be targeted once the killing

begins.

51.     The following comment appeared on the message board, including the threat that

Mr. Obeidallah "just earned himself a spot at the gallows":



The post's use of "dude" is a reference to Mr. Obeidallah. The post threatens to kill Mr. Obeidallah

by hanging. The author suggests, based on the Article's false statements, that Mr. Obeidallah has

"earned" such a death.

52.     The violent threats discussed in Paragraphs 47–51 are among the many directed at

Mr. Obeidallah (as well as the broader Muslim community) in response to the Article.

53.     These violent comments and commenters directly violate the *Daily Stormer*'s

supposed "Disclaimer," which states: "Anyone suggesting or promoting violence in the comments

section will be banned, permanently."

54.     On information and belief, none of the individuals threatening to kill Mr. Obeidallah have been "banned" from the *Daily Stormer*.

55.     Defendants have refused to delete the aforementioned comments, ignoring their own policies and Mr. Obeidallah's request, through counsel, that Defendant Anglin and the *Daily Stormer* "delete comments threatening [Mr. Obeidallah's] security."

56.     Before reading the Article, Mr. Obeidallah understood that prior acts of violence had been motivated at least in part by what the perpetrators read on the *Daily Stormer*. Dylann Roof, the man convicted of a racially motivated attack in Charleston, South Carolina that resulted in nine deaths, reportedly read and commented on the *Daily Stormer*. Thomas Mair, the convicted murderer of British politician Jo Cox, reportedly read the *Daily Stormer* website in the months before his attack. James Jackson, a man facing murder, terrorism, and hate crime charges for traveling from Baltimore, Maryland to New York, New York (where Mr. Obeidallah resides) and stabbing a man in a racially-motivated attack, is also reportedly a *Daily Stormer* reader and commentator. As a result, when Mr. Obeidallah read the Article and the comments to it, Mr. Obeidallah believed he needed to, and did in fact, take steps necessary to ensure his personal safety. Mr. Obeidallah's concerns were reasonable.

57.     As stated above, the Article falsely states that Mr. Obeidallah is a self-confessed terrorist wanted by law enforcement for his role in the horrific Manchester Bombing. The Article further falsely states that Mr. Obeidallah is encouraging others to plan similar attacks. Mr. Obeidallah remains fearful that individuals who read the Article and believe its contents view him as a terrorist and may seek to harm him in the future.

58.     As a result of the Article and the threats Mr. Obeidallah received, Mr. Obeidallah notified security for both SiriusXM, the station that hosts his daily radio show, and *The Daily Beast*, a

media outlet for which he had recently written an article that is referenced in the Article on the *Daily Stormer* website.

## Mr. Obeidallah has been harmed by the article

59. Mr. Obeidallah has suffered numerous harms as a result of Defendants' tortious and unlawful acts. Mr. Obeidallah will continue to suffer these harms because Defendants' false statements of fact remain available for viewing on the *Daily Stormer* website, and because the Article's false statements have been republished by other websites and numerous *Daily Stormer* readers.

60. Mr. Obeidallah has suffered, and will continue to suffer, emotional distress and fear for his life and personal well-being as a result of Defendants' unlawful and tortious acts, including the Article's false statements. This is based on, among other things, the numerous, credible threats against Mr. Obeidallah set forth in the Article's comments section.

61. Mr. Obeidallah has suffered, and will continue to suffer, reputational harm as a result of Defendants' unlawful and tortious acts, including the Article's false statements. For example, Defendants have published false statements of fact claiming that Mr. Obeidallah is the "mastermind" of the Manchester Bombing. Those false statements of fact have damaged, and will continue to damage, Mr. Obeidallah's reputation.

62. Mr. Obeidallah is a successful comedian and political commentator whose livelihood is based, in part, on his reputation and ability to appeal to large, diverse groups of individuals. Defendants' unlawful and tortious acts, including the Article's false statements and assertion that Mr. Obeidallah has used appearances on CNN and his national radio show to promote terrorism, have damaged, and will continue to damage, Mr. Obeidallah's livelihood and economic opportunities.

63.    Defendants' false statements of fact set forth in the Article are directed at persons in the United States and international communities—*i.e.*, Mr. Obeidallah's audience for both his comedy and political commentary.

