IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEAN OBEIDALLAH,<br><br>    Plaintiff,<br><br>      v.<br><br>ANDREW B. ANGLIN,<br>    DBA *Daily Stormer*,<br><br>and<br><br>MOONBASE HOLDINGS, LLC,<br>    DBA Andrew Anglin,<br><br>and<br><br>JOHN DOES NUMBERS 1–10,<br>    Individuals who also assisted in the<br>    publication or representation of false<br>    statements regarding<br>    Mr. Obeidallah,<br><br>    Defendants. | CASE NO. 2:17-CV-00720-EAS-EPD<br><br>Chief Judge Edmund Sargus<br><br>Magistrate Judge Elizabeth Preston Deavers |
| **MOTIONS FOR LEAVE TO CONDUCT LIMITED DISCOVERY IN AID OF SERVICE AND EXTEND TIME FOR SERVICE** | |

### MOTIONS FOR LEAVE TO CONDUCT LIMITED DISCOVERY IN AID OF SERVICE AND EXTEND TIME FOR SERVICE

Plaintiff Dean Obeidallah respectfully moves this Court under Rule 26(d) of the Federal Rules of Civil Procedure for leave to take limited discovery in aid of service before the Rule 26(f) conference. Mr. Obeidallah further moves under Rule 4(m) for an extension of time to serve Defendants. As described in the accompanying Memorandum, good cause supports these requests. Plaintiff also attaches a proposed order for the Court's consideration.

Respectfully submitted,

/s/ Subodh Chandra        (Trial Counsel)

Abid R. Qureshi (D.C. Bar No. 459227)
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004-1304
Phone: 202.637.2200 Fx: 202.637.2201
abid.qureshi@lw.com

Johnathan Smith (D.C. Bar No. 1029373)
Sirine Shebaya (D.C. Bar No. 1019748)
Juvaria Khan (N.Y. Bar No. 5027461)
MUSLIM ADVOCATES
P.O. Box 66408
Washington, D.C. 20035
Phone: 202.897.1894
johnathan@muslimadvocates.org
sirine@muslimadvocates.org
juvaria@muslimadvocates.org

*Admitted pro hac vice*

Subodh Chandra (OH Bar No. 0069233)
Donald Screen (OH Bar No. 0044070)
THE CHANDRA LAW FIRM LLC
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
Phone: 216.578.1700 Fx: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Donald.Screen@ChandraLaw.com

*Attorneys for Plaintiff Dean Obeidallah*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION & SUMMARY OF ARGUMENT ............................................................. 1

II.    MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY IN AID OF SERVICE ......... 3

      A.      Defendant Anglin Is Subject to Suit in Ohio Federal Court ........................................... 5

      B.      Mr. Obeidallah Has Undertaken Diligent Efforts to Locate and Serve
              Defendant Anglin ........................................................................................................... 5

      C.      The Claims in the Complaint Will Survive a Motion to Dismiss................................. 12

      D.      Mr. Obeidallah Seeks Limited Discovery to Uncover Defendant Anglin's
              Location in Order to Effectuate Service...................................................................... 13

III.    MOTION FOR LEAVE TO EXTEND TIME FOR SERVICE ........................................... 13

IV.    CONCLUSION................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Arista Records, LLC v. Does 1-4,*
No. 1:07-CV-1115, 2007 WL 4178641 (W.D. Mich. Nov. 20, 2007) ...................................................3

*Audia v. Rossi Bros. Funeral Home, Inc.,*
748 N.E.2d 587 (Ohio Ct. App. 2000) .............................................................................................14

*Columbia Ins. Co. v. seescandy.com,*
185 F.R.D. 573 (N.D. Cal. 1999) ............................................................................................. 2, 3, 4

*Dailey v. Accubuilt, Inc.,*
944 F. Supp. 2d 571 (N.D. Ohio 2013) .............................................................................................14

*Friedman v. Estate of Presser,*
929 F.2d 1151 (6th Cir. 1991) .............................................................................................15

*Gersh v. Anglin,*
No. 17-CV-00050-DLC-JCL (July 10, 2017) .........................................................5, 9, 10, 16

*Gilson v. Am. Inst. of Alternative Med.,*
62 N.E.3d 754 (Ohio Ct. App. 2016)...............................................................................................14

*McCluskey v. Belford High Sch.,*
No. 2:09-CV-14345, 2010 WL 2696599 (E.D. Mich. June 24, 2010) ........................................... 2, 3

*Rachells v. Cingular Wireless,*
483 F. Supp. 2d 583 (N.D. Ohio 2007) .............................................................................................14

*In re S. Indus. Banking Corp.,*
205 B.R. 525 (E.D. Tenn. 1996) .............................................................................................15

*Seifer v. PHE, Inc.,*
196 F. Supp. 2d 622 (S.D. Ohio 2002) .............................................................................................14

*Stillwagon v. City of Delaware,*
175 F. Supp. 3d 874 (S.D. Ohio 2016) .............................................................................................14

*Wise v. Dep't of Def.,*
196 F.R.D. 52 (S.D. Ohio 1999) .............................................................................................15

## RULES

Fed. R. Civ. P. 1...........................................................................................................................5

Fed. R. Civ. P. 4(m) ................................................................................................................ 3, 15

Fed. R. Civ. P. 26(d) ...................................................................................................................3

## OTHER AUTHORITIES

Andrew Anglin, *Gab Post* (Sep. 29, 2017),
  https://gab.ai/AndrewAnglin/posts/11428668...................................................................11

Andrew Blake, *The Daily Stormer, Neo-Nazi Website, Loses Icelandic Web Address in Latest
  Domain Spat*, WASH. TIMES (Sep. 29, 2017) ..................................................................12

*Daily Stomer Likely Losing Its .IS Domain Today*, THE REYKIAVIK GRAPEVINE (Sep. 29,
  2017), https://grapevine.is/news/2017/09/29/dailystormer-likely-losing-its-is-
  domain-today/;..................................................................................................................12

InfoCorp Investigative Services LLC, *Home*,
  http://www.infocorponline.com/index.php (Oct. 14, 2017) .............................................6

Marc Randazza, *Marc Randazza at VICE News*, https://www.youtube ..................................16

Nellie Bowles, *To Sue Founder of Daily Stormer, a Neo-Nazi Site, First He Must Be Found*,
  NEW YORK TIMES (Aug. 20, 2017) ..................................................................................2

*Where is neo-Nazi site's publisher? Lawyers can't find him.*, AP NATIONAL NEWS (July 7,
  2017) ..............................................................................................................................10

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTIONS FOR LEAVE TO CONDUCT LIMITED DISCOVERY IN AID OF SERVICE AND EXTEND TIME FOR SERVICE

More than two months after the Complaint in this action was filed, Defendant Andrew B. Anglin continues to elude service of process, all the while publicly acknowledging—and mocking—this lawsuit. Plaintiff Dean Obeidallah has hired a private-investigative agency that specializes in effectuating service and has spent nearly $1,000 attempting to identify, locate, and serve Defendant Anglin without success. To locate Defendant Anglin, facilitate service, and vindicate his rights under this litigation, Mr. Obeidallah respectfully requests permission to conduct immediate limited discovery. Mr. Obeidallah further requests an extension of time, by an additional 90 days, to serve all Defendants in this litigation, in order to complete the requested discovery and effectuate service. As detailed below, good cause exists for such relief.

## I.    INTRODUCTION & SUMMARY OF ARGUMENT

Mr. Obeidallah filed the Complaint in this case on August 16, 2017. The Complaint describes Defendants' publication of a false and defamatory news article attributing to Mr. Obeidallah responsibility for a horrific terrorist act in Manchester, United Kingdom (the "Manchester Bombing"). (Compl. ¶¶ 3, 21–23, ECF No. 1.) Defendants published the article on the *Daily Stormer*, a popular Neo-Nazi and white-supremacist website that claims "to do 'the job other news websites won't do.'" (*Id.* ¶¶ 1–2, ECF No. 1.) In addition to numerous false and malicious allegations about Mr. Obeidallah, Defendants altered messages associated with his Twitter account, misleading readers into believing that Mr. Obeidallah was claiming responsibility for the Manchester Bombing. (Compl. ¶¶ 27–45, ECF No. 1.)

Less than two weeks later, on August 29, 2017, Defendant Anglin published another article on his website acknowledging this lawsuit and the Complaint's contents. In that article, Defendant Anglin again published false and defamatory statements about Mr. Obeidallah. At the same time,

Mr. Obeidallah was engaged in efforts to serve Defendant Anglin, both in his capacity as an individual defendant and the registered agent for Defendant Moonbase Holdings, LLC ("Moonbase Holdings"). To assist in those efforts, Mr. Obeidallah has engaged a licensed professional private-investigative agency whose staff has more than 28 years of experience in investigations and service of process. (*See* Ex. 1, InfoCorp Decl.) Despite extensive work and diligence, these investigators have not been able to locate Defendant Anglin and are currently unable to perfect service.[1] Meanwhile, as detailed below, Defendant Anglin continues to engage in the very same defamatory conduct that is the subject of this lawsuit.

This Court has broad authority to order discovery under Federal Rule of Civil Procedure 26(d) and may authorize it to aid service. *See, e.g., McCluskey v. Belford High Sch.*, No. 2:09-CV-14345, 2010 WL 2696599, at *2 (E.D. Mich. June 24, 2010) (finding "there is good cause to permit Plaintiffs to conduct discovery in advance of the Rule 26(f) conference" where "Plaintiffs have made diligent attempts to identify and locate each Defendant"); *Columbia Ins. Co. v. seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999) (courts may order limited discovery "to permit the plaintiff to learn the identifying facts necessary to permit service on the defendant."). Mr. Obeidallah respectfully requests permission to serve limited discovery on particular third parties to learn Defendant Anglin's current location.

Mr. Obeidallah further requests that the Court extend time for service of all Defendants for an additional 90-day period to February 12, 2018. Under Rule 4(m) of the Federal Rules of Civil Procedure, Mr. Obeidallah has 90 days from the filing of the Complaint (until November 14, 2017)

---

[1] Defendant Anglin is no stranger to litigation. He is a defendant in another civil action, currently pending in the U.S. District Court for the District of Montana, and the plaintiff in that manner is similarly unable to locate and serve him. (*See* Ex. 2, *Gersh* Affidavit of Non-Service; *see also* Nellie Bowles, *To Sue Founder of Daily Stormer, a Neo-Nazi Site, First He Must Be Found*, NEW YORK TIMES (Aug. 20, 2017), https://www.nytimes.com/2017/08/20/ technology/theyre-trying-to-sue-a-white-supremacist-first-he-must-be-found.html?mcubz=0.)

to serve Defendants. The Court "must extend the time for service for an appropriate period" where "the plaintiff shows good cause for" its failure to effect service within that 90-day period. Fed. R. Civ. P. 4(m). Good cause exists in this matter to extend the 90-day period because Defendants Anglin and Moonbase Holdings are concealing their locations, likely to evade service of process in this and other civil actions.

## II.   MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY IN AID OF SERVICE

Courts enjoy "broad discretion" to order discovery. *Arista Records, LLC v. Does 1-4*, No. 1:07-CV-1115, 2007 WL 4178641, at *1 (W.D. Mich. Nov. 20, 2007). While the Federal Rules of Civil Procedure anticipate that discovery will typically not begin "before the parties have conferred as required as required by Rule 26(f)," they allow for discovery before the Rule 26(f) conference "by court order." Fed. R. Civ. P. 26(d). Consistent with this authority, courts will order expedited discovery where "good cause exists." *McCluskey*, 2010 WL 2696599, at *1; *see also Arista Records*, 2007 WL 4178641, at *1 ("Some courts, under their broad discretion to manage discovery, have allowed expedited discovery prior to a Rule 26 hearing upon a showing of good cause." (citations omitted)). Generally, good cause exists when a plaintiff is unable to serve the summons and complaint on a defendant. *See, e.g.*, *McCluskey*, 2010 WL 2696599, at *2. Courts will order expedited discovery "after filing of the complaint to permit the plaintiff [to] learn the identifying facts necessary to permit service on the defendant." *Columbia Ins. Co.*, 185 F.R.D. at 577.

Courts generally will permit early discovery when the following four circumstances exist:

**(1)**   plaintiff "identif[ies] the missing party with sufficient specificity such that the Court can determine that defendant is a real person or entity who could be sued in federal court," *id.*;

**(2)**   plaintiff "identif[ies] all previous steps taken to locate the elusive defendant" to "ensur[e] that plaintiffs make a good faith effort to comply with the requirements of service of process and specifically identifying defendants," *id.* at 579;

**(3)**   plaintiff "establish[es] to the Court's satisfaction that plaintiff's suit against defendant could withstand a motion to dismiss," *id.*; and

(4)     plaintiff "file[s] a request for discovery with the Court, along with a statement of reasons justifying the specific discovery requested as well as identification of a limited number of persons or entities on whom discovery might be served and for which there is a reasonable likelihood that the discovery process will lead to identifying information about defendant that would make service of process possible."

*Id.* at 580.

As detailed below, Mr. Obeidallah satisfies each of these criteria and therefore good cause exists to support the request for limited discovery. And beyond these criteria, Defendant Anglin's evasion of service while he publically acknowledges and ridicules this lawsuit reinforces the need for early discovery. Indeed, while eluding service, Defendant Anglin persists in the very same misconduct giving rise to this litigation. On August 29, 2017, Andrew Anglin published an article on the *Daily Stormer* entitled "Steven Crowder Allegedly Hunting Manchester Bombing Mastermind Dean Obeidallah In ISIS-Occupied Syria!" (Ex. 3, Aug. 29, 2017 *DS* Article.) In this article, Defendant Anglin acknowledges this lawsuit's existence and his own awareness of the claims at issue in the Complaint by excerpting the Complaint and responding, in detail, to its allegations:

> They are claiming I edited the Tweets.

> That's the reality we're living in here, folks: I can't even keep a website up, and this ADMITTED TERRORIST who is PLANNING MORE ATTACKS from a base in RAQQA is still on TWITTER with a MASTER'S ACCOUNT.

(*Id.* at 2.) By eluding service while persisting in conduct necessitating this litigation, Defendant Anglin is engaged in procedural gamesmanship, attempting to avoid the consequences of his actions in this matter. These evasive tactics are similar to ones Defendant Anglin has employed in another civil action in Montana federal court. *See* 2d Mot. for Extension of Time to Effect Service, *Gersh v. Anglin*, No. 17-CV-00050-DLC-JCL (Sept. 15, 2017), ECF No. 15; 1st Mot. for Extension of Time to Effect Service, *Gersh v. Anglin*, No. 17-CV-00050-DLC-JCL (July 7, 2017), ECF No. 13. The

Montana federal court has twice granted the plaintiff's motion for extension of time to effect service in that action. Ord., *Gersh v. Anglin*, No. 17-CV-00050-DLC-JCL (July 10, 2017), ECF No. 14; Ord., *Gersh v. Anglin*, No. 17-CV-00050-DLC-JCL (Sept. 18, 2017), ECF No. 17. Granting limited discovery at this stage will ensure the "just, speedy, and inexpensive" resolution of this case. *See* Fed. R. Civ. P. 1.

### A. Defendant Anglin Is Subject to Suit in Ohio Federal Court

Defendant Anglin is subject to suit in this matter. He is an individual resident of Worthington, Ohio who represents himself as both the author of the defamatory article and the founder and publisher of the *Daily Stormer*. (Compl. ¶¶ 12, 22, ECF No. 1.) He registered the trade name "The Daily Stormer" with the Ohio Secretary of State. (*Id.* ¶ 12, ECF No. 1; *Id.* Ex. C, ECF No. 1-3.)

Defendant Anglin has also formed Defendant Moonbase Holdings, LLC, an Ohio, for-profit, limited liability corporation. (*Id.* ¶ 13, ECF No. 1; *Id.* Ex. D, ECF No. 1-4.) Defendant Anglin is Moonbase Holdings' registered agent for service of process. Moonbase Holdings has, in turn, registered the trade name "Andrew Anglin" with the Ohio Secretary of State.

### B. Mr. Obeidallah Has Undertaken Diligent Efforts to Locate and Serve Defendant Anglin

Mr. Obeidallah has undertaken diligent efforts to locate and serve Defendant Anglin. For example, before filing this action Mr. Obeidallah reviewed reports from proprietary databases to identify Defendant Anglin's residence. The reports consistently reflected that Defendant Anglin is living in or around Worthington, Ohio. This conclusion was based on information regarding Defendant Anglin's voter registration, driver's license, last known addresses, familial ties, criminal history, and executed documents filed with the Ohio Secretary of State.

After filing this action, Mr. Obeidallah retained InfoCorp Investigative Services, LLC, a process server based out of Columbus, Ohio whose staff "incorporates over 28 years of experience

and specialized training in investigative and legal fields in public and private sectors." (InfoCorp Investigative Services LLC, *Home*, http://www.infocorponline.com/index.php (Oct. 14, 2017); *see also* Ex. 1, InfoCorp Decl. ¶ 2 (InfoCorp's licensing and professional affiliations).) InfoCorp then independently conducted database searches and obtained information from the Ohio Bureau of Motor Vehicles regarding Defendant Anglin's whereabouts. Based on that information and its professional experience, InfoCorp also concluded that Defendant Anglin is living in or around Worthington, Ohio. InfoCorp identified Defendant Anglin's five most recent known addresses. (*See* Ex. 1, InfoCorp Decl. ¶¶ 4–9.) On September 8, 2017, the Court issued summonses directed to these five addresses. (Summonses, ECF No. 13.)

InfoCorp first attempted service at all five addresses on September 12, 2017. (*See* Ex. 1, InfoCorp Decl. ¶ 10(a)–(e).) InfoCorp was able to establish that Defendant Anglin did not reside at two of the five addresses at this time. InfoCorp reattempted service at the three remaining addresses on September 18, 2017, and was then able to establish that Defendant Anglin did not reside at two of those addresses. InfoCorp reattempted service at the last outstanding address on October 2, 2017, and was then able to establish that Defendant Anglin did not reside at that address. *Id.* InfoCorp's efforts at each address, which are further discussed in Exhibit 1, include the following:

- **364 West Lane Avenue, Apartment 117, Columbus, Ohio 43201**: This location corresponds to "River Watch Towers," a multi-resident apartment building. The address, including the apartment number, was identified as one of Defendant Anglin's previous addresses based on the aforementioned search reports.

  On September 12, 2017, an InfoCorp investigator found that there was no "Apartment 117." An employee in River Watch Towers' leasing office stated that this likely refers to the 11th Floor, Apartment 17, which is a common mistake. The investigator attempted service at the 11th floor, Apartment 17, but no one answered the door.

  On September 18, 2017, an InfoCorp investigator returned and spoke to [Unrelated Individual][2], an employee in River Watch Towers' leasing office. [Unrelated Individual]

---

[2] Mr. Obeidallah is not publicly disclosing the names of innocent third parties with whom InfoCorp communicated during its investigation for fear of reprisal by Defendant Anglin, but will make those

stated that residents sometimes provide their post office box number rather than apartment number. [Unrelated Individual] searched and found Post Office Box 117 was related to Apartment 609. The investigator attempted service at Apartment 609 but found no one present. [Unrelated Individual] also searched for Defendant Anglin's name in River Watch Towers' portal, which reflects all current and prior residents. [Unrelated Individual] was unable to identify Defendant Anglin as a current or former resident, concluding that he had "never stayed" at the River Watch Towers.

On October 2, 2017, an InfoCorp investigator returned and spoke to [Unrelated Individual], a manager in River Watch Towers' leasing office. The manager identified the last names of persons residing in Apartments 609 and 17 on the 11th Floor. This confirmed that Anglin does not reside in either apartment. Additionally, the investigator again attempted service at each apartment but found no one present.

- **918 Colony Way, Columbus, Ohio 43235**: This location is a single-family home. It was identified as one of Defendant Anglin's previous addresses based on the aforementioned search reports.

    On September 12, 2017, an InfoCorp investigator attempted service at the address but found no one was present. The investigator took a photograph of a placard at the address stating: "House of [Unrelated Individual] Established March 20, 2004."

    On September 18, 2017, an InfoCorp investigator again attempted service. The investigator spoke to [Unrelated Individual], who stated that a family purchased the home from Greg Anglin, Defendant Anglin's father. [Unrelated Individual] reported that the Anglins no longer reside at this address.

- **6827 North High Street, Suite 121, Worthington, Ohio 43085**: This location is a multi-unit office building. It was identified as one of Defendant Anglin's previous addresses based on the aforementioned search reports. Defendant Anglin also listed it as his address in designating himself Moonbase Holdings' registered agent for service of process.

    On September 12, 2017, an InfoCorp investigator attempted service at this location. The investigator found no one present at Suite 121, but noted that the company directory stated that "Morningstar Ministries" occupied the space. On information and belief, this is a business owned by Greg Anglin, Defendant Anglin's father. Placards next to Suite 121 further suggested that the suite was occupied by Alpha Psychiatric Services of Worthington and Commonplace Counseling. The investigator spoke to a man who identified himself as

---

names available to the Court for *in camera* review upon request. In other circumstances, Defendant Anglin has targeted individuals he apparently believes are exposing his misdeeds. For example, Defendant Anglin published an article on the *Daily Stormer* in February 2017 titled, *Local Fake News Gives Anglin the Hitler Treatment*. In the article, Defendant Anglin targeted two local reporters who had written about his ties to Worthington, Ohio. Defendant Anglin published the reporters' home addresses, dates of birth, and contact information. Defendant Anglin also published photos of the reporters' homes, vehicles, license plates, and family members, including young children. Defendant Anglin stated he was doing so to provide "an example of how actions have consequences, and how maybe there are some people in the world you just shouldn't fuck with."

"[Unrelated Individual]" and was associated with [Unrelated Business], a business occupying a suite within the same building. [Unrelated Individual] stated that he had heard of Defendant Anglin through hearsay, but had never met Defendant Anglin and believed that Morningstar Ministries moved out of the space two to three months ago.

On September 18, 2017, an InfoCorp investigator was able to enter Suite 121. The investigator noted a stack of mail directed to Greg Anglin, Defendant Anglin's father, sitting on the unoccupied reception desk. The investigator was eventually greeted by [Unrelated Individual], who stated that Greg Anglin was rarely present in the office, although he would typically collect his mail directed to the office later in the week. [Unrelated Individual] stated he had no knowledge of Defendant Anglin or Moonbase Holdings. The investigator also returned to [Unrelated Business], the business occupying [suite within the same building]. The investigator again spoke to [Unrelated Individual], as well as [Unrelated Individual], who was also affiliated with [Unrelated Business]. [Unrelated Individual] and an unidentified third party (likely a [Unrelated Business] employee) stated that they had never seen Defendant Anglin in the building, but were aware that Greg Anglin rented out space in Suite 121.

▪ **979 High Street, Suite 2, Worthington, Ohio 43085:** This location is a multi-unit office building. It was identified as one of Defendant Anglin's previous addresses based on the aforementioned search reports.

On September 12, 2017, an InfoCorp investigator attempted service at this location. The investigator observed that "no pertinent business names or labeling was observed that had relation to the subject," providing a photograph of each unit's labeled mailboxes to confirm this observation. The investigator spoke to [Unrelated Individual], who identified himself/herself as an employee of [Unrelated Company], which is located within the building. [Unrelated Individual] disclosed that Defendant Anglin's name "sounded familiar," and that his father, Greg Anglin, had rented office space in the building for counseling services. But, [Unrelated Individual] further stated that Greg Anglin had left the space more than three years prior.

▪ **7407 Brandshire Lane, Apartment B, Dublin, Ohio 43017:** This location is within a multi-unit apartment community. It was identified as one of Defendant Anglin's previous addresses based on the aforementioned search reports.

On September 12, 2017, an InfoCorp investigator questioned [Unrelated Individual]. [Unrelated Individual] stated that she did not know Defendant Anglin's name and disclosed that she had lived in the apartment for one year.

(*Id.* ¶ 10(a)–(e).)[3] Based on the information gleaned from InfoCorp investigators' exhaustive efforts,

InfoCorp has concluded that Defendant Anglin does not reside at any of the five aforementioned

addresses. (*Id.*)

---

[3] InfoCorp also obtained information from the U.S. Postal Service regarding two P.O. Boxes associated with Defendant Anglin, one of which he uses to receive donations for the *Daily Stormer*.

It is not surprising that InfoCorp's diligent efforts to locate and serve Defendant Anglin proved unsuccessful. Defendant Anglin is currently named as a defendant in two other civil suits, one in Montana federal court and the other in Ohio state court, and in neither case has the plaintiff (Ms. Tanya Gersh) been able to locate and serve Defendant Anglin. As detailed in Ms. Gersh's motions for extension of time filed with the Montana federal court, the process server in that action attempted service on Defendant Anglin at seven last known addresses within days of the *Gersh* complaints being filed. (*See generally* Ex. 2, *Gersh* Affidavit of Non-Service.) Each attempt was unsuccessful. (*Id.*) Ms. Gersh's process server reached only Mr. Mitch Anglin, Defendant Anglin's brother, who refused to assist in locating Defendant Anglin. *Id.* Similarly, on May 18, 2017, the Franklin County Clerk of Court sent the federal summons and pleading in the *Gersh* action via certified U.S. mail to Defendant Anglin at four of his last known addresses. Dinielli Decl. ¶ 10, *Gersh v. Anglin*, No. 17-CV-00050-DLC-JCL (July 7, 2017), ECF No. 13-1. Each mailing was returned undeliverable and unclaimed. *Id.* Defendant Anglin has managed to avoid service of process in the *Gersh* actions despite publicly acknowledging the existence of these cases and retaining counsel to represent him in these matters. (Ex. 4, Andrew Anglin, *Andrew Anglin Has Retained America's #1 First Amendment Lawyer to Represent Him Against SPLC*, THE DAILY STORMER (June 10, 2017); Ex. 5, *Where is neo-Nazi site's publisher? Lawyers can't find him.*, AP NATIONAL NEWS (July 7, 2017).)

The likelihood that Mr. Obeidallah can successfully locate Defendant Anglin's Ohio residence without limited discovery is slim even though he is likely in the area. The majority of Defendant Anglin's immediate family resides in or around Worthington, Ohio. Defendant Anglin's brother, Mr. Mitch Anglin, has affirmatively refused to facilitate locating Defendant Anglin. (Ex. 2, *Gersh* Affidavit of Non-Service, at 4.) Ms. Gersh's attempt to serve Defendant Anglin by mail at his father's business address—6827 North High Street, Suite 121—also was returned undeliverable

Those P.O. Boxes, which are located in or around Worthington, Ohio, are associated with two of the five last-known addresses where service failed. (Ex. 1, InfoCorp Decl. ¶ 12.)

despite InfoCorp having established that Greg Anglin regularly retrieves mail at this address. (*Id.*) These facts suggest that Defendant Anglin's family is complicit in his efforts to evade service. Moreover, Mr. Obeidallah cannot simply overcome this hurdle by attempting service at addresses of Defendant Anglin's immediate family. A search report for Defendant Anglin, under the heading "Possible Relative Summary," identifies nine persons ranging from 28 to 81 years old. The Franklin County Auditor also reports that Greg Anglin, Defendant Anglin's father, owns at least eight residential properties in Franklin County, Ohio. Thus, in addition to the five addresses where Mr. Obeidallah has already attempted in-person service, he would be required to investigate and attempt service at another 17 addresses.

Defendant Anglin also cannot be located through his employment because, based on currently known information, Mr. Anglin has never held any gainful employment. Defendant Anglin is not married, but he has a girlfriend based on Defendant Anglin's recent post on the social-media site, Gab.com. But, on information and belief, Defendant Anglin's statement that "[s]he's not going to sell me out either way" suggests that the girlfriend is unlikely to cooperate in identifying his Ohio residence. Andrew Anglin, *Gab Post* (Sep. 29, 2017), https://gab.ai/AndrewAnglin/posts/11428668.

Defendant Anglin is aware of the Complaint's contents in this action. He is openly mocking the Court, often referring to this action as an "lolsuit" (*i.e.*, a "laugh out loud" suit):



Defendant Anglin appears to be concealing his location, possibly to avoid service of process. InfoCorp states that, in its "15-year history, it is unusual to find an individual in their early-30s who lacks an established residential address." (Ex. 1 ¶ 14, InfoCorp Decl.) For example, Defendant Anglin's most recent driver's license listed his address as 6827 North High Street, Worthington, Ohio 43085. As explained above, this is a multi-unit office building whose longtime occupants have no knowledge of Defendant Anglin. Most recently, news reports indicate that, in late-September 2017, Icelandic authorities revoked Defendant Anglin's registration of a new *Daily Stormer* web address. This revocation was apparently due to Defendant Anglin's unwillingness to disclose his actual physical location—a requirement for registration of a website in Iceland. Defendant Anglin reportedly told the Icelandic official responsible for web registration that "he would not provide this information as he is concerned that [the Icelandic official] would in turn give this information to the Icelandic police, who may then give it to law enforcement in the United States." Paul Fontaine, *Daily Stomer Likely Losing Its .IS Domain Today*, THE REYKJAVIK GRAPEVINE (Sep. 29, 2017), https://grapevine.is/news/2017/09/29/dailystormer-likely-losing-its-is-domain-today/; Andrew Blake, *The Daily Stormer, Neo-Nazi Website, Loses Icelandic Web Address in Latest Domain Spat*, WASH. TIMES (Sep. 29, 2017), http://www.washingtontimes.com/news/2017/sep/29/daily-stormer-neo-nazi-website-loses-icelandic-web/.

Mr. Obeidallah has made considerable efforts to identify Defendant Anglin's Ohio residence and effectuate in-person service. Further investigation or in-person service attempts are unlikely to prove successful based on Defendant Anglin's lack of meaningful employment, his family and friends' unwillingness to disclose his location, and the likelihood that he is actively concealing his location. As a result, Mr. Obeidallah respectfully requests that the Court authorize limited discovery in aid of serving Defendant Anglin.

###### C.    The Claims in the Complaint Will Survive a Motion to Dismiss.

Mr. Obeidallah alleges six claims against Defendant Anglin and other defendants, all of which will survive a motion to dismiss. The Complaint alleges that Defendants made multiple false and defamatory statements in a publication on the *Daily Stormer* website, including describing Mr. Obeidallah as an "ISIS Terrorist" and the "mastermind behind the Machester [sic] Arianacaust," a reference to the Manchester Bombing. (Compl. ¶¶ 21-23, 33, ECF No. 1.) The Complaint likewise details how Defendants published the article "with knowledge of the falsity of these statements" because the true identities of those responsible for the Manchester Bombing were "widely reported" and "Defendants ignored readily available public information" that confirmed Mr. Obeidallah had no involvement in the bombing. (*Id.* ¶¶ 24-26, ECF No. 1.) The Complaint also details the ways in which Defendants fabricated Twitter messages to support their false and defamatory statements, further demonstrating their knowledge of the statements' falsity. (*Id.* ¶¶ 27-45, ECF No. 1.) In addition, Defendants included a "widget" linked to Mr. Obeidallah's actual Twitter feed "to both convince the reader that the article is true and to provide readers who 'want to go confront' [Mr. Obeidallah] with an opportunity to do so." (*Id.* ¶ 45, ECF No. 1.) Following publication, readers responded to the article with threats of violence against Mr. Obeidallah. (*Id.* ¶¶ 46-57, ECF No. 1.) In response to these threats, Mr. Obeidallah contacted his employers' security teams because he "fear[ed] for his life," and suffered emotional distress as a result. (*Id.* ¶¶ 58, 60, ECF No. 1.) Defendants also misappropriated Mr. Obeidallah's likeness, reproducing an image of Mr. Obeidallah in order to market their and their sponsors' products, goods, and services, and to promote their websites and reputations. (*Id.* ¶¶ 41–42, 100(A)-(B), ECF No. 1.)

Taken together, these and the remaining allegations set forth in the Complaint are sufficient to establish each of Mr. Obeidallah's claims against Defendant Anglin. *See, e.g.*, *Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 909 (S.D. Ohio 2016) (setting out elements of civil-conspiracy claim);

*Dailey v. Accubuilt, Inc.*, 944 F. Supp. 2d 571, 585 (N.D. Ohio 2013) (elements of false-light invasion-of-privacy claim); *Rachells v. Cingular Wireless*, 483 F. Supp. 2d 583, 590 (N.D. Ohio 2007) (elements of intentional-infliction-of-emotional-distress claim); *Seifer v. PHE, Inc.*, 196 F. Supp. 2d 622, 630 (S.D. Ohio 2002) (elements of misappropriation-of-name-or-likeness claim); *Gilson v. Am. Inst. of Alternative Med.*, 62 N.E.3d 754, 770 (Ohio Ct. App. 2016) (elements of libel claim); *Audia v. Rossi Bros. Funeral Home, Inc.*, 748 N.E.2d 587, 589-90 (Ohio Ct. App. 2000) (discussing negligent infliction of emotional distress).

### D. Mr. Obeidallah Seeks Limited Discovery to Uncover Defendant Anglin's Location in Order to Effectuate Service.

Mr. Obeidallah seeks limited early discovery to locate Defendant Anglin. Mr. Obeidallah respectfully requests permission to engage in the following discovery:

- Third-party document subpoenas to various entities upon which Defendant Anglin relies or has relied to publish the *Daily Stormer* and collect funds to promote it, including web hosts, domain registrars, internet-service providers, telephone companies, banks, and residential and commercial-leasing companies;

- Third-party document subpoenas to particular government entities, including the United States Post Office;

- Deposition and document subpoena to Mr. Greg Anglin in connection with his registration of the trade name "Andrew Anglin" as the "authorized representative" of his son, and his communications with his son, Defendant Anglin, or knowledge of his location;

- Deposition and document subpoena to Mr. Mitchell Anglin in connection with his communications with his brother, Defendant Anglin, or knowledge of his location; and

- Any other discovery necessary for the limited purpose of identifying, locating, and serving Defendant Anglin in this action.

## III. MOTION FOR LEAVE TO EXTEND TIME FOR SERVICE

Rule 4(m) provides that plaintiffs must serve defendants within 90 days of the complaint's filing. "[I]f the plaintiff shows good cause for" its failure to serve defendants within that 90-day period, "the court *must* extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m)

(emphasis added). "Good cause to extend the time requirements of Rule 4 may exist . . . when a defendant intentionally evades service of process." *Wise v. Dep't of Def.*, 196 F.R.D. 52, 54 (S.D. Ohio 1999) (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 (6th Cir. 1991)). "Diligence and reasonable efforts to serve process may demonstrate good cause under the rule." *In re S. Indus. Banking Corp.*, 205 B.R. 525, 534 (E.D. Tenn. 1996) (citation omitted).

Mr. Obeidallah's 90-day period to serve all Defendants expires on Tuesday, November 14, 2017. Good cause exists to extend this period with regard to all Defendants. As explained above, Plaintiff has made diligent and reasonable efforts to locate and effect in-person service of Defendants Anglin and Moonbase Holdings (through its registered agent for service, Defendant Anglin). These efforts have failed due to Defendant Anglin's concealment of his location, likely to evade service in this and other civil actions. *See* Section II.B, above. Plaintiff has also emailed Defendant Anglin and Mr. Marc Randazza, an attorney who may represent Defendant Anglin in relation to this action, seeking their cooperation to facilitate service. Neither Defendant Anglin nor Mr. Randazza have responded to Mr. Obeidallah.[4] Mr. Obeidallah is also diligently working to attempt service of Defendant Anglin through certified mailings and Defendant Moonbase Holdings through the Ohio Secretary of State.

Plaintiff respectfully requests that the Court extend the deadline for service of all Defendants for an additional 90 days to February 12, 2017. This extension will allow Plaintiff an opportunity to pursue service of Defendants Anglin and Moonbase Holdings through other processes (*e.g.*, certified

---

[4] The failure to respond is consistent with Defendant Anglin and Mr. Randazza's conduct in the *Gersh* action. Mr. Randazza has publicly acknowledged that he represents Defendant Anglin in the *Gersh* Action. *See* Marc Randazza, *Marc Randazza at VICE News*, https://www.youtube .com/watch?v=dsF6MFFJDw4 (Aug. 4, 2017) (video interview published on Mr. Randazza's YouTube channel in which he acknowledges defending Defendant Anglin in the *Gersh* action). Nonetheless, Mr. Randazza has not responded to numerous emails and telephone calls from Ms. Gersh's attorneys regarding the *Gersh* action. Dinielli Decl. ¶¶ 15–22, *Gersh v. Anglin*, No. 17-CV-00050-DLC-JCL (Sept. 15, 2017), ECF No. 16.

mailings). If the Court grants Plaintiff's Motion for Leave to Take Limited Discovery in Aid of Service, discussed above in Section II, this extension will also ensure Plaintiff has sufficient time to seek and receive responses to its discovery requests. Finally, such an extension is warranted with regard to the Doe Defendants because Plaintiff cannot reasonably identify and attempt service on these unknown individuals until he can take discovery from Defendants Anglin and/or Moonbase Holdings regarding the Doe Defendants' identities.

## IV.  CONCLUSION

Defendant Anglin has a history of evading service of process. Mr. Obeidallah has undertaken more than reasonable efforts to locate and serve him both in his individual capacity and as Moonbase Holdings' registered agent. Without discovery, Mr. Obeidallah will not be able to pursue his lawsuit. Mr. Obeidallah thus, as explained above, respectfully requests that the Court grant his Motion for Limited Discovery in Aid of Service.

Mr. Obeidallah further requests that the Court grant his Motion for Leave to Extend Time for Service, which would extend his time to serve all Defendants by 90 days to February 12, 2018. Good cause exists for such an extension based on Defendant Anglin's concealment of his location and likelihood of continuing to evade service of process. A proposed order is attached.

Respectfully submitted,

/s/ *Subodh Chandra   (Trial Counsel)*

Abid R. Qureshi (D.C. Bar No. 459227)　　　Subodh Chandra (OH Bar No. 0069233)
LATHAM & WATKINS LLP　　　　　　　Donald Screen (OH Bar No. 0044070)
555 Eleventh St., NW, Suite 1000　　　　　THE CHANDRA LAW FIRM LLC
Washington, D.C. 20004-1304　　　　　　1265 W. 6th St., Suite 400
Phone: 202.637.2200 Fx: 202.637.2201　　Cleveland, OH 44113-1326
abid.qureshi@lw.com　　　　　　　　　Phone: 216.578.1700 Fx: 216.578.1800
　　　　　　　　　　　　　　　　　Subodh.Chandra@ChandraLaw.com
Johnathan Smith (D.C. Bar No. 1029373)　　Donald.Screen@ChandraLaw.com
Sirine Shebaya (D.C. Bar No. 1019748)
Juvaria Khan (N.Y. Bar No. 5027461)　　　*Attorneys for Plaintiff Dean Obeidallah*
MUSLIM ADVOCATES

15 of 16

P.O. Box 66408
Washington, D.C. 20035
Phone: 202.897.1894
johnathan@muslimadvocates.org
sirine@muslimadvocates.org
juvaria@muslimadvocates.org

*Admitted pro hac vice*

October 23, 2017