IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEAN OBEIDALLAH, | CASE NO. 2:17-CV-00720-EAS-EPD |
| Plaintiff, | Chief Judge Edmund A. Sargus |
| v. | Magistrate Judge Elizabeth Preston Deavers |
| ANDREW B. ANGLIN,<br>DBA *Daily Stormer*, | |
| and | |
| MOONBASE HOLDINGS, LLC,<br>DBA Andrew Anglin, | |
| and | |
| JOHN DOES NUMBERS 1–10,<br>Individuals who also assisted in the<br>publication or representation of false<br>statements regarding<br>Mr. Obeidallah, | |
| Defendants. | |

**PLAINTIFF'S MOTION FOR LIMITED DISCOVERY IN AID OF DEFAULT JUDGMENT
AGAINST DEFENDANT MOONBASE HOLDINGS, LLC**

### Plaintiff's Motion for Limited Discovery in Aid of Default Judgment Against Defendant Moonbase Holdings, LLC

Plaintiff Dean Obeidallah respectfully moves the Court for limited discovery in aid of default judgment against Defendant Moonbase Holdings, LLC in the above-captioned action. Attached hereto is a memorandum in support which establishes good cause for Mr. Obeidallah's request for leave to take the requested, limited discovery. Attached as Exhibit 30 is a proposed order for the Court's consideration.

Respectfully submitted,

DATED: 03/26/2018

/s/ Abid R. Qureshi

Subodh Chandra (OH Bar No. 0069233)
Donald Screen (OH Bar No. 0044070)
THE CHANDRA LAW FIRM LLC
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
Phone: 216.578.1700 Fx: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Donald.Screen@ChandraLaw.com

Johnathan Smith (D.C. Bar No. 1029373)
Juvaria Khan (N.Y. Bar No. 5027461)
MUSLIM ADVOCATES
P.O. Box 66408
Washington, D.C. 20035
Phone: 202.897.1894
johnathan@muslimadvocates.org
juvaria@muslimadvocates.org
*Admitted pro hac vice*

Abid R. Qureshi (D.C. Bar No. 459227)
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004-1304
Phone: 202.637.2200 Fx: 202.637.2201
abid.qureshi@lw.com
*Admitted pro hac vice*

*Attorneys for Plaintiff Dean Obeidallah*

## <u>TABLE OF CONTENTS</u>

**Page**

I.   FACTUAL BACKGROUND ...........................................................................................2

      A.   Defendant Moonbase was apparently established to camouflage the Internet website on which the Defamatory Article was published..................................................2

      B.   Defendant Moonbase also assisted in the *Daily Stormer*'s financing and operations. .............................................................................................................................4

      C.   After publication of the Defamatory Article, Defendant Moonbase participated in its republication several times.................................................................7

II.   STANDARD OF REVIEW ........................................................................................9

III.   GOOD CAUSE EXISTS FOR DISCOVERY IN AID OF DEFAULT JUDGMENT AGAINST DEFENDANT MOONBASE ....................................................................10

      A.   Discovery will aid Mr. Obeidallah in arguing exigent circumstances warrant the immediate entry of default judgment against Defendant Moonbase. ...................10

      B.   Discovery will aid Mr. Obeidallah in detailing apportionment of liability among defendants.............................................................................................................15

      C.   Discovery will aid Mr. Obeidallah in establishing Defendant Moonbase's malice and the quantum of damages attributable to Defendant Moonbase. ...............16

IV.   REQUEST FOR RELIEF ........................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Adobe Sys. Inc. v. Bunhey*,
  No. 5:13-cv-01365-VAP-OP, 2013 WL 12140304 (C.D. Cal. Oct. 29, 2013) ................................10

*Antoine v. Boutte*,
  No. 3:15-cv-00561-JWD-EWD, 2016 WL 6138252 (M.D. La. Oct. 20, 2016) ...........................10

*Arista Records, LLC v. Does 1-15*,
  No. 1:07-cv-450, 2007 WL 5254326 (W.D. Mich. Nov. 5, 2007) ...........................................................9

*Austin v. Remington*,
  46 Conn. 116 (1878) ................................................................................................................17

*Frow v. De La Vega*,
  82 U.S. 552 (1872) ................................................................................................................11

*Funk v. Lincoln-Lancaster Cty. Crime Stoppers, Inc.*,
  885 N.W.2d 1 (Neb. 2016) ................................................................................................................17

*Gersh v. Anglin*,
  9:17-cv-00050-DLC-JCL (D. Mont.) ................................................................................4, 8

*Int'l Gemmological Inst., Inc. v. Rafaeil*,
  No. 1:05-cv-02395-JGK-JCF, 2005 WL 3880222 (S.D.N.Y. Aug. 17, 2005) .................................11

*Kimberly v. Coastline Coal Corp.*,
  No. 87-6199, 1988 WL 93305 (6th Cir. Sept. 9, 1988) ...........................................................11

*Lucas v. Jolin*,
  No. 1:15-cv-00108-TSB-SKB, 2015 WL 7292836 (S.D. Ohio Oct. 29, 2015),
  *report and recommendation adopted*, No. 1:15-cv-00108-TSB-SKB, 2015 WL 7276808
  (S.D. Ohio Nov. 18, 2015) ................................................................................................................11

*Lucas v. Telemarketer Calling from (407) 476-5680*,
  No. 1:12-cv-00630-TSB-SKB, 2014 WL 5308573 (S.D. Ohio Oct. 16, 2014) .................................11

*Munhwa Broad. Corp. v. Create New Tech. Co.*,
  No. 2:14-cv-04213-RGK-PJW, 2015 WL 12749448 (C.D. Cal. Sept. 2, 2015) ...........................16

*Sheridan v. Oak Street Mortg., LLC*,
  244 F.R.D. 520 (E.D. Wis. 2007) ................................................................................................10

*Sines v. Kessler*,
  No. 3:17-cv-00072-NKM-JCH (W.D. Va. Mar. 14, 2018) ...........................................................13

*Texas Guaranteed Student Loan Corp. v. Dhindsa*,
    No. 1:10-cv-00335-LJO-SKO, 2010 WL 2353520 (E.D. Cal. June 9, 2010) ...................................10

*Twitch Interactive, Inc. v. Johnston*,
    No. 5:16-cv-03404-BLF, 2017 WL 1133520 (N.D. Cal. Mar. 27, 2017)...........................................10

## RULES

Fed. R. Civ. P. 26(d) .............................................................................................................. 1, 9, 18

Fed. R. Civ. P. 26(f) ......................................................................................................................9

## OTHER AUTHORITIES

Casey Michel, *White Supremacists' Favorite Fundraising Site May Be Imploding: Down For
    Over A Month, Hatreon May Be Done For Good*, ThinkProgress,
    https://thinkprogress.org/white-supremacist-fundraiser-dead-bdee08eeb5a6
    (Mar. 13, 2018)..............................................................................................................................6

Merriam-Webster, *Cryptocurrency*, https://www.merriam-
    webster.com/dictionary/cryptocurrency (Mar. 18, 2018)...............................................................12

Monero, https://getmonero.org (last visited Mar. 25, 2018) ..................................................13

Zappitelli CPAs Inc., *Services*, http://zappitellicpasinc.com/services (last visited Mar.
    19, 2018) ......................................................................................................................................15

### Memorandum In Support of Plaintiff's Motion for Limited Discovery in Aid of Default Judgment Against Defendant Moonbase Holdings, LLC

Plaintiff Dean Obeidallah respectfully moves this Court pursuant to Rule 26(d)(1) of the Federal Rules of Civil Procedure for leave to take limited discovery in aid of Mr. Obeidallah's forthcoming motion for default judgment against Defendant Moonbase Holdings, LLC ("Moonbase"). The proposed requests for production and matters for examination are attached as Exhibit 1.

Defendant Moonbase is integral to the *Daily Stormer*'s operations, having processed monetary contributions used to fund its publications and registered the web domain at which the Defamatory Article was initially published.[1] Defendant Moonbase, by and through one of its representatives and agent for service (Defendant Andrew B. Anglin), has regularly acknowledged and mocked the pendency of this federal action. Nonetheless, Defendant Moonbase failed to file a responsive pleading after being properly served and the Clerk has now entered default against it. Mr. Obeidallah must now apply to this Court for default judgment but, as a result of Defendant Moonbase's refusal to respond, Mr. Obeidallah is denied the opportunity to develop the factual record regarding the defendants' liability and damages. Good cause thus exists for the requested discovery, which will enable Mr. Obeidallah to make necessary showings regarding: (**1**) the need for immediate entry of default judgment against Defendant Moonbase; (**2**) how liability should be apportioned among Defendant Moonbase and the other defendants; and (**3**) the extent of Mr. Obeidallah's damages attributable to Defendant Moonbase.

---

[1] The Defamatory Article refers to an article published by the *Daily Stormer* on or around June 1, 2017, by the defendants. The article falsely claims that Mr. Obeidallah, *inter alia*, planned and executed the horrific terrorist attack that took place at an Ariana Grande concert in Manchester, United Kingdom on May 22, 2017. *See* Compl. ¶ 1, ECF No. 1.

I.    FACTUAL BACKGROUND

    While Defendants in this proceeding have actively evaded service and refused to participate in the development of the factual record, Mr. Obeidallah has undertaken considerable efforts to uncover publically available facts.

    **A.    Defendant Moonbase was apparently established to camouflage the Internet website on which the Defamatory Article was published.**

    Defendant Moonbase is an Ohio for-profit, limited liability company ("LLC") that was established by Defendant Anglin on September 2, 2016.  Ex. 2, Moonbase's Articles of Incorp., at 4 (reflecting that "Andrew B. Anglin" signed Defendant Moonbase's Articles of Organization as "a member, manager or other representative").  Defendant Anglin was identified as Defendant Moonbase's statutory agent for service, and "any process, notice or demand" was to be sent to 6827 North High Street, Suite 121, Worthington, Ohio 43085—*i.e.*, Greg Anglin's Office.  *Id.* at 3.  As Mr. Obeidallah has previously explained, occupants of Greg Anglin's Office reported having no knowledge of Defendant Anglin but stated that Greg Anglin regularly visits to collect the mail at that address.  *See* Ex. 3, Decl. of Tina L. Schroeder, ¶ 10(a); *see also* Pl.'s Mot. for Leave to Conduct Ltd. Disc. in Aid of Service 7–8, ECF No. 17 (discussing investigator's encounter with occupants at Greg Anglin's Office.  The Ohio Secretary of State mailed Defendant Moonbase's Articles of Organization to Karen Zappitelli at 5721 Norwich Street, Hilliard, Ohio 43026,  Ex. 2, Moonbase's Articles of Incorp., at 1, an address associated with Zappitelli CPAs Inc. ("Zappitelli CPAs"), Ex. 4, Zappitelli CPAs Contact Us Page, at 1 (stating that Zappitelli CPAs operates at 5275 Norwich Street, Hilliard, OH 43026); Ex. 5, 5275 Record, at 1 (stating that Norwich Street LLC, owner of 5275 Norwich Street, uses "Karen Zappitelle" [sic] for its tax bill mailing); Pl.'s Renewed Mot. for Leave to Conduct Ltd. Disc. in Aid of Service 11–13, ECF No. 23 (explaining location of Zappitelli CPAs and likelihood that same would have relevant documents and information), a certified public accounting practice operating in close proximity to Greg and Andrew Anglin's residences and/or business addresses in

the Worthington, Ohio area,  Ex. 6, Morning Star Summary (identifying address of Morning Star Ministries USA, Inc., owned and operated by Greg Anglin); Ex. 7, Christian Counselors Group Contact Information (identifying address associated with "Anglin Greg-Christian Counselors Group").

Defendant Moonbase was apparently established, at least in part, in order to process credit card donations from the *Daily Stormer*'s readership.  This fact is evident from a December 13, 2016 article published by Defendant Anglin titled *Support the Daily Stormer – With Your Credit Card!*.  Ex. 8, *DS* Dec. 13, 2016 Article.  In that article, Defendant Anglin states:

> Also finally, **it won't say "Daily Stormer" on your credit card bill, but will instead say "Moonbase Holdings,"** which either sounds like a hobby shop or a multilevel marketing scheme run by reptoids [sic].  Anyway, it looks innocuous on your statement.
>
> I thought that was a neat trick.

*Id.* at 13–14 (emphasis added).  That same article directed readers to send cash, checks, and money orders to Greg Anglin's Office which, as explained above, were likely received and deposited by Greg Anglin.  *Id.* at 15.

On December 1, 2016, Defendant Anglin registered "Daily Stormer" as an Ohio trade name, the business of which was listed as an "[i]nternet news website."  Ex. 9, *DS* Trade Name Reg., at 2. Greg Anglin signed the *Daily Stormer*'s trade name registration as Defendant Anglin's "authorized representative."  *Id.* at 3.  The *Daily Stormer*'s "[b]usiness address" was designated as Greg Anglin's Office, and the Certificate was mailed to Defendant Moonbase (ATTN: Andrew Anglin) at Greg Anglin's Office.  *Id.* at 1–2.

On January 5, 2017, Defendant Moonbase registered "Andrew Anglin" as an Ohio trade name. Ex. 10, A. Anglin Trade Name Reg.  Greg Anglin also signed the "Andrew Anglin" trade name registration, this time representing himself as Defendant Moonbase's "authorized representative," and Greg Anglin further identified his office as Defendant Moonbase's "[b]usiness address."  *Id.* at 2–3.

Although formally registered by Defendant Moonbase, the Ohio Secretary of State mailed the trade name registration's Certificate to "Greg Mark Anglin" at Greg Anglin's Office. *Id.* at 1. It appears the Ohio Secretary of State also sent Greg Anglin an email to his personal email address—[REDACTED][2]—confirming Defendant Moonbase's registration of the "Andrew Anglin" trade name. Ex. 11, Email Confirmation.

### B. Defendant Moonbase also assisted in the *Daily Stormer*'s financing and operations.

Defendant Moonbase, acting through Defendant Anglin and Greg Anglin, appears to have continued playing an integral role in the *Daily Stormer*'s financing and operations in the lead-up to the publication of the Defamatory Article. As of early-January 2017, Defendant Anglin continued to direct users to send donations to Greg Anglin's Office. Ex. 12, *DS* Jan. 12, 2017 Article, at 5. This direction changed in mid-April 2017 following the initiation of a civil suit against Defendant Anglin by Ms. Tanya Gersh in the U.S. District Court for the District of Montana. *See Gersh v. Anglin*, 9:17-cv-00050-DLC-JCL (D. Mont.) (the "*Gersh* Action"). Shortly thereafter, and possibly in response to protests outside Greg Anglin's Office, the *Daily Stormer* published an article titled *SPLC Is Suing Anglin! Donate Now to STOP THESE KIKES*, in which readers were directed to send payments to a Post Office Box ("PO Box")—PO Box 208, Worthington, Ohio 43085 ("PO Box 208")—rather than Greg Anglin's Office. Ex. 13, *DS* Apr. 27, 2017 Article, at 1.

The U.S. Postal Service ("USPS") has provided the "Application for Post Office Box Service" used to establish PO Box 208 (the "Application"). Ex. 14, PO Box 208 Reg. The Application reflects that PO Box 208 was established for "Business/Organization Use," the name of which is "Andrew Anglin"—*i.e.*, the same trade name that Defendant Moonbase registered in January 2017 for exclusive

---

[2] Plaintiff has redacted Greg Anglin's email address in the interest of privacy. Plaintiff would respectfully refer the Court to the corresponding exhibit, which is publicly-available information.

use in Ohio. Ex. 10, A. Anglin Trade Name Reg. Thus, Defendant Moonbase appears to be the true owner of PO Box 208.[3] The Application, however, was completed by "Gregory Anglin," who provided his business address, personal email address, and phone number as the contact information for Defendant Moonbase (d/b/a "Andrew Anglin"). Ex. 14, PO Box 208 Reg., at 1. The Application further provides that Defendant Moonbase (d/b/a "Andrew Anglin") will "be receiving mail at this . . . PO Box number[]," but Greg Anglin also designated himself as a "[p]erson[] or representative[] of the business/organization who [is] authorized to pick up mail addressed to this . . . PO Box number[]." *Id.* at 2. Defendant Moonbase appears to have utilized PO Box 208 to receive donations from the *Daily Stormer*'s readership at least through late-October 2018 based on Defendant Anglin having announced, on September 24, 2017, that the "PO Box has been kiked, but right now I have a month's worth of forwarding. So if you want to send something to that, do it now." Ex. 15, *DS*'s Sep. 24, 2017 Article, at 5.

Also in that September 24, 2017 article, Defendant Anglin announced that "[f]or the first time since 2014 we have the ability to receive credit card donations in the form of Hatreon."[4] Ex. 15, *DS*'s Sep. 24, 2017 Article, at 3. (Hatreon appears to be a "crowdfunding" platform, similar to popular sites like Kickstarter and Patreon, by which individuals can pledge donations in support of a project.)

---

[3] The efforts taken by defendants and Greg Anglin to obfuscate and conceal their *Daily Stormer*-related activities has created uncertainty as to ownership of PO Box 208. While preliminary analysis suggested that PO Box 208 was secured by Greg Anglin on Defendant Anglin's behalf, further investigative efforts indicate that Defendant Moonbase is the registrant of PO Box 208. The requested discovery will aid Mr. Obeidallah in resolving certainty about this and similar issues surrounding a forthcoming motion for default judgment against Defendant Moonbase.

[4] Defendant Anglin's suggestion that, since 2014, he is unable to receive credit card donations is likely either an error or an effort to mislead the *Daily Stormer*'s readership. As explained above, Defendant Anglin posted an article on December 13, 2016 acknowledging that he could, in fact, receive credit card donations through Defendant Moonbase. Ex. 8, *DS* Dec. 13, 2016 Article, at 6–7. Defendant Anglin also stated as recently as June 10, 2017, in an article announcing that he had hired Marc Randazza to represent him in the *Gersh* Action, that the *Daily Stormer*'s readership "can continue donating to our fund with a credit card." Ex. 16, *DS* June 10, 2017 Article, at 4.

As explained above, Defendant Moonbase traditionally served as the front through which Defendant Anglin and Greg Anglin appear to have funneled donations from the *Daily Stormer*'s readership, including credit card donations. The Hatreon site for "Andrew Anglin" was established as early as August 14, 2017—two days prior to this action being filed—for purpose of "creating the Daily Stormer."[5] Ex. 17, Hatreon Page Aug. 14, 2017. "Andrew Anglin" received approximately $1,005.17 per month in August 2017 through Hatreon, *id.*, and that number had increased to approximately $3,405.70 per month as of early-February 2018, Ex. 18, Hatreon Page Mar. 16, 2018. However, the Hatreon site has reported since February 9, 2018 that "[p]ledging is current disabled while we upgrade our systems," *id.*, and it has been reported elsewhere that this truly means Hatreon is no longer able to process payments, *see* Casey Michel, *White Supremacists' Favorite Fundraising Site May Be Imploding: Down For Over A Month, Hatreon May Be Done For Good*, ThinkProgress, https://thinkprogress.org/white-supremacist-fundraiser-dead-bdee08eeb5a6 (Mar. 13, 2018). Contemporaneous with this announcement, Defendant Anglin posted a series of messages, Ex. 19, Three Gab Messages From Early 2018 (Gab messages dated approximately "two months" before March 18, 2018, when they were copied), on the Gab account[6] associated with his name, announcing that his "money is basically dried up" as a result of the legal fees he has incurred (likely in relation to the *Gersh* Action, the only case where he has entered an appearance):

---

[5] As with PO Box 208, *see supra* note 3, it is unclear whether Hatreon's reference to "Andrew Anglin" refers to Defendant Anglin or Defendant Moonbase (d/b/a "Andrew Anglin"). In light of Defendant Moonbase's traditional role in processing credit card donations from the *Daily Stormer*'s readership, it may well be that Defendant Moonbase (acting as an alter ego for Greg Anglin and/or Defendant Anglin) is responsible for receipt of the Hatreon donations.

[6] Gab is an alternative social-networking platform similar to the popular site known as Twitter.





### C. After publication of the Defamatory Article, Defendant Moonbase participated in its republication several times.

In addition to funneling contributions on behalf of Defendant Anglin and Greg Anglin, Defendant Moonbase appears to have participated in the publication (and republication) of the Defamatory Article giving rise to this litigation. The Defamatory Article was first published on June 1, 2017 at the *Daily Stormer*'s original, but now defunct, web domain—www.dailystormer.com. Ex. 20, *DS* June 1, 2017 Article. The *Daily Stormer*'s ".com" domain was established on March 20, 2013 with

registrar GoDaddy.  Ex. 21, *DS*'s Original .COM Registration.  Greg Anglin was identified as the *Daily Stormer*'s original registrant, administrator, and technical contact, and the *Daily Stormer*'s address was listed as Greg Anglin's Office.  *Id.* at 1–2.  Sometime following Defendant Moonbase's establishment and its registration of the trade name "Andrew Anglin," the registration was changed to reflect a registrant, administrative, and technical contact of "Andrew Anglin" on behalf of "Moonbase Holdings."  Ex. 22, *DS*'s Amended .COM Registration, at 1–2.  The address associated with the ".com" domain's amended registration was PO Box 208—*i.e.*, the post office box owned by Defendant Moonbase (d/b/a "Andrew Anglin") at which Greg Anglin received donations from the *Daily Stormer*'s readership.  *Id.*  Defendant Moonbase remained the *Daily Stormer*'s ".com" registrant when this case was filed in mid-August 2017.  *Id.* (reflecting last updated date of Aug. 15, 2017).

Defendant Moonbase has continued to participate in defaming Mr. Obeidallah since the *Daily Stormer*'s ".com" domain was terminated in mid-August 2017.  Since that time, the *Daily Stormer* has reappeared at approximately sixteen (16) different web domains,[7] and the Defamatory Article appears republished at each domain.  Defendants are thus responsible for having **republished the Defamatory Article at least sixteen (16) times**,[8] and Defendant Moonbase is again listed as the registrant organization for numerous of those domains.  *See, e.g.*, Ex. 24, *DS*'s .AI WhoIs; Ex. 25, *DS*'s .TOP WhoIs; *see also* Ex. 26, *DS*'s .WS WhoIs (registering ".ws" domain using "Andrew Anglin" and PO Box 208, but not expressly referencing Defendant Moonbase).  As with the ".com" domain

---

[7] In addition to the ".com" domain, Defendant Anglin reports on his Gab account that the *Daily Stormer* website has been republished at each of: (**1**) dailystormer.wang; (**2**) dailystormer.ru; (**3**) dailystormer.lol; (**4**) punishedstormer.com; (**5**) dailystormer.al; (**6**) dailystormer.at; (**7**) dailystormer.is; (**8**) dailystormer.cat; (**9**) dailystormer.ph; (**10**) dailystormer.ai; (**11**) dailystormer.ws; (**12**) dailystormer.hk; (**13**) dailystormer.red; (**14**) dailystormer.top; (**15**) dailystormer.name; and (**16**) on the so-called "dark web" at dstormer6em3i4km.onion.link/.  Ex. 23 (sixteen images copied from Defendant Anglin's Gab account, reflecting the republication of the *Daily Stormer* at these domains).

[8] *See* J. Wolman Decl. ¶ 4, *Gersh v. Anglin*, 9:17-cv-00050-DLC-JCL (D. Mont.), ECF No. 32-29 (Defendant Anglin's counsel in the *Gersh* Action stating that "a change in domain name does not alter the content of a website, but rather the path a web browser takes to access that content").

registration, some of these subsequent registrations reflect that "Andrew Anglin" registered the domains on behalf of Defendant Moonbase, and the address provided is PO Box 208. *See, e.g.*, Ex. 25, *DS*'s .TOP WhoIs.

On January 16, 2018, after it was properly served with the Summons and Complaint in this action, Defendant Moonbase filed a change of address for its agent for service. Ex. 27, Moonbase's Agent Address Change, at 1 (noting change of agent's address effective Jan. 16, 2018). Rather than Greg Anglin's Office, all future service on Defendant Moonbase was to be directed to PO Box 208— *i.e.*, the post office box that Greg Anglin established for Defendant Moonbase (d/b/a "Andrew Anglin") and is solely authorized to retrieve mail from. *Id.* at 3. The change of address form was executed by "Karen Zappitelli" on behalf of "Zappitelli CPA Inc.," which represented itself as an "authorized representative" of Defendant Moonbase. *Id.* at 4. The Certificate was subsequently mailed to Defendant Moonbase, courtesy of Karen Zappitelli, at the business address for Zappitelli CPAs. *Id.* at 1.

## II.  STANDARD OF REVIEW

Courts enjoy "broad discretion" to order discovery. *Arista Records, LLC v. Does 1-15*, No. 1:07-cv-450, 2007 WL 5254326, at *3 (W.D. Mich. Nov. 5, 2007). While the Federal Rules of Civil Procedure anticipate that discovery will typically not begin "before the parties have conferred as required as required by Rule 26(f)," they allow for discovery prior to the Rule 26(f) conference "by court order." Fed. R. Civ. P. 26(d); *see also Arista Records*, 2007 WL 5254326, at *2. This provision requires that the party requesting expedited discovery show "good cause," which "may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Arista Records*, 2007 WL 5254326, at *2 (internal quotations and citations omitted). Courts have regularly found good cause to authorize such discovery when, *inter alia*, a defendant defaults and the plaintiff needs discovery in order to establish liability and/or damages

in pursuit of default judgment. *See, e.g.*, *Twitch Interactive, Inc. v. Johnston*, No. 5:16-cv-03404-BLF, 2017 WL 1133520, at *4 (N.D. Cal. Mar. 27, 2017) (authorizing discovery in aid of forthcoming motion for default judgment from payment processors, financial institutions, and co-defendant); *Antoine v. Boutte*, No. 3:15-cv-00561-JWD-EWD, 2016 WL 6138252, at *4 (M.D. La. Oct. 20, 2016) (same from third-party distributors regarding quantum of damages); *Adobe Sys. Inc. v. Bunhey*, No. 5:13-cv-01365-VAP-OP, 2013 WL 12140304, at *2 (C.D. Cal. Oct. 29, 2013) (same from third-party distributors regarding defaulting defendant's purchase, sale, and/or distribution of counterfeit products); *Texas Guaranteed Student Loan Corp. v. Dhindsa*, No. 1:10-cv-00335-LJO-SKO, 2010 WL 2353520, at *3 (E.D. Cal. June 9, 2010) (same from defaulting defendant regarding quantum of damages); *Sheridan v. Oak Street Mortg., LLC*, 244 F.R.D. 520, 522 (E.D. Wis. 2007) (same regarding class certification and quantum of damages).

## III.  GOOD CAUSE EXISTS FOR DISCOVERY IN AID OF DEFAULT JUDGMENT AGAINST DEFENDANT MOONBASE

The Court should grant Mr. Obeidallah leave to take limited discovery in aid of a forthcoming motion for default judgment against Defendant Moonbase because doing so is necessary for purposes of: (**1**) developing facts supporting the immediate need for entry of judgment against Defendant Moonbase; (**2**) determining how liability ought to be apportioned among Defendant Moonbase and the other defendants; and (**3**) establishing Defendant Moonbase's malice and determining the amount of Mr. Obeidallah's damages attributable to Defendant Moonbase.

### A.  Discovery will aid Mr. Obeidallah in arguing exigent circumstances warrant the immediate entry of default judgment against Defendant Moonbase.

Mr. Obeidallah intends to request that the Court enter immediate default judgment against Defendant Moonbase based on an exigent circumstance; namely, Defendant Moonbase's impending insolvency. Although there is some evidence suggesting Defendant Moonbase is now on the cusp of

insolvency, establishing such insolvency without limited discovery regarding Defendant Moonbase's finances is difficult.

Understanding the finances of Defendant Moonbase is necessary because the Sixth Circuit has adopted the so-called "*Frow* rule," which states that when default is entered against one of several defendants, the "preferred practice" is to "withhold granting a default judgment until the trial of the action on the merits against the remaining defendants." *Kimberly v. Coastline Coal Corp.*, No. 87-6199, 1988 WL 93305, at *3 (6th Cir. Sept. 9, 1988) (citation omitted) (interpreting *Frow v. De La Vega*, 82 U.S. 552 (1872)). However, courts have recognized an exception to the *Frow* rule where the exigency of a defaulting defendant's insolvency (or impending insolvency) warrants the immediate entry of default judgment. *See Lucas v. Jolin*, No. 1:15-cv-00108-TSB-SKB, 2015 WL 7292836 (S.D. Ohio Oct. 29, 2015) (finding risk of insolvency from recent entry of judgment in another case "provides an adequate basis *alone* for" the immediate entry of default judgment), *report and recommendation adopted*, No. 1:15-cv-00108-TSB-SKB, 2015 WL 7276808 (S.D. Ohio Nov. 18, 2015) (granting immediate entry of default judgment); *see also Lucas v. Telemarketer Calling from (407) 476-5680*, No. 1:12-cv-00630-TSB-SKB, 2014 WL 5308573, at *2 (S.D. Ohio Oct. 16, 2014) (granting immediate default judgment because "[i]nsolvency . . . is a genuine risk, and the interests of justice would seem to dictate allowing Plaintiff to begin enforcement proceedings sooner than later" because "if a judgment against [the defaulting defendant] is postponed, Plaintiff may lose what little ability he has to collect against it"); *Int'l Gemmological Inst., Inc. v. Rafaeil*, No. 1:05-cv-02395-JGK-JCF, 2005 WL 3880222, at *3 (S.D.N.Y. Aug. 17, 2005) (finding that the balance of interests favored entry of default judgment despite *Frow*, since postponing a determination of damages would "delay—and perhaps jeopardize—[plaintiff's] recovery," giving the defaulting defendants "ample opportunity to spend, secrete, or otherwise protect their ill-gotten gains").

Evidence collected during discovery will likely establish that immediate entry of default judgment against Defendant Moonbase is warranted because it is—in fact— insolvent, or on the cusp of insolvency, and Mr. Obeidallah will lose his ability to recover damages from Defendant Moonbase unless permitted to begin enforcement proceedings very soon. As explained above in Part I.A-B, Defendant Moonbase appears to serve as a front through which Defendant Anglin and Greg Anglin funnel donations from the *Daily Stormer*'s readership. It is not clear whether Defendant Moonbase possesses assets other than those pass-through donations. At one point it appeared that Defendant Moonbase received approximately $3,405.70 per month in credit card donations through Hatreon, but this source of funding was discontinued in early-February 2017 due to Hatreon's inability to continue processing contributions. Defendant Moonbase (d/b/a "Andrew Anglin") also apparently received mailed donations at PO Box 208, but Defendant Anglin thereafter announced this method of fundraising was no longer possible when the post office box at which Defendant Moonbase (d/b/a "Andrew Anglin") was receiving contributions in late-October 2017 was shut down.

Contemporaneous with the cessation of Defendant Moonbase's funds through Hatreon, Defendant Anglin announced that his "money is basically dried up." Defendant Anglin attributed this loss of funds to expenditures on legal fees he has incurred, likely in relation to the *Gersh* Action, the only lawsuit in which he has entered an appearance. Defendant Anglin claimed that he had "raised 160K with a 15% fee"—*i.e.*, $136,000—but has spent it on "lawyer travel, motions, research, discovery, [and] local counsel." Ex. 19, Three Gab Messages From Early 2018, at 2. He then claimed that he has "no way of receiving anything other than crypto right now," *id.* at 1, which is likely a reference to "cryptocurrency," a "form of currency that only exists digitally . . . [and] usually has no central issuing or regulating authority but instead uses a decentralized system to record transactions." Merriam-Webster, *Cryptocurrency*, https://www.merriam-webster.com/dictionary/cryptocurrency (Mar. 18, 2018). For example, the *Daily Stormer* has recently begun requesting its readership to submit

donations through Monero, a cryptocurrency that claims to use "ring signatures, ring confidential transactions, and stealth addresses to obfuscate the origins, amounts, and destinations of all transactions."  Monero, https://getmonero.org (last visited Mar. 25, 2018); *see also* Ex. 28, *DS*'s Contributions, at 1–2 (requesting Monero contributions).

Moreover, the probability that Defendant Moonbase will be rendered insolvent (if it is not already) has greatly increased as a result of its default in another federal action pending in the U.S. District Court for the Western District of Virginia.  *See* Entry of Default, *Sines v. Kessler*, No. 3:17-cv-00072-NKM-JCH (W.D. Va. Mar. 14, 2018), ECF No. 268 (the "*Sines* Action").  The *Sines* Action was filed October 11, 2017, approximately two months after Mr. Obeidallah filed his complaint.  The clerk in the *Sines* Action entered default against Defendants Anglin and Moonbase on March 14, 2018.  If the plaintiffs in *Sines* quickly obtain default judgment against Defendant Moonbase, then Mr. Obeidallah will be severely prejudiced in his ability to recover despite his being the first-filed action.

Based on the foregoing facts, Defendant Moonbase appears drained of all available resources by Defendant Anglin and Greg Anglin.  However, in order to establish this fact with certainty, Mr. Obeidallah respectfully requests leave to take limited discovery on the issue.  For example, while there is strong circumstantial evidence that Defendant Moonbase was receiving donations through Hatreon (because the entity had a prior role processing credit card donations from the *Daily Stormer*'s readership), Mr. Obeidallah requires discovery to confirm this relationship.  Moreover, discovery will reveal whether Defendant Moonbase is still able to receive Hatreon donations.  Mr. Obeidallah must also confirm whether Defendant Moonbase has retained control of any previously-received donations, or whether Defendant Anglin and Greg Anglin simply used Defendant Moonbase as a front through which they passed donations from the *Daily Stormer*'s readership.

To answer these and similar questions, which are important to Mr. Obeidallah's forthcoming motion for default judgment against Defendant Moonbase, Mr. Obeidallah respectfully seeks leave to issue narrowly-tailored subpoenas duces tecum, and deposition subpoenas, to: (**1**) Greg Anglin; and (**2**) Zappitelli CPAs.  The proposed subpoenas are attached hereto as Exhibit 1.  As explained below, good cause exists for such discovery because Greg Anglin and Zappitelli CPAs have both acted as "representatives" of Defendant Moonbase and they are both likely to have information highly relevant to determining whether Defendant Moonbase is insolvent.  Additionally, Mr. Obeidallah cannot obtain such information from other sources because: (**1**) Defendant Moonbase is in default, and thus unlikely to respond to discovery requests; and (**2**) Defendant Anglin, who has also acted as Defendant Moonbase's representative, is apparently evading service of the Summons and Complaint and therefore Mr. Obeidallah has no way of serving him with discovery requests.

With regard to Greg Anglin, the evidence discussed above in Part I shows that Greg Anglin is a legally-authorized representative of Defendant Moonbase who is deeply familiar with its operations, including its finances.  Greg Anglin's Office was originally listed as the address at which all service of process for Defendant Moonbase should be directed.  The *Daily Stormer*'s readership was likewise directed to send cash, checks, and money orders to Greg Anglin's Office.  The office's occupants had no knowledge of Defendant Anglin, but stated Greg Anglin regularly retrieved mail from that office, suggesting Greg Anglin was receiving service and donations on Defendant Moonbase's behalf.  Greg Anglin thereafter signed the trade name registration for "Andrew Anglin" as Defendant Anglin's "authorized representative."  Following initiation of the *Gersh* Action, Greg Anglin appears to have established PO Box 208 on Defendant Moonbase's behalf (d/b/a "Andrew Anglin").  Greg Anglin used his name, business address, telephone number, and email address for purpose of the registration, and listed himself as the only individual authorized to retrieve mail from PO Box 208 on behalf of Defendant Moonbase (d/b/a "Andrew Anglin").  Defendant Anglin thereafter directed the *Daily*

*Stormer*'s readership to send donation to PO Box 208 which Greg Anglin, as the only person authorized to retrieve mail from that post office box, apparently received on behalf of Defendant Moonbase (d/b/a "Andrew Anglin").

As for Zappitelli CPAs, the available evidence discussed above in Part I similarly shows that Zappitelli CPAs is a legally-authorized representative of Defendant Moonbase who is likely familiar with its finances. [9]  First, Zappitelli CPAs appears to have been Defendant Moonbase's longtime certified public accountant, having been the designated recipient for Defendant Moonbase's Articles of Organization when it was established in early-September 2016, and having most recently executed in mid-January 2018 a change of address form as Defendant Moonbase's "authorized representative." Second, as certified public accountants Zappitelli CPAs likely has significant relevant information regarding Defendant Moonbase's finances.   Indeed, the firm advertises services such as: (**1**) "[c]ashflow analysis"; (**2**) "[f]orecasts/projects"; (**3**) [b]usiness appraisals and valuations; (**4**) [g]eneral bookkeeping services; and (**5**) "[p]reperation of . . . LLC . . . federal, state and city returns." Zappitelli CPAs Inc., *Services*, http://zappitellicpasinc.com/services (last visited Mar. 19, 2018).  These facts, taken together, suggest Zappitelli CPAs possesses information highly relevant to determining whether Defendant Moonbase is insolvent, or on the cusp of becoming insolvent.

### B.   Discovery will aid Mr. Obeidallah in detailing apportionment of liability among defendants.

Good cause also exists for Mr. Obeidallah's request for leave to pursue the discovery set forth in Exhibit 1, because discovery is likely to uncover evidence relevant to apportioning liability among Defendant Moonbase and the other defendants.  In order to grant Mr. Obeidallah's forthcoming motion for immediate entry of default judgment, the Court will likely evaluate what portion of such

---

[9] The Ohio Secretary of State's records reflect that "Zappitelli CPAs, Inc." is a fictitious name under which the registrant, Jon J. Zappitelli, CPA, Inc. ("Jon J. Zappitelli CPA"), conducts business.  As a result, Plaintiff would direct the limited discovery requested herein to Jon J. Zappitelli CPA.

liability is appropriately apportioned to Defendant Moonbase.  *See, e.g.*, *Munhwa Broad. Corp. v. Create New Tech. Co.*, No. 2:14-cv-04213-RGK-PJW, 2015 WL 12749448, at \*5 (C.D. Cal. Sept. 2, 2015) (granting default judgment against one of several defendants where the defendant was jointly and severally liable, and calculating the defendant's share of the damages by referencing plaintiff's expert testimony).  As a result, the Court should grant Mr. Obeidallah leave to take limited discovery in aid of determining, *inter alia*, the extent to which: (**1**) Defendant Moonbase is responsible for the publication and republication of the Defamatory Article and other culpable conduct alleged in the Complaint; and (**2**) Greg Anglin, Defendant Anglin, and/or third parties (*e.g.*, the Doe Defendants) act on Defendant Moonbase's behalf for purpose of assessing agency and vicarious liability.

Good cause exists for directing such discovery requests to Greg Anglin.  There is some evidence that Defendant Moonbase serves as an alter ego for Defendant Anglin and Greg Anglin.  As such, Greg Anglin is likely knowledgeable about Defendant Moonbase's role in the publication, and subsequent republication, of the Defamatory Article.  For example, Greg Anglin has executed numerous documents as Defendant Moonbase's representative since its establishment in December 2016.  He also appears to have received mail directed to Defendant Moonbase, including service of process and donations from the *Daily Stormer*'s readership, at his office address.  When Greg Anglin's association with the *Daily Stormer* became public he resorted to establishing PO Box 208, apparently on Defendant Moonbase's behalf (d/b/a "Andrew Anglin"), so that he could continue receiving those donations.  Greg Anglin also registered the *Daily Stormer*'s original ".com" domain, and presumably authorized the filing of an amended registration for that ".com" domain changing the registrant to "Andrew Anglin" on behalf of Defendant Moonbase with an associated address of PO Box 208—the same address that Greg Anglin established, and which has been used for numerous of the later domains at which the Defamatory Article was republished.

**C.    Discovery will aid Mr. Obeidallah in establishing Defendant Moonbase's malice and the quantum of damages attributable to Defendant Moonbase.**

The discovery that Mr. Obeidallah seeks leave to take will further aid in establishing: (**1**) Defendant Moonbase's malice; and (**2**) the quantum of damages attributable to Defendant Moonbase. Mr. Obeidallah's forthcoming motion for default judgment against Defendant Moonbase must establish malice, or a reckless disregard for the truth, in support of its claims for defamation. While this element is definitively established by Mr. Obeidallah's well-pled complaint, the allegations of which are taken as true upon Defendant Moonbase's default, it is nonetheless an issue that would find further support in evidence revealing Defendant Moonbase's republication of the Defamatory Article. *See, e.g.*, *Austin v. Remington*, 46 Conn. 116, 118 (1878) ("Any evidence which goes to show that the slander has again and again been repeated is competent to prove malice. The greater length of time in which the defendant has repeated his publications evinces that his words have not been the result of passion, and shows deliberate purpose to injure the plaintiff."). Defendant Moonbase's republication is also relevant to the quantum of damages attributable to Defendant Moonbase. *See, e.g.*, *Funk v. Lincoln-Lancaster Cty. Crime Stoppers, Inc.*, 885 N.W.2d 1, 12 (Neb. 2016) (holding that the republication of a defamatory article by linking the article via Facebook is material in determining damages).

As discussed above, there is evidence that Defendant Moonbase has participated in the republication of the Defamatory Article at least three (3) times. *See supra* Part 1.C. Evidence of republication is based on registrant information for the *Daily Stormer*'s ".ai" and ".top" domains, both of which reflect registration by "Andrew Anglin" on behalf of Defendant Moonbase. *See id.* But, the Defamatory Article was republished at approximately fourteen (14) of the *Daily Stormer*'s other web domains. Unfortunately, Mr. Obeidallah cannot discern registrant information for these domains because: (**1**) the domains deleted registrant information when the *Daily Stormer* was banned; or (**2**) Defendants recently took measures to obfuscate this information. Good cause therefore exists to seek discovery.

## IV.    REQUEST FOR RELIEF

For these reasons, Mr. Obeidallah respectfully moves this Court pursuant to Rule 26(d)(1) of the Federal Rules of Civil Procedure for leave to take limited discovery in aid of Mr. Obeidallah's forthcoming motion for default judgment against Moonbase. The requests for production and matters for examination, which Mr. Obeidallah proposes directing to Greg Anglin and Zappitelli CPAs, are attached as Exhibit 1.

Respectfully submitted,

DATED: 03/26/2018

/s/ *Abid R. Qureshi*

Subodh Chandra (OH Bar No. 0069233)
Donald Screen (OH Bar No. 0044070)
THE CHANDRA LAW FIRM LLC
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
Phone: 216.578.1700 Fx: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Donald.Screen@ChandraLaw.com

Johnathan Smith (D.C. Bar No. 1029373)
Juvaria Khan (N.Y. Bar No. 5027461)
MUSLIM ADVOCATES
P.O. Box 66408
Washington, D.C. 20035
Phone: 202.897.1894
johnathan@muslimadvocates.org
juvaria@muslimadvocates.org
*Admitted pro hac vice*

Abid R. Qureshi (D.C. Bar No. 459227)
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004-1304
Phone: 202.637.2200 Fx: 202.637.2201
abid.qureshi@lw.com
*Admitted pro hac vice*

*Attorneys for Plaintiff Dean Obeidallah*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that I served this motion, memorandum, and all attachments thereto on Defendant

Moonbase Holdings, LLC by first class mail directed to:

Moonbase Holdings, LLC
C/O Andrew B. Anglin
PO Box 208
Worthington, OH 43085

I further certify that I transmitted copies of this motion, memorandum, and all attachments

thereto to the Clerk of the Court for purpose of serving Defendant Andrew B. Anglin and the Doe

Defendants because those defendants have no known address.


DATED: 03/26/2018                    /s/ *Abid R. Qureshi*
_____

Abid R. Qureshi (D.C. Bar No. 459227)
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004-1304
Phone: 202.637.2200 Fx: 202.637.2201
abid.qureshi@lw.com
*Attorney for Plaintiff Dean Obeidallah*
*Admitted pro hac vice*