## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DEAN OBEIDALLAH,**

      **Plaintiff,**

                                    **Case No. 2:17-cv-720**
                                    **Chief Judge Edmund A. Sargus, Jr.**
      **v.**                              **Magistrate Judge Elizabeth P. Deavers**

**ANDREW B. ANGLIN,** *et al.*,

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's Renewed Motion for Leave to Conduct Limited Discovery in Aid of Service (ECF No. 23), Plaintiff's Motion for Service by Publication and to Extend Time for Service (ECF No. 24), and Plaintiff's Motion to Extend Time for Service (ECF No. 33).

### I.

Plaintiff, an American Muslim, is a comedian and commentator who hosts a national daily radio show and resides in New York.  (Complaint ¶ 11, ECF No. 1 ("Compl.").)  Defendant Andrew B. Anglin is the founder and publisher of a website named the *Daily Stormer*, which is a popular white nationalist website.  (*Id*. at ¶¶ 12, 21.)  Defendant Moonbase Holdings, LLC is an Ohio, for-profit, limited liability corporation registered by Defendant Anglin that assists in the operation of the *Daily Stormer*.  (*Id*. at ¶ 13.)  Plaintiff alleges that on June 1, 2017, the *Daily Stormer* published an article authored by Defendant Anglin entitled, "Dean Obeidallah, Mastermind Behind Manchester Bombing, Calls on Trump to Declare Whites the Real

Terrorists" ("the Article").  (*Id*. at ¶¶ 21–22.)  Defendants also republished the Article on Twitter.  (*Id*. at ¶ 21.)  The Article referred to Plaintiff as an "ISIS terrorist" and "the mastermind" behind the terrorist attack in Manchester, England.  (*Id*. at ¶ 23.)  The Article asserted that Plaintiff is "a confessed terrorist wanted by Europol, MI-5, Interpol and a litany of other international authorities."  (*Id*.)  Defendants also fabricated Twitter messages and included these messages in the Article to convince the Article's readers that Plaintiff had admitted a role in the Manchester bombing.  (*Id*. at ¶¶ 27–45.)  Plaintiff, however, is not affiliated with ISIS, is not a terrorist, is not wanted by any law enforcement authorities, and had no role in the Manchester bombing.  (*Id*. at ¶¶ 23, 34.)  In response to the Article, several commentators, believing the statements and messages within the Article, threated Plaintiff with violence and/or death.  (*Id*. at ¶¶ 46–58.)

On August 16, 2017, Plaintiff filed this action, asserting claims for libel, false light invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, common-law misappropriation of name and likeness, and civil conspiracy.  (*See generally Compl.*)  Since filing this action, Plaintiff has attempted on multiple occasions to effect service of process over Defendant Andrew B. Anglin both in his capacity as an individual Defendant and as the registered agent for Defendant Moonbase Holdings, LLC ("Moonbase Holdings").  The Court previously detailed these attempts, which are incorporated by reference herein.  (ECF No. 19.)  On November 9, 2017, the Court denied without prejudice Plaintiff's request to conduct expedited discovery in aid of service.  (*Id*.)  While the Court recognized Defendants' apparent attempts to conceal Defendant Anglin's whereabouts and evade service, the Court concluded that it could not, at that time, authorize the broad requests for expedited discovery sought by Plaintiff.  (*Id*. at 7.)  The deadline for effecting service has since been

extended with a current deadline of April 17, 2018.  (*Id*.; ECF Nos. 27, 30.)  On March 23, 2018, the Clerk certified that the Complaint and summons were sent via certified mail to Defendant Anglin.  (ECF No. 29.)

Plaintiff has now filed a Renewed Motion for Leave to Conduct Limited Discovery in Aid of Service (ECF No. 23), a Motion for Service by Publication and to Extend Time for Service (ECF No. 24), and a Motion to Extend Time for Service (ECF No. 33).  The Court addresses each motion in turn.

## II.

Plaintiff seeks expedited discovery to assist in locating Defendant Anglin's residence in order to effect service of process.  (ECF No. 23.)

Federal Rule of Civil Procedure 26 prohibits discovery before the Rule 26(f) conference except under certain circumstances, including when a court orders such discovery.  Fed. R. Civ. P. 26(d)(1).  Thus, Rule 26(d) vests the district court with discretion to order expedited discovery.  *See Lemkin v. Bell's Precision Grinding*, No. 2:08-CV-789, 2009 WL 1542731, at *1 (S.D. Ohio June 2, 2009) (citing *Qwest Communs. Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003)).  Courts considering a motion for expedited discovery typically apply a good cause standard.  *Lemkin*, 2009 WL 1542731, at *2; *see also* 8A Fed. Prac. & Proc. Civ. § 2046.1 (3d ed.) ("Although the rule [26] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard.").  The burden of demonstrating good cause rests with the party seeking the expedited discovery.  *Lemkin*, 2009 WL 1542731, at *2 (citations omitted).

3

Another court in this circuit previously discussed the following considerations when determining whether good cause exists:

> "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Arista Records, LLC v. Does 1–15*, 2:07–cv–450, 2007 WL 5254326, at *2 (S.D. Ohio May 17, 2007). Good cause is often found in cases alleging infringement, unfair competition, or where evidence may be lost or destroyed with time. *Caston v. Hoaglin*, No. 2:08–cv–200, 2009 WL 1687927, at *2 (S.D. Ohio June 12, 2009). The scope of the requested discovery is also relevant to a good cause determination. *Russell v. Lumpkin*, No. 2:10–cv–314, 2010 WL 1882139, at *2 (S.D. Ohio May 11, 2010). Ultimately, the Court retains broad discretion in establishing the timing and scope of discovery [(citing *Lemkin*, 2009 WL 1542731, at *2)].

*Luxottica Retail N. Am., Inc. v. Vision Serv. Plan,* No. 1:14–cv–581, 2014 WL 4626015, at *3 (S.D. Ohio Sept. 12, 2014) (acknowledging further that "there is little binding authority on the issue of expedited discovery in the Sixth Circuit, and district courts are split on the appropriate standard"); *see also N. Atl. Operating Co., Inc. v. JingJing Huang*, 194 F. Supp. 3d 634, 637 (E.D. Mich. 2016) ("Within this Circuit, district courts have found good cause for granting expedited discovery when the true identities of the defendants are unknown, when the moving party alleges infringement, when the scope of the discovery sought is narrow, and when expedited discovery would substantially contribute to moving the case forward."); *Barrette Outdoor Living, Inc v. Does*, No. 1:16 CV 914, 2016 WL 1588672, at *2 (N.D. Ohio Apr. 20, 2016) ("Courts consider several factors in determining if good causes exists, including: (1) the danger that the information sought will be lost or destroyed, (2) whether the discovery would substantially contribute to moving the case forward, and (3) the scope of the information sought."); *Malibu Media, LLC v. Doe*, No. 2:15-cv-488, 2015 WL 12732852, at *1 (S.D. Ohio Feb. 4, 2015) (finding good cause in the context of a copyright infringement case where the plaintiff showed that it could not meet its service obligation under Rule 4(m) without the

4

requested discovery from a non-party internet service provider to discover a Doe defendant's identity).

Here, the Court has previously detailed the diligent efforts undertaken by Plaintiff to locate and serve Defendant Anglin.  (ECF No. 19.)  Since that time, Plaintiff has taken additional steps to find Defendant Anglin.  Specifically, on December 15, 2017, Plaintiff's counsel emailed counsel who appeared on behalf of Defendant Anglin in another action filed in the United States District Court for the District of Montana.  *See Gersh v. Anglin*, No. 9:17-cv-00050-DLC-JCL[1] (D. Mont.) ("*Gersh*" or "the *Gersh* action"), ECF Nos. 20 (notice of appearance by Attorney Mathew Stevenson), 25 (order granting leave for Attorney Jay M. Wolman to appear *pro hac vice* on behalf of Defendant Anglin); Exhibit 4 (ECF No. 23-5 (email directed to Attorney Wolman)); Exhibit 5 (ECF No. 23-6 (email directed to Attorney Stevenson)).  Plaintiff's counsel received no response to these emails.  (ECF No. 23 at PAGEID # 213.)  In addition, Plaintiff sought to serve Defendant Anglin via certified mail to five different addresses in Ohio.  (ECF No. 18.)  Four of those mailings have been returned as undeliverable to the Clerk.  (ECF Nos. 20, 21, 22, 28.)  On March 23, 2018, a copy of the Complaint and issued summons were sent via certified mail to Defendant Anglin's attention.  (ECF No. 29.)  Plaintiff, however, notes that mailings to Defendant Anglin in Ohio in the *Gersh* action were returned as undeliverable.  (ECF No. 23 at PAGEID # 213 n.4.)

Plaintiff therefore seeks leave to engage in expedited discovery to find Defendant Anglin and effect service of process.  While his original request (ECF No. 17) did not specifically identify the "various entities" from which he sought discovery, Plaintiff now identifies the following individual and entities:  Greg Anglin (Ohio resident), Zappitelli CPAs, Inc. (certified

---

[1] Plaintiff incorrectly identified the case number as 9:17-cv-00060-DLC-JCL.  (ECF No. 23 at PAGEID # 210.)

public accounting business), GoDaddy (Internet domain registrar and web host), Bandwidth (telephone services provider), and the United States Postal Service (collectively, "the entities"). (ECF No. 23 at PAGEID ## 212–223.)

As set forth above, the record reflects that two certified mailings to Defendant Anglin have not yet been returned as undeliverable.  However, assuming for the moment that Plaintiff has exhausted all efforts in this regard, the Court again recognizes that locating Defendant Anglin has been both challenging and frustrating and acknowledges Defendant Anglin's apparent attempts to conceal his whereabouts and evade service.  Nevertheless, the Court remains concerned about the scope of Plaintiff's requested discovery.  Plaintiff provides the proposed requests for information, but "[f]or the sake of brevity," he did not provide "definitions, instructions, and other portions of the proposed subpoenas which are ancillary to assessing whether the requests are narrowly tailored and minimize burden."  (Exhibit 1 (ECF No. 23-2 at PAGEID # 230.)  Plaintiff offers to provide "fuller versions of the subpoenas" upon request, which the Court does find are necessary in order to assess the propriety of Plaintiff's proposed subpoenas.  For example, Plaintiff proposes to send the following four requests (Plaintiff refers to each as a "Request for Production") in a subpoena to Greg Anglin:

### REQUEST FOR PRODUCTION NO. 1:

Documents and things sufficient to show each of Defendant Anglin's prior, current, or planned occupancy of an address during the Relevant Period[], including, but not limited to, communications that may reflect information showing each of Defendant Anglin's prior, current, or planned occupancy of an address during the Relevant Period.

### REQUEST FOR PRODUCTION NO. 2:

Documents and things sufficient to show each manner of Andrew Anglin's use, whether directly or indirectly (*e.g.*, through a third party), of Greg Anglin's Office during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 3:**

Documents and things sufficient to show each manner of Andrew Anglin's use, whether directly or indirectly (*e.g.*, through a third party), of Post Office Box 208, Worthington, Ohio 43085 during the Relevant Period.

**REQUEST FOR PRODUCTION NO. 4:**

Documents and things sufficient to show each of Defendant Anglin's relationships with any Financial Institution[] during the Relevant Period.

(*Id.* at PAGEID # 231 (emphasis in original).)  Plaintiff defines "Relevant Period" as March 19, 2013 (one day prior to the *Daily Stormer*'s original domain registration) to the present and "Financial Institution" as "an entity involved in financial activities whose primary activity is engaging in financial transactions.  A bank is a financial institution." (*Id.* at nn. 1–2.)  However, Plaintiff fails to define what "things" are and it is not clear from the context what items or information are included in that undefined term. (*See generally id.* at PAGEID # 231.)  The proposed requests in subpoenas directed to the entities—Zappitelli CPAs, Inc., GoDaddy, Bandwidth, and the United States Postal Service—contain the same deficiency. (*Id.* at PAGEID ## 231–34.)  Similarly, Plaintiff fails to define "relationships" in his fourth request directed to Greg Anglin. (*Id.* at PAGEID # 231.)

Even if Plaintiff provides fuller versions of the proposed subpoenas and sufficiently defines the term "things" and "relationships," however, the Court remains concerned with Plaintiff's requests as presently formulated.  The proposed requests (subpoenas) are often vague and difficult to follow. For example, Plaintiff's use of the phrase "sufficient to show," which appears throughout his requests directed to Greg Anglin and all of the entities, is subjective and it is not clear what information would be responsive to this request. (*Id.*)  Additionally, the Court finds Plaintiff's first request directed to Greg Anglin for "[d]ocuments and things sufficient to show each of Defendant Anglin's prior, current, or planned occupancy of an address during the

Relevant Period" unclear and difficult to follow. (*Id*. at PAGEID # 231.)[2] The Court likewise does not understand what Plaintiff seeks when he asks Greg Anglin for documents or things sufficient to show the "manner of Andrew Anglin's use" of an office and P.O. Box. (*Id*.) If Plaintiff seeks specific dates on which, or specific purposes for which, Andrew Anglin uses the office or P.O. Box, the requests (subpoena) should precisely state what information Plaintiff seeks.

Without defining certain terms and more specifically stating what information he seeks from Greg Anglin and the entities, the Court is unable, on the present record, to assess whether the expedited discovery Plaintiff seeks is warranted. In short, the Court cannot, at this time, authorize the requested discovery as presently formulated. Should Plaintiff rephrase his requests, and provide the requisite specificity to demonstrate his need and the information he seeks, the Court will again take the matter under advisement. Accordingly, Plaintiff's Renewed Motion for Leave to Conduct Limited Discovery in Aid of Service (ECF No. 23) is **DENIED WITHOUT PREJUDICE**.

## III.

Plaintiff also moves for leave to effect service by publication and to extend the time for service. (ECF No. 24.) Plaintiff explains that his request to effect service by publication is not inconsistent with his request for expedited discovery. (*Id*. at PAGEID # 327 n.1.)

### A.    Standard for Service by Publication

Under Ohio law, service of process on an individual is generally made by delivering personally to the individual a copy of the summons and complaint; by leaving a copy of each at that individual's residence "with someone of suitable age and discretion who resides there"; or

---

[2] Plaintiff directs similar requests to the entities. (*See id*. at PAGEID ## 231–34.)

8

by delivering a copy of each to an authorized agent. Fed. R. Civ. P. 4(e)(2)(A), (B), (C).

Alternatively, service may be made in accordance with state law. Fed. R. Civ. P. 4(e)(1). Ohio

Rule of Civil Procedure 4.4(A)(1) provides that "if the residence of a defendant is unknown,

service shall be made by publication in actions where such service is authorized by law." Rule

4.4(A)(1) goes on to explain the steps necessary to effect service of process by publication. *Id*.

First, before such service may be made, a party or his counsel must file an affidavit "aver[ring]

that service of summons cannot be made because the residence of the defendant is unknown to

the affiant, all of the efforts made on behalf of the party to ascertain the residence of the

defendant, and that the residence of the defendant cannot be ascertained with reasonable

diligence." *Id*. Second, once the affidavit is filed,

> the clerk shall cause service of notice to be made by publication in a newspaper of
> general circulation in the county in which the complaint is filed. If no newspaper
> is published in that county, then publication shall be in a newspaper published in
> an adjoining county. The publication shall contain the name and address of the
> court, the case number, the name of the first party on each side, and the name and
> last known address, if any, of the person or persons whose residence is unknown.
> The publication also shall contain a summary statement of the object of the
> complaint and demand for relief, and shall notify the person to be served that he
> or she is required to answer within twenty-eight days after the publication.

*Id*. Finally, Rule 4.4(A)(1) requires the following as to the publication:

> The publication shall be published at least once a week for six successive weeks
> unless publication for a lesser number of weeks is specifically provided by law.
> Service shall be complete at the date of the last publication.
>
> After the last publication, the publisher or its agent shall file with the court an
> affidavit showing the fact of publication together with a copy of the notice of
> publication. The affidavit and copy of the notice shall constitute proof of service.

**B.     Service by Publication in This Action**

As set forth above, Ohio law permits service by publication in only certain

circumstances, *i.e.*, "where such service is authorized by law." Ohio Civ. R. 4.4(A)(1). Ohio

Revised Code § 2703.14 identifies the types of actions in which service may be made by publication. Although Plaintiff does not explicitly identify a particular statutory provision, he specifically argues that Defendant Anglin "continues to elude service of process by concealing his Ohio residence." (ECF No. 24 at PAGEID # 327.) Based on this record, the Court understands Plaintiff to take the position that this is "an action in which the defendant, being a resident of this state, has departed from the county of his residence . . . to avoid the service of a summons, or keeps himself concealed with a similar intent." Ohio Rev. Code § 2703.14(L).

Plaintiff submits the Affidavit of Donald Screen, who serves as counsel of record for Plaintiff in this action. (Affidavit of Donald Screen (ECF No. 24-1) ("Screen Affidavit").) Attorney Screen details all of the efforts Plaintiff has undertaken to effect service of process on Defendant Anglin. (*Id*. at ¶¶ 2–20.) These efforts are described above and were previously described in the Court's prior Opinion and Order. (*Id*.; ECF Nos. 19.) Considering this record as a whole, the Court concludes that Plaintiff has exercised reasonable diligence in attempting to locate Defendant Anglin. Briefly, these efforts included retaining a licensed professional private investigation agency and attempting to serve Defendant Anglin at the following five different addresses:

a.  6827 North High Street, Suite 121, Worthington, OH 43085-2517;

b.  7407 Brandshire Lane, Apartment B, Dublin, OH 43017-3400;

c.  918 Colony Way, Columbus, OH 43235-1720;

d.  979 High Street, Suite 2, Worthington, OH 43085-4047; and

e.  364 West Lane Avenue, Apartment 117, Columbus, OH 43201-1000.

(*Id*.; ECF Nos. 13 (issued summonses), 24-2 (Declaration of Tina L. Schroeder, owner of the private investigation agency retained by Plaintiff).)

The summonses directed to Defendant Anglin at the first (a), second (b), third (c), and fifth (e) addresses above were returned unexecuted. (ECF Nos. 20, 21, 22, 28.) As to the remaining summons directed to Defendant Anglin at 979 High Street, Suite 2, in Worthington, Ohio, Plaintiff's counsel avers that the records from the United States Postal Service ("USPS") reflect that the certified mailing was "'[d]isposed by Post Office' because it 'could not be delivered to the intended recipient or returned to sender.'" (Screen Affidavit at ¶ 18(e); Exhibit 1-D (ECF No. 24-5) (printouts of USPS tracking information).)[3]

In addition, although unsuccessful to date, Plaintiff has also twice asked the Court for leave to conduct expedited discovery to ascertain Defendant Anglin's whereabouts. (ECF Nos. 17, 23.)

This record evidence and the Screen Affidavit demonstrate that Plaintiff has exercised reasonable diligence in attempting to serve Defendant Anglin at his last known addresses in Dublin, Ohio; Columbus, Ohio; and Worthington, Ohio. This evidence further reflects that service cannot be made upon Defendant Anglin because his residence is unknown and cannot be ascertained with reasonable diligence and that Defendant Anglin is attempting to avoid service of process. In sum, service by publication is appropriate. Ohio Civ. R. 4.4(A)(1); *cf. Sizemore v. Smith*, 6 Ohio St. 3d 330, 332–33 (1983) (stating that "where reasonable diligence has been exercised and a defendant still has not been found there arises an inference of concealment"); *see also Rittner v. Huggins*, No. 2:07-cv-413, 2008 WL 5111177, at *2 (Dec. 1, 2008) (quoting *Sizemore*, 6 Ohio St. 3d at 332–33).

---

[3] On March 23, 2018, the Clerk certified that a copy of the Complaint and issued summons were again sent via certified mail to Defendant Anglin at 6827 North High Street, Suite 121, in Worthington, Ohio. (ECF No. 29.) However, the Court notes that this is one of the above addresses at which Plaintiff previously unsuccessfully attempted to serve Defendant Anglin. (ECF No. 28; Screen Affidavit at ¶ 18(d).)

Plaintiff proposes to publish the notice set forth in ECF No. 24-6, PAGEID # 371, once per week for six consecutive weeks in the *Daily Reporter*, a newspaper of general circulation and the official newspaper for all courts of record of Franklin, County, Ohio. (ECF No. 24 at PAGEID ## 328–29.) The Court has reviewed the proposed public notice and finds that it complies with the requirements of Ohio Civil Rule 4.4(A)(1) with one exception.[4] As presently formulated, the proposed public notice advises Defendant Anglin "to answer said complaint within twenty-eight (28) days after the last day of publication." (ECF No. 24-6 at PAGEID # 371.) However, the Court finds that this sentence should be modified to include a date certain by which Defendant Anglin should respond to the Complaint. Plaintiff should be able to ascertain and include that specific response date once he follows the directives related to publication outlined in Ohio Civil Rule 4.4(A)(1). Accordingly, Plaintiff's request to effect service by publication (ECF No. 24) is **GRANTED** consistent with the foregoing. Plaintiff shall publish a public notice (as modified to reflect a specific response date) in the *Daily Reporter* for once per week for a period of six consecutive weeks. Ohio Civ. R. 4.4(A)(1); *U.S. Commodity Futures Trading Comm'n v. Majestic Enter. Collision Repair, Inc.*, No. 4:10-cv-2287, 2011 WL 767890, at *2 (N.D. Ohio Feb. 28, 2011).

## C.    Extension of Time to Effect Service of Process

Plaintiff seeks to extend the deadline for effecting service, which is April 17, 2018. (ECF No. 30.) Federal Rule of Civil Procedure 4 provides in pertinent part as follows:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a

---

[4] The Court notes that Plaintiff provides the proposed public notice in the context of an Order to be signed by an officer of this Court. (ECF No. 24-6.) The Court's present discussion relates only to the language of the notice appearing on the second page of the proposed Order. (*Id*. at PAGEID # 371.)

specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period. . . .

Fed. R. Civ. P. 4(m).  "Plaintiff bears the burden of exercising due diligence in perfecting service of process and in showing that proper service has been made." *Malibu Media, LLC v. Downs*, No. 1:14-cv-707, 2015 WL 12734020, at *1 (S.D. Ohio Feb. 9, 2015) (citing *Byrd v. Stone*, 94 F.3d 217, 219 (6th Cir. 1996)).

As set forth above, the Plaintiff has exercised reasonable diligence in attempting to effect service of process.  Moreover, extending the current service deadline will provide time for Plaintiff to effect service by publication.  Accordingly, Plaintiff's request for an extension of time to effect service (ECF No. 24) is **GRANTED**.  The deadline for effecting service of process over Defendant Anglin is **JUNE 1, 2018**.  Plaintiff's Motion to Extend Time for Service (ECF No. 33) is therefore **DENIED AS MOOT**.

## IV.

In sum, Plaintiff's Renewed Motion for Leave to Conduct Limited Discovery in Aid of Service (ECF No. 23) is **DENIED WITHOUT PREJUDICE** consistent with the foregoing; Plaintiff's Motion for Service by Publication and to Extend Time for Service (ECF No. 24) is **GRANTED** consistent with the foregoing; and Plaintiff's Motion to Extend Time for Service (ECF No. 33) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Date: April 13, 2018                                    ____/s/ *Elizabeth A. Preston Deavers*____
                                                              ELIZABETH A. PRESTON DEAVERS
                                                              UNITED STATES MAGISTRATE JUDGE

13