IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEAN OBEIDALLAH,**

    **Plaintiff,**

                              Case No. 2:17-cv-720
                              Chief Judge Edmund A. Sargus, Jr.
    v.                            Magistrate Judge Elizabeth P. Deavers

**ANDREW B. ANGLIN,** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's Motion for Limited Discovery in Aid of Default Judgment against Defendant Moonbase Holdings, LLC. (ECF No. 31.) For the reasons that follow, Plaintiff's Motion is **GRANTED**.

**I.**

Plaintiff, an American Muslim, is a comedian and commentator who hosts a national daily radio show and resides in New York. (Complaint ¶ 11, ECF No. 1 ("Compl.").) Defendant Andrew B. Anglin is the founder and publisher of a website named the *Daily Stormer*, which is a popular white nationalist website. (*Id.* at ¶¶ 12, 21.) Defendant Moonbase Holdings, LLC ("Defendant Moonbase") is an Ohio, for-profit, limited liability corporation registered by Defendant Anglin that assists in the operation of the *Daily Stormer*. (*Id.* at ¶ 13.) Plaintiff alleges that on June 1, 2017, the *Daily Stormer* published an article authored by Defendant Anglin entitled, "Dean Obeidallah, Mastermind Behind Manchester Bombing, Calls on Trump to Declare Whites the Real Terrorists" ("the Article"). (*Id.* at ¶¶ 21–22.) Defendants also

republished the Article on Twitter. (*Id.* at ¶ 21.) The Article referred to Plaintiff as an "ISIS terrorist" and "the mastermind" behind the terrorist attack in Manchester, England. (*Id.* at ¶ 23.) The Article asserted that Plaintiff is "a confessed terrorist wanted by Europol, MI-5, Interpol and a litany of other international authorities." (*Id.*) Defendants also fabricated Twitter messages and included these messages in the Article to convince the Article's readers that Plaintiff had admitted a role in the Manchester bombing. (*Id.* at ¶¶ 27–45.) Plaintiff, however, is not affiliated with ISIS, is not a terrorist, is not wanted by any law enforcement authorities, and had no role in the Manchester bombing. (*Id.* at ¶¶ 23, 34.) In response to the Article, several commentators, believing the statements and messages within the Article, threatened Plaintiff with violence and/or death. (*Id.* at ¶¶ 46–58.)

On August 16, 2017, Plaintiff filed this action, asserting claims for libel, false light invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, common-law misappropriation of name and likeness, and civil conspiracy. (*See generally* Compl.) After Plaintiff effected service of process as to Defendant Moonbase and it failed to enter an appearance, file a responsive pleading, or seek an extension of time to answer or move in response to the Complaint, Plaintiff applied for entry of default. (ECF No. 25.) On January 29, 2018, the Clerk entered default against Defendant Moonbase. (ECF No. 26.)[1] Thereafter, Plaintiff filed his Motion for Limited Discovery in Aid of Default Judgment against Defendant Moonbase Holdings, LLC. (ECF No. 31.)

---

[1] Although not the subject of Plaintiff's present Motion, the Court notes that the Clerk entered default against Defendant Anglin on July 3, 2018. (ECF No. 38.)

## II.

Plaintiff, invoking Federal Rule of Civil Procedure 26, seeks expedited discovery to assist in his ability to file a forthcoming motion for default judgment against Defendant Moonbase. (ECF No. 31.) Rule 26 prohibits discovery before the Rule 26(f) conference except under certain circumstances, including when a court orders such discovery. Fed. R. Civ. P. 26(d)(1). Thus, Rule 26(d) vests the district court with discretion to order expedited discovery. *See Lemkin v. Bell's Precision Grinding*, No. 2:08-CV-789, 2009 WL 1542731, at *1 (S.D. Ohio June 2, 2009) (citing *Qwest Communs. Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003)). Courts considering a motion for expedited discovery typically apply a good cause standard. *Lemkin*, 2009 WL 1542731, at *2; *see also* 8A Fed. Prac. & Proc. Civ. § 2046.1 (3d ed.) ("Although the rule [26] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard."). The burden of demonstrating good cause rests with the party seeking the expedited discovery. *Lemkin*, 2009 WL 1542731, at *2 (citations omitted).

Another court in this District previously discussed the following considerations when determining whether good cause exists:

> "Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Arista Records, LLC v. Does 1–15*, 2:07–cv–450, 2007 WL 5254326, at *2 (S.D. Ohio May 17, 2007). Good cause is often found in cases alleging infringement, unfair competition, or where evidence may be lost or destroyed with time. *Caston v. Hoaglin*, No. 2:08–cv–200, 2009 WL 1687927, at *2 (S.D. Ohio June 12, 2009). The scope of the requested discovery is also relevant to a good cause determination. *Russell v. Lumpkin*, No. 2:10–cv–314, 2010 WL 1882139, at *2 (S.D. Ohio May 11, 2010). Ultimately, the Court retains broad discretion in establishing the timing and scope of discovery [(citing *Lemkin*, 2009 WL 1542731, at *2)].

*Luxottica Retail N. Am., Inc. v. Vision Serv. Plan,* No. 1:14–cv–581, 2014 WL 4626015, at *3 (S.D. Ohio Sept. 12, 2014) (acknowledging further that "there is little binding authority on the issue of expedited discovery in the Sixth Circuit, and district courts are split on the appropriate standard"); *see also N. Atl. Operating Co., Inc. v. JingJing Huang*, 194 F. Supp. 3d 634, 637 (E.D. Mich. 2016) ("Within this Circuit, district courts have found good cause for granting expedited discovery when the true identities of the defendants are unknown, when the moving party alleges infringement, when the scope of the discovery sought is narrow, and when expedited discovery would substantially contribute to moving the case forward."); *Barrette Outdoor Living, Inc v. Does*, No. 1:16 CV 914, 2016 WL 1588672, at *2 (N.D. Ohio Apr. 20, 2016) ("Courts consider several factors in determining if good causes exists, including: (1) the danger that the information sought will be lost or destroyed, (2) whether the discovery would substantially contribute to moving the case forward, and (3) the scope of the information sought."); *Malibu Media, LLC v. Doe*, No. 2:15-cv-488, 2015 WL 12732852, at *1 (S.D. Ohio Feb. 4, 2015) (finding good cause in the context of a copyright infringement case where the plaintiff showed that it could not meet its service obligation under Rule 4(m) without the requested discovery from a non-party internet service provider to discover a Doe defendant's identity).

Outside of this circuit, courts have found good cause where a defendant defaulted and "absent limited discovery to obtain information relevant to the issues of class certification and damages, [the plaintiff] cannot pursue his claims in this action. Since [the defendant] has not appeared in this action and is in default, [the plaintiff] is effectively precluded from engaging in a Rule 26(f) conference." *Sheridan v. Oak Street Mortg., LLC*, 244 F.R.D. 520, 522 (E.D. Wis. 2007) (authorizing the plaintiff to seek limited discovery from defaulting defendant); *see also*

*Twitch Interactive, Inc. v. Johnston*, No. 16-cv-03404, 2017 WL 1133520, at *2 (N.D. Cal. Mar. 27, 2017) ("Good cause may also exist in cases where a defendant has failed to appear, resulting in the entry of default against the defendant, and the plaintiff is in need of evidence to establish damages."). Another court has concluded that good cause existed to permit limited discovery of a non-party in order to obtain information relating to the plaintiff's damages. *See Antoine v. Boutte*, No. 15-561, 2016 WL 6138252, at *3–4 (M.D. La. Oct. 20, 2016) ("Under the good cause analysis, 'some courts have allowed limited, expedited discovery when failing to do so would have substantially impacted the case from progressing on the court's docket.'" (citations omitted) (collecting cases)).

In addition, although not specifically considering the good cause standard, other courts have authorized limited expedited discovery in connection with the filing of a motion for default judgment. *See*, *e.g.*, *Alstom Power, Inc. v. Graham*, No. 3:15-cv-174, 2016 WL 354754, at *3 (E.D. Va. Jan. 27, 2016) (recognizing that courts have "broad discretion" to supervise discovery, including that Rule 26(d) authorizes discovery in the absence of a Rule 26(f) conference, and permitting discovery before the filing of a motion for default judgment because doing so "best serves judicial economy" where the plaintiff "will have to make the appropriate showing of damages in its eventual motion for default judgment"); *see also Nutrition Distrib. LLC v. Ironx LLC*, No.: 17-CV-839, 2017 WL 4391709, at *2 (S.D. Cal. Oct. 3, 2017) (granting the plaintiff leave to conduct "discovery to ascertain the existence and amount of damages" after the entry of default and in connection with the plaintiff's forthcoming motion for default judgment). Similarly, some courts in this circuit, invoking Federal Rule of Civil Procedure 55(b), have authorized discovery as to damages in connection with a motion for default judgment. *See*, *e.g.*, *Provectus Biopharm., Inc. v. Dees*, No. 3:16-cv-222, 2016 WL 8738436, at *3 (E.D. Tenn. Aug.

29, 2016) ("Because the extent of Provectus's damages is not fully known at this juncture, the Court will **GRANT** Provectus's motion for leave to conduct discovery (Doc. 22), and will **RESERVE RULING** on Provectus's motion for default judgment (Doc. 21) pending an evidentiary hearing on the amount of damages.") (emphasis in the original); *Allied Enter., Inc. v. Brillcast, Inc.*, No. 1:15–cv–749, 2015 WL 13122945, at *3 (W.D. Mich. Nov. 17, 2015) (granting motion for default judgment in part for certain period of time and ordering that the plaintiff "shall conduct discovery in accordance with the rules governing non-party witnesses to determine the amount of unpaid commissions due for the [particular] period"); *Tr. of Ohio Bricklayers Health & Welfare Fund v. Workman Masonry, LLC*, No. 1:09cv482, 2010 WL 170422, at *1 (S.D. Ohio Jan. 15, 2010) (adopting recommendation that an unopposed motion for default judgment be granted in part and ordering the defaulting defendant to "cooperate with Plaintiffs in regards to whatever other discovery deemed necessary in this case to calculate any and all damages due and owing Plaintiffs"); *DIRECTV, Inc. v. Guzzi*, 308 F. Supp. 2d 788, 790–91 (E.D. Mich. 2004) (granting default judgment as to liability only and, after noting that the court "is unable to make a meaningful individualized assessment of damages[,]" authorizing limited discovery "for the purpose of developing the factual circumstances necessary to allow the court to properly exercise its discretion in assessing a final damage award").

## III.

The Court has previously detailed the diligent efforts undertaken by Plaintiff over several months to locate and serve Defendants with process in this case. (ECF Nos. 19, 34.) As set forth above, Plaintiff ultimately effected service on both Defendants. When neither Defendant responded to the Complaint, Plaintiff applied for, and the Clerk entered, default against both Defendants. (ECF Nos. 26, 38.) In his present Motion, Plaintiff details his extensive efforts to

locate publicly available facts that reveal Defendant Moonbase's involvement with / connection to the publication and re-publication of the Article as well as how it assisted in the *Daily Stormer*'s financing and operations. (ECF No. 31 at PAGEID ## 414–21 (citing multiple exhibits, including declarations, attached thereto).) Plaintiff contends that good cause exists to permit limited discovery from two third parties, Greg Anglin (an Ohio resident and Defendant Anglin's father) and Zappitelli CPAs Inc. ("Zappitelli CPAs") (a certified public accounting business), to assist him in a forthcoming motion for default judgment against Defendant Moonbase. (*Id*. at 413, 422–29) Plaintiff explains that he seeks this discovery to enable him to make showings regarding the following: "(1) the need for immediate entry of default judgment against Defendant Moonbase; (2) how liability should be apportioned among Defendant Moonbase and the other defendants; and (3) the extent of Mr. Obeidallah's damages attributable to Defendant Moonbase." (*Id*. at PAGEID # 413.)

      The Court agrees that good cause exists for the discovery Plaintiff seeks. As set forth above, both Defendants are in default. (ECF Nos. 26 and 38.) In light of this posture, and particularly considering that Plaintiff was unable to identify an address for Defendant Anglin who was served by publication (ECF Nos. 34 and 36), it is unlikely that Defendants would respond to discovery requests. Moreover, as to the first showing, Plaintiff notes that the exigency of a defaulting defendant's insolvency, or impending insolvency, warrants the immediate entry of default judgment. (*Id*. at PAGEID # 423 (citing, *inter alia*, *Lucas v. Jolin*, No. 1:15-cv-108, 2015 WL 7292836 (S.D. Ohio Oct. 29, 2015), *adopted by* 2015 WL 7276808 (S.D. Ohio Nov. 18, 2015); *Lucas v. Telemarketer Calling from (407) 476-5680*, No. 1:12-cv-00630-TSB-SKB, 2014 WL 5308573, at *2 (S.D. Ohio Oct. 16, 2014)).) Plaintiff has some evidence that Defendant Moonbase is "on the cusp of insolvency," but needs additional

7

information to establish such insolvency.  (*Id*. at PAGEID ## 422–25 (citing sources of information shedding light on Defendant Moonbase's financial position).)  Plaintiff contends that he is unable to obtain the necessary information from Defendants given the difficulties in effecting service of process on them and that Defendant Moonbase is in default.  (*Id*. at PAGEID # 426.)  According to Plaintiff, Greg Anglin is likely to have relevant information as to Defendant Moonbase's solvency because Greg Anglin is a legally-authorized representative of Defendant Moonbase who is familiar with its operations, including its finances; his office was originally listed as the address at which all service of process for Defendant Moonbase should be directed and the *Daily Stormer*'s readership was likewise directed to send cash, checks, and money orders to Greg Anglin's office; evidence suggests Greg Anglin regularly retrieved mail from that office, possibly donations on Defendant Moonbase's behalf; Greg Anglin signed the trade name registration for "Andrew Anglin" as Defendant Anglin's "authorized representative"; and Defendant Anglin has directed the *Daily Stormer*'s readership to send donation to PO Box 208 which Greg Anglin, as the only person authorized to retrieve mail from that post office box, apparently received on behalf of Defendant Moonbase.  (*Id*. at PAGEID ## 426–27; *see also id*. at PAGEID ## 414–21.)

   Plaintiff further persuades this Court that Zappitelli CPAs likely has information related to Defendant Moonbase's insolvency because Zappitelli CPAs is a legally a legally-authorized representative of Defendant Moonbase.  (*Id*. at PAGEID # 427.)  Zappitelli CPAs appears to have been Defendant Moonbase's longtime certified public accountant, and, in light of that position and that its advertised services including cashflow analysis, forecasts/projects, business

appraisals and valuations, bookkeeping services, and preparation of federal, state, and city tax returns, it likely possesses information regarding Defendant Moonbase's finances. (*Id.*)[2]

Plaintiff has also persuaded the Court that good cause exists as to the second and third showings regarding how liability and damages should be apportioned between Defendant Moonbase and Defendant Anglin, particularly considering the extent that Defendant Moonbase published and republished the Article. (*Id.* at PAGEID ## 427–29.) As Plaintiff points out, the Court will have to determine what portion of liability should be apportioned among the Defendants in a forthcoming motion for default judgment. (*Id.* (citing, *inter alia*, *Munhwa Broad. Corp. v. Create New Tech. Co.*, No. 2:14-cv-04213, 2015 WL 12749448, at *5 (C.D. Cal. Sept. 2, 2015) (granting default judgment against one of several defendants where the defendant was jointly and severally liable and calculating the defendant's share of the damages by referencing plaintiff's expert testimony)).) Plaintiff persuades this Court that Greg Anglin, who executed numerous documents on behalf of Defendant Moonbase and may have received mail directed to it, is likely knowledgeable about Defendant Moonbase's role in the publication and republication of the Article. (*Id.* at PAGEID ## 414–21, 428 (citing various attached exhibits).)

In short, the Court finds good cause to permit Plaintiff to issue document subpoenas and/or deposition subpoenas to Greg Anglin and Zappitelli CPAs / Jon J. Zappitelli CPA, Inc. regarding the following topics: (1) the need for immediate entry of default judgment against Defendant Moonbase; (2) how liability should be apportioned among the Defendants; and (3) the extent of Plaintiff's damages attributable to Defendant Moonbase. *See Lemkin*, 2009 WL

---

[2] Plaintiff further represents that Zappitelli CPAs is a fictious name under which the registrant, Jon J. Zappitelli, CPA, Inc. ("Jon J. Zappitelli CPA"), conducts business. (*Id.* at PAGEID # 427 n.9; ECF No. 31-1 at PAGEID # 435 n.1.) Plaintiff therefore explains that he would direct the limited discovery requested to Jon J. Zappitelli CPA. (*Id.*)

1542731, at *2; *Luxottica Retail N. Am., Inc.*, 2014 WL 4626015, at *3; *Sheridan*, 244 F.R.D. at 522; *Twitch Interactive, Inc.*, 2017 WL 1133520, at *2; *Antoine*, 2016 WL 6138252, at *3–4; *cf. Alstom Power, Inc.*, 2016 WL 354754, at *3; *Nutrition Distrib. LLC*, 2017 WL 4391709, at *2; *Provectus Biopharm., Inc.*, 2016 WL 8738436, at *3.

In reaching this conclusion, the Court has considered Plaintiff's proposed document requests and deposition topics directed to Greg Anglin and Zappitelli CPAs / Jon J. Zappitelli CPA, Inc. (ECF No. 31-1.) As the Court has previously advised Plaintiff, *see* Opinion and Order, ECF No. 34, Plaintiff is **CAUTIONED** to carefully articulate requests to avoid objections based on scope and relevance.

### IV.

In sum, Plaintiff's Motion for Limited Discovery in Aid of Default Judgment against Defendant Moonbase Holdings, LLC (ECF No. 31) is **GRANTED** consistent with the foregoing.

Plaintiff is **ORDERED** to file a written status report by **OCTOBER 1, 2018**, unless he has filed a motion for default judgment against Defendant Moonbase Holdings, LLC prior to that date.

**IT IS SO ORDERED.**


Date: August 20, 2018                                    /s/ *Elizabeth A. Preston Deavers*
                                                         ELIZABETH A. PRESTON DEAVERS
                                                         UNITED STATES MAGISTRATE JUDGE