64.    Mr. Obeidallah's fears and concern for his reputation, business, and personal safety are compounded by the fact that, on information and belief, the *Daily Stormer* is the most-viewed white supremacist / Neo-Nazi website on the Internet.

      a.    On information and belief, the *Daily Stormer* web domain is the most frequented white supremacist / Neo-Nazi website on the Internet. *See supra* Paragraph 21.

      b.    The *Daily Stormer* has an international audience. On information and belief, approximately 45.5% of its traffic originates within the United States, but it also has substantial traffic from persons located in the United Kingdom, Germany, Canada, and Spain, among other countries.

      c.    It is probable that even persons who do not adhere to the white supremacist / Neo-Nazi ideologies will discover the Article's false statements of fact regarding Mr. Obeidallah. Approximately 1,492 websites link to the *Daily Stormer* web domain, including heavily-frequented websites such as Yahoo, MSN, BBC, and CNN.

65.    Defendants' false statements of fact set forth in the Article are now, and will continue to be, readily accessible to persons searching the Internet (*e.g.*, Google) for content regarding Mr. Obeidallah. Articles published on the Internet are available without limitation or duration.

66.    Mr. Obeidallah's audience relies, and will continue to rely, on Internet-based research of Mr. Obeidallah when determining whether to attend his comedic performances or consume

media in which he appears as a commentator. Mr. Obeidallah's audience is likely to forever have access to Defendants' false statements of fact set forth in the Article when researching Mr. Obeidallah and, due to Defendants' fabricated Twitter messages and other efforts to conceal their deception, will not be able to ascertain from the context that those statements are false. This has diminished, and will continue to diminish, Mr. Obeidallah's appeal which, in turn, diminishes Mr. Obeidallah's livelihood and economic opportunities.

67.     Persons responsible for contracting with Mr. Obeidallah for his comedy and political commentary have relied, and will continue to rely, on Internet-based research of Mr. Obeidallah when determining whether to retain his services. Thus, these persons are likely to forever have access to Defendants' false statements of fact set forth in the Article when researching Mr. Obeidallah and, due to Defendants' fabricated Twitter messages and other efforts to conceal their deception, may not be able to ascertain that those statements are false from the context. This has diminished, and will continue to diminish, Mr. Obeidallah's ability to contract for new comedic and commentating services, as well as Mr. Obeidallah's ability to negotiate favorable compensation and contract terms for his comedic and commentating services.

68.     Defendants have engaged in conduct similar to that discussed *supra* in Paragraph 1 through 67 with regard to other individuals and entities. This conduct involved the publication of defamatory statements with the intent of inciting violence, injuring reputations, and harming business opportunities, all while seeking to obtain profits for their own business ventures. Such defamatory publications were likewise made with intent or reckless disregard for the truth and reflect Defendants' pattern and practice of publishing false statements without regard for consequence.

— CAUSES OF ACTION —

FIRST CAUSE OF ACTION:
LIBEL

69.     Mr. Obeidallah incorporates by reference and realleges Paragraph 1 through 68, as if

set forth in full herein.

70.     Defendants have defamed Mr. Obeidallah by publishing the Article and the false and

misleading statements about Mr. Obeidallah contained therein, including the statements alleged in

Paragraphs 28 – 42. These statements about Mr. Obeidallah are false, misleading, and libelous, both

explicitly and by implication.

71.     Defendants' published the statements with knowledge of their falsity or reckless

disregard of their falsity. Among other things, Defendants' fabrication of Twitter messages that did

not originate from Mr. Obeidallah's Twitter account demonstrates their knowledge that these

statements were untrue. In addition, these statements were published with the intent of harming Mr.

Obeidallah's reputation and career, and thus published with malice, both in law and in fact.

72.     Defendants' statements constitute libel *per se*, for which Mr. Obeidallah is entitled to

recover presumed damages for injury. Defendants' statements also constitute libel *per quod.* As a

result of all of these false statements, Mr. Obeidallah has suffered, and will continue to suffer, injury

in fact, including loss of good will and injury to his reputation.

73.     The publication of the Article damaged Mr. Obeidallah's reputation, will continue to

harm his reputation, and will continue to impact Mr. Obeidallah's appeal for future engagements as

a comedian and political commentator.

74.     Finally, as described above, the Article's unfounded statements and fabricated

evidence demonstrate that Defendants acted deliberately, purposefully, and without regard for the

truth. Defendants acted with malice and the intent to harm Mr. Obeidallah's reputation and with

knowledge that their accusations were false. Moreover, Defendants' publication of the Article is

consistent with their publication of similarly defamatory statements both before and after publication of the Article. Defendants' pattern of publication of false statements and/or reckless disregard for the truth renders punitive damages appropriate in this action.

**SECOND CAUSE OF ACTION:**
**FALSE LIGHT INVASION OF PRIVACY**

75.     Mr. Obeidallah incorporates by reference and realleges Paragraph 1 through 74, as if set forth in full herein.

76.     Defendants intended to and did publish the Article regarding Mr. Obeidallah that included fabricated Twitter messages in which Mr. Obeidallah purported to confess and/or celebrate his role as the mastermind of the Manchester Bombing.

77.     Mr. Obeidallah, like any reasonable person, was highly offended by being labeled a member of ISIS and/or a terrorist mastermind. Any association with and/or attribution of responsibility for the tragic deaths and injury of hundreds of innocent concert goers in Manchester, United Kingdom is deeply offensive to any reasonable person.

78.     Defendants ignored widespread new reports regarding the identities of those responsible for planning and perpetrating the Manchester Bombing, none of which named Mr. Obeidallah as a suspect.

79.     Defendants conducted no independent investigation as to the truth of the assertion that Mr. Obeidallah played a role in and/or planned the Manchester Bombing.

80.     Defendants' knowledge of the falsity of their statements is highlighted by the fact that Defendants created fake Twitter messages to support these false accusations. Defendants included in the Article both fake and real statements by Mr. Obeidallah to convince readers that the false statements attributed to Mr. Obeidallah were real.

81.     Defendants acted without regard to the false light in which the Article would place Mr. Obeidallah. Defendants also acted without regard to the likelihood such false statements would lead to violent threats made to Mr. Obeidallah. Indeed, Defendants specifically invited readers to "confront" Mr. Obeidallah.

### THIRD CAUSE OF ACTION:
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

82.     Mr. Obeidallah incorporates by reference and realleges Paragraph 1 through 81, as if set forth in full herein.

83.     Defendants intended to cause Mr. Obeidallah severe and serious emotional distress through, among other things, their publication of false statements of fact and their efforts to elicit threats of death and bodily harm against Mr. Obeidallah.

84.     Alternatively, Defendants knew or should have known that their actions would result in Mr. Obeidallah's severe and serious emotional distress by, among other things, impacting his reputation amongst his audience and potential employers and eliciting threats of death and bodily harm against Mr. Obeidallah in response to their false and defamatory statements.

85.     Defendants failed to take steps to address the violent threats to Mr. Obeidallah that were posted in response to the Article.

86.     Defendants' conduct, including the publication of false statements and the fabrication of Twitter messages that purport to show Mr. Obeidallah as a terrorist responsible for the Manchester Bombing, and eliciting threats of death and bodily harm against Mr. Obeidallah, is extreme and outrageous, and is beyond all possible bounds of decency. Such conduct is so atrocious that it is utterly intolerable in a civilized society.

87.     Defendants' conduct is the proximate cause of Mr. Obeidallah's emotional distress. Mr. Obeidallah did not suffer from emotional distress before learning of Defendants' false and

defamatory statements and the concomitant threats of death and bodily harm that the Article

elicited. Mr. Obeidallah has continually feared for his life and well-being since so learning.

88.     No reasonable person could be expected to endure the distress that Mr. Obeidallah

has suffered since learning of Defendants' false statements about him and the resulting threats to his

personal safety.

**FOURTH CAUSE OF ACTION:**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

89.     Mr. Obeidallah incorporates by reference and realleges Paragraph 1 through 88, as if

set forth in full herein.

90.     Defendants negligently caused Mr. Obeidallah severe emotional distress by

publishing false statements of fact regarding Mr. Obeidallah's purported involvement in the

Manchester Bombing and solicitation of further terrorist activity. Defendants knew or should have

known such false statements would cause severe emotional distress to Mr. Obeidallah.

91.     Defendants knew or should have known that the Article's false statements would

result in threats of death and bodily harm against Mr. Obeidallah.

92.     Defendants' false statements of fact regarding Mr. Obeidallah resulted in numerous

threats of death and physical harm against Mr. Obeidallah, and Mr. Obeidallah has been aware of

those threats since shortly after the statements were published.

93.     Defendants failed to take steps to address the violent threats to Mr. Obeidallah that

were posted in response to the Article.

94.     Defendants' conduct is the proximate cause of Mr. Obeidallah's severe emotional

distress. Mr. Obeidallah did not suffer from emotional distress before learning of Defendants' false

and defamatory statements and the concomitant threats of death and bodily harm that the Article

elicited. Mr. Obeidallah has continually feared for his life and well-being since so learning.

FIFTH CAUSE OF ACTION:
COMMON-LAW MISAPPROPRIATION OF
MR. OBEIDALLAH'S NAME AND LIKENESS

95.     Mr. Obeidallah incorporates by reference and realleges Paragraph 1 through 94, as if set forth in full herein.

96.     Defendants have misappropriated Mr. Obeidallah's name and likeness in the Article for commercial and non-commercial purposes.

97.     Defendants have misappropriated Mr. Obeidallah's name in the Article, thereby associating Mr. Obeidallah with the false statements of fact contained in the Article.

98.     Defendants have misappropriated numerous photos reflecting Mr. Obeidallah's likeness in the Article, thereby associating Mr. Obeidallah with the false statements of fact contained in the Article.

99.     Mr. Obeidallah did not consent to Defendants' use of his name or likeness.

100.    Defendants used Mr. Obeidallah's name and likeness in connection with a product, merchandise, goods, and services. This includes the following:

A.      Promotion of the *Daily Stormer* and the reputation of "Andrew Anglin," the *Daily Stormer*'s Publisher;

B.      Enhancement of the value of Defendant Moonbase Holdings and its trade name "Andrew Anglin";

C.      Solicitation of donations from readers in exchange for content found on the *Daily Stormer*, including the Article; and

D.      Directing *Daily Stormer* readers to visit the website's corporate sponsor, Smerff Electrical, a link to which appears on the same page as the Article.



101. Defendants' use of Mr. Obeidallah's name and likeness was not in relation to a matter of legitimate public interest because the Article's sole purpose was to distribute false and defamatory statements regarding Mr. Obeidallah, and elicit threats of death and bodily injury against Mr. Obeidallah.

<b>SIXTH CAUSE OF ACTION:<br>CIVIL CONSPIRACY</b>

102. Mr. Obeidallah incorporates by reference and realleges Paragraph 1 through 101, as if set forth in full herein.

103. Defendants have combined to defame Mr. Obeidallah in the Article and cause harm to both his reputation and his business, as outlined in Causes of Action 1 – 5.

104. On information and belief, the malicious combination of Defendants involves the following:

A. Defendants conspired to publish false and defamatory statements regarding Mr. Obeidallah through the *Daily Stormer*;

B. Defendants conspired to elicit threats of death and bodily harm against Mr. Obeidallah;

C. Defendants solicited funds and/or otherwise maintained the *Daily Stormer* before and since publishing the Article, without regard for its truth or falsity; and

Page 36 of 38

D. Defendants failed to remove violent death threats from the *Daily Stormer*
message board, in violation the *Daily Stormer*'s own user policy.

105. Defendants' unlawful acts have caused injury to Mr. Obeidallah's person and
property. First, Mr. Obeidallah has and will continue to suffer emotional distress as a result of the
false statements and threats that he has received due to Defendants' unlawful acts. Second,
Mr. Obeidallah has and will continue to suffer reputational and other harms as Defendants' unlawful
acts inhibit his ability to appeal to a broad and diverse audience and Defendants' false statements
remain available on the Internet for potential employers to review.

## — PRAYER FOR RELIEF —

For the foregoing reasons, Plaintiff Dean Obeidallah respectfully requests that the Court
grant the following relief:

a. Compensatory damages, including economic and non-economic damages;

b. General damages;

c. Special damages;

d. Punitive damages, including attorneys' fees and costs;

e. Nominal damages;

f. Attorneys' fees, costs, and disbursements, to the extent permitted by law;

g. Such other and further relief as the Court deems just.

— JURY DEMAND —

Plaintiff respectfully demands a trial by jury on all issues triable by a jury.

Respectfully submitted,

*Pro hac vice motions pending*

Abid R. Qureshi (D.C. Bar No .459227)
Christopher J. Fawal (D.C. Bar No. 1004362)
LATHAM & WATKINS LLP
555 Eleventh St, NW, Suite 1000
Washington, D.C. 20004-1304
Phone: 202.637.2200 Fx: 202.637.2201
abid.qureshi@lw.com
christopher.fawal@lw.com

Johnathan Smith (D.C. Bar No. 1029373)
Sirine Shebaya (NY Bar No. 5027461)
Juvaria Khan (D.C. Bar No. 1019748)
MUSLIM ADVOCATES
P.O. Box 66408
Washington, D.C. 20035
Phone: 202.897.1894
johnathan@muslimadvocates.org
sirine@muslimadvocates.org
juvaria@muslimadvocates.org

/s/ *Subodh Chandra        (Trial Counsel)*
Subodh Chandra (OH Bar No. 0069233)
Donald Screen (OH Bar No. 0044070)
THE CHANDRA LAW FIRM LLC
The Chandra Law Building
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
Phone: 216.578.1700 Fx: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Donald.Screen@ChandraLaw.com