IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEAN OBEIDALLAH,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW B. ANGLIN,<br>    DBA *Daily Stormer*,<br><br>and<br><br>MOONBASE HOLDINGS, LLC,<br>    DBA Andrew Anglin,<br><br>and<br><br>JOHN DOES NUMBERS 1–10,<br>    Individuals who also assisted in the<br>    publication or representation of false<br>    statements regarding<br>    Mr. Obeidallah,<br><br>    Defendants. | CASE NO. 2:17-CV-00720-EAS-EPD<br><br>Chief Judge Edmund A. Sargus<br><br>Magistrate Judge Elizabeth Preston Deavers |

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS ANDREW B. ANGLIN AND MOONBASE HOLDINGS, LLC**

## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST
## DEFENDANTS ANDREW B. ANGLIN AND MOONBASE HOLDINGS, LLC

Plaintiff Dean Obeidallah respectfully moves the Court for default judgment against Defendants Andrew B. Anglin and Moonbase Holdings, LLC in the above-captioned action ("Action"). Mr. Obeidallah further respectfully requests that he be given until February 15, 2019 to submit supplemental evidence in support of his claim for appropriate default damages and moves for leave to conduct discovery in furtherance of that objective.

Respectfully submitted,

*/s/ Subodh Chandra (trial counsel)*

Abid R. Qureshi (D.C. Bar No. 459227)
LATHAM & WATKINS LLP
555 Eleventh St., NW, Suite 1000
Washington, D.C. 20004-1304
Phone: 202.637.2200 Fx: 202.637.2201
abid.qureshi@lw.com

Johnathan Smith (D.C. Bar No. 1029373)
Juvaria Khan (N.Y. Bar No. 5027461)
MUSLIM ADVOCATES
P.O. Box 66408
Washington, D.C. 20035
Phone: 202.897.1894
johnathan@muslimadvocates.org
juvaria@muslimadvocates.org

*Admitted pro hac vice*

Subodh Chandra (OH Bar No. 0069233)
Donald Screen (OH Bar No. 0044070)
THE CHANDRA LAW FIRM LLC
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
Phone: 216.578.1700 Fx: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Donald.Screen@ChandraLaw.com

*Attorneys for Plaintiff Dean Obeidallah*

Plaintiff Dean Obeidallah respectfully moves the court pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure for default judgment against Defendants Andrew B. Anglin ("Defendant Anglin") and Moonbase Holdings, LLC ("Moonbase") (collectively, the "Defendants") in the above-captioned action ("Action"). Mr. Obeidallah is filing, in conjunction with this Motion for Default Judgment: (1) a Status Report seeking leave to supplement this Motion on or before February 15, 2019 with evidence in support of his claim for appropriate default damages; and (2) a Motion for Additional Discovery, seeking leave to take limited discovery in aid of his presentation on default damages.

## I.      INTRODUCTION & SUMMARY OF ARGUMENT

Mr. Obeidallah is a comedian, frequent political commentator, and "one of the nation's best known Muslim American comedians" who "hosts the national daily radio program 'The Dean Obeidallah show' on SiriusXM radio." Compl. ¶ 4, ECF No. 1. "[H]e is the first American Muslim to host a national radio show." *Id.* ¶ 11. Mr. Obeidallah also regularly contributes "to several news outlets, including CNN and *The Daily Beast.*" *Id.*

Mr. Obeidallah brought this Action seeking redress for the publication of a news article containing false and defamatory statements about Mr. Obeidallah by the Defendants. Among other things, Defendants falsely claimed that Mr. Obeidallah is a terrorist, and fabricated evidence to support that and other false accusations. Defendants did so with malice or, at the very least, a reckless disregard for the truth. Mr. Obeidallah has suffered threats, emotional distress, and permanent reputational harm as a result of the Defendants' unlawful and tortious conduct.

Mr. Obeidallah has served Defendants in accordance with federal and Ohio state law. Both Defendant Anglin and Moonbase failed to enter appearances or file responsive pleadings within the prescribed period despite the fact that Defendant Anglin (who is also Moonbase's registered agent for

service) is fully aware of and regularly mocks the existence of this Action. Due to Moonbase's failure to respond, the Clerk has entered default against the Defendants pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. Moonbase Entry of Default, ECF No. 26; Anglin's Entry of Default, ECF No. 38.

## II.    ARGUMENT

Rule 55 of the Federal Rules of Civil Procedure "contemplates a two-step process in obtaining a default judgment against a defendant who has failed to plead or otherwise defend." *DT Fashion LLC v. Cline*, No. 2:16-CV-1117, 2018 WL 542268, at *2 (S.D. Ohio Jan. 24, 2018) (Sargus, C.J.) (citation omitted). First, "[a] plaintiff must . . . request an entry of default from the Clerk of Courts." *Id.* (citing Fed. R. Civ. P. 55(a)). Second, "[u]pon the Clerk's entry of default, 'the complaint's factual allegations regarding liability are taken as true, while allegations regarding the amount of damages must be proven.'" *Id.* (quoting *United States v. Parker-Billingsley*, No. 3:14-cv-307, 2015 WL 4539843, at *1 (S.D. Ohio Feb. 10, 2015); *see also Bd. of Trustees of Ohio Laborers' Fringe Benefits Programs v. Dan Ray Constr.*, No. 2:17-CV-00180, 2018 WL 2435184, at *1 (S.D. Ohio May 30, 2018) (Sargus, C.J.) ("When ruling on a motion for default judgment, a plaintiff's well-pleaded allegations as to the defendant's liability are normally accepted as true." (citing *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995)).

### A.    Defendants Anglin and Moonbase Are In Default

Mr. Obeidallah has successfully served both Defendants Anglin and Moonbase in accordance with federal and Ohio state law.[1] The Clerk has entered default as to each of the Defendants and, as

---

[1]      Mr. Obeidallah also now requests that all claims against the Doe Defendants be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m), as the Doe Defendants have not been served, and the complaint was filed more than 90 days ago. Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.")

a result, the Court should proceed to enter default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.

Mr. Obeidallah effected service on Moonbase on October 31, 2017 in accordance with Ohio Rev. Code § 1705.06, which authorizes service upon the Ohio Secretary of State (the "Secretary") as the agent of a limited liability company ("LLC"). *See* Req. for Entry of Default, ECF No. 25 (reflecting summary of process by which Mr. Obeidallah effectuated service on Defendant Moonbase). Moonbase failed to enter an appearance or file a responsive pleading. As a result, on January 26, 2018, Mr. Obeidallah filed a Request for Entry of Default in accordance with Rule 55(a) of the Federal Rules of Civil Procedure. *Id.* The Clerk entered default against Moonbase on January 29, 2018. Moonbase's Entry of Default, ECF No. 26.

Mr. Obeidallah also effected service on Defendant Anglin on May 30, 2018 in accordance with Ohio R. Civ. P. 4.4(A) and the Court's April 13, 2018 Order, both of which authorized service of Defendant Anglin by publication. *See* Op. and Ord. 9-12, ECF No. 34 (authorizing service by publication); Pl.'s Notice of Publication 1-2, ECF No. 36. Defendant Anglin failed to enter an appearance or file a responsive pleading. As a result, on July 2, 2018, Mr. Obeidallah filed a Request for Entry of Default in accordance with Rule 55(a) of the Federal Rules of Civil Procedure. ECF No. 37. The Clerk entered default against Defendant Anglin on July 3, 2018. Anglin's Entry of Default, ECF No. 38.

### B. Mr. Obeidallah's Claims Against Defendants Anglin and Moonbase Are Well Pled and Meritorious

Mr. Obeidallah's Complaint asserts well-pled and meritorious claims against Defendants Anglin and Moonbase for: (1) libel (Count I); (2) false light invasion of privacy (Count II); (3) intentional and negligent infliction of emotional distress (Counts III and IV); and (4) common law

misappropriation of Mr. Obeidallah's name and likeness (Count V).[2]  As a result, the Court should proceed to determine damages for each of those claims.

        1.        <u>Libel (Count I)</u>

"Under Ohio law, to bring a claim for defamation a plaintiff must establish that the defendant made '(1) a false and defamatory statement, (2) about the plaintiff, (3) published without privilege to a third party, (4) with fault or at least negligence on the part of the defendant, and (5) that was either defamatory per se or caused special harm to the plaintiff.'" *Davis v. Jackson Cty. Mun. Court*, 941 F. Supp. 2d 870, 882 (S.D. Ohio 2013) (Sargus, C.J.) (citing *Thomas v. Cohr, Inc.*, 197 Ohio App. 3d 145, 151, 966 N.E.2d 915 (Ohio Ct. App. 2011)); *see also Clough v. Haines*, 2018 WL 3432037, at *2 (Ohio Ct. App. July 16, 2018) (same).  "Spoken defamatory words are referred to as slander and written or printed defamatory words are referred to as libel." *Blair v. Bd. of Sugarcreek Twp.*, No. 3:07-CV-056, 2008 WL 11352586, at *15 (S.D. Ohio May 22, 2008).

First, the Defamatory Article reflects numerous "false and defamatory" statements regarding Mr. Obeidallah, and those statements constitute defamation per se, thereby satisfying the first, second, and fifth elements of his libel claim.  The Defamatory Article contains no fewer than 32 false and defamatory statements regarding Mr. Obeidallah[3], which can be grouped by subject matter into seven categories.  These include:

        **1.**        **Claiming Mr. Obeidallah Planned and Perpetrated Terrorist Acts, and Lent Material Support to Terrorist Organizations**

---

[2]      Mr. Obeidallah also pled a cause of action for Civil Conspiracy (Count VI).  Complaint ¶ 102, ECF No. 1.

[3]      A copy of the Defamatory Article was attached to the Complaint as Exhibit A, and the Complaint quotes extensively from the Defamatory Article.  As a result, the Defamatory Article is "central to [Mr. Obeidallah's claims," and the Court can look to it as well as the Complaints allegations to identify all of the Defendants' false and defamatory statements. *Cf. In re Fair Fin. Co.*, 834 F.3d 651, 656 n.1 (6th Cir. 2016) (stating "[b]ecause the attached documents were incorporated by reference and quoted extensively, they are central to Trustee's claims").

a.  referring in the title to Mr. Obeidallah as the "Mastermind Behind Manchester Bombing," Compl. ¶ 1, ECF No. 1; *see also* Compl., Ex. A, at 1.

b.  describing Mr. Obeidallah as "the mastermind behind the Machester [sic] Arianacaust," a reference to the Manchester Bombing, Compl. ¶ 23, ECF No. 1; *see also* Compl., Ex. A, at 1.

c.  describing Mr. Obeidallah as "a confessed terrorist," Compl. ¶ 23, ECF No. 1; *see also* Compl., Ex. A, at 1.

d.  describing Mr. Obeidallah as an "admitted terrorist," Compl., Ex. A, at 2.

e.  claiming Mr. Obeidallah "declared responsibility for the attack [*i.e.*, the Manchester Bombing] via Twitter," Compl. ¶ 28, ECF No. 1; Compl., Ex. A, at 2.

f.  fabricating a Twitter message, purportedly authored by Mr. Obeidallah, stating: "I am now able to confirm that I personally planned the Manchester bombing," Compl. ¶¶ 28-29, ECF No. 1; Compl., Ex. A, at 3.

g.  claiming Mr. Obeidallah "appeared on CNN to talk about how he planned the attack [*i.e.*, the Manchester Bombing], and encouraged others to carry-out more such attacks," Compl. ¶ 30, ECF No. 1; Compl., Ex. A, at 3.

h.  fabricating a Twitter message, purportedly authored by Mr. Obeidallah, stating: "All glory is to Allah, . . . for it is only by his grace I was successfully able to execute the Manchester bombing," Compl. ¶¶ 33-34, ECF No. 1; Compl., Ex. A, at 4.

i.  claiming Mr. Obeidallah invited a guest onto his SiriusXM radio show "to talk about how Moslems could carry out Manchester-type terrorist attacks in America," Compl., Ex. A, at 6.

j.  referring to Mr. Obeidallah as one of the "literal ISIS masterminds are openly planning terrorism" on Mr. Obeidallah's SiriusXM radio show, Compl., Ex. A, at 6.

k.  fabricating a Twitter message, purportedly authored by Mr. Obeidallah, in which Mr. Obeidallah advertises that he will discuss on his SiriusXM radio show "planning further attacks in America," Compl. ¶¶ 35-36, ECF No. 1; Compl., Ex. A, at 7.

l.  claiming Mr. Obeidallah "was invited onto CNN to explain how he carried out the bombing [*i.e.*, the Manchester Bombing], and to give advice to others planning similar attacks," Compl. ¶ 37, ECF No. 1; Compl., Ex. A, at 8.

m.  fabricating a Twitter message, purportedly authored by Mr. Obeidallah, stating: "Ill be on [CNN tonight] . . . discussing how I masterminded the Manchester bombing," Compl. ¶¶ 37-38, ECF No. 1; Compl., Ex. A, at 8.

n.     fabricating a Twitter message, purportedly authored by Mr. Obeidallah, stating: "All glory to Allah most merciful for the events in Manchester, which I planned," Compl. ¶¶ 39-40, ECF No. 1; Compl., Ex. A, at 9.

o.     claiming Mr. Obeidallah "did an entire 3 hour Sirius-XM broadcast speculating about whether more of those injured in the attack [*i.e.*, the Manchester Bombing] would die in the hospital, thus increasing his "score," Compl. ¶ 41, ECF No. 1; Compl., Ex. A, at 9.

p.     fabricating a Twitter message, purportedly authored by Mr. Obeidallah, stating: "Praise Allah, 22 is a pretty good score, inshallah more will die in hospital," another statement made to impute responsibility for the Manchester Bombing, Compl. ¶¶ 41-42, ECF No. 1; Compl., Ex. A, at 9.

q.     describing Mr. Obeidallah as an "admitted terrorist mastermind," Compl., Ex. A, at 10.

r.     claiming Mr. Obeidallah "carried out the Manchester attack," a reference to the Manchester Bombing, Compl., Ex. A, at 10.

## 2.    Claiming Mr. Obeidallah Threatened to Assault His SiriusXM Radio Show Audience

a.     claiming Mr. Obeidallah threatened the audience of his SiriusXM radio show who "call[ed] in to complain about him doing" the Manchester Bombing, having "said 'you're next,'" Compl. ¶ 41, ECF No. 1; Compl., Ex. A, at 9.

## 3.    Claiming Mr. Obeidallah Is a Wanted Fugitive Evading Law Enforcement to Obstruct an Investigation Into the Manchester Bombing

a.     claiming Mr. Obeidallah is "wanted by Europol, MI-5, Interpol and a litany of other international authorities," Compl. ¶ 23, ECF No. 1; *see also* Compl., Ex. A, at 1.

b.     claiming Mr. Obeidallah is "being sought for questioning by MI-5 in connection to the" Manchester Bombing, and instead of complying "caught a flight to Turkey and was smuggled across the border into Syria by the Erdogan military," Compl., Ex. A, at 2.

## 4.    Claiming Mr. Obeidallah Is Affiliated With and Supports ISIS, a Foreign Terrorist Organization

a.     describing Mr. Obeidallah as "ISIS terrorist Dean Obeidallah," Compl. ¶ 23, ECF No. 1; *see also* Compl., Ex. A, at 1.

b.     claiming that "ISIS has received hundreds of millions of dollars worth of weapons from NATO," and that Mr. Obeidallah is "fearful the supply will be cut," Compl., Ex. A, at 4.

      c.         referring to "ISIS terrorists like Dean Obeidallah," Compl., Ex. A, at 10.

**5.**     **Claiming Mr. Obeidallah Has Praised Known Terrorists**

      a.         fabricating a Twitter message, purportedly authored by Mr. Obeidallah, in which Mr. Obeidallah is represented as praising Akhi Salman Abedi, the individual who perpetrated the Manchester Bombing, and stating that Abedi's "reward is paradise eternal," Compl. ¶¶ 28-29, ECF No. 1; Compl., Ex. A, at 3.

      b.         fabricating a Twitter message, purportedly authored by Mr. Obeidallah, in which Mr. Obeidallah is represented as stating that "Akhi Salman Abedi now resides in paradise, by Allah's mercy," Compl. ¶¶ 28-29, ECF No. 1; Compl., Ex. A, at 9.

**6.**     **Claiming Mr. Obeidallah Has Advocated for an Islamic Caliphate and/or Islamic "Takeover"**

      a.         claiming Mr. Obeidallah expressed support for Angela Merkel, the German chancellor, due to her "enthusiastic support for an Islamic takeover of Europe," Compl., Ex. A, at 4.

      b.         claiming Mr. Obeidallah "bragged about turning America brown, which is the ultimate goal of the Islamic Caliphate," Compl., Ex. A, at 7.

**7.**     **Claiming Mr. Obeidallah Disparages Caucasians**

      a.         claiming Mr. Obeidallah authored an op-ed seeking to "declare [w]hites are the real terrorists," Compl., Ex. A, at 1.

      b.         claiming Mr. Obeidallah "attack[ed] whites for 'terrorism,'" Compl., Ex. A, at 2.

      c.         claiming Mr. Obeidallah discussed on his SiriusXM radio show "how Moslems should find 'the whitest places in America' to do . . . attacks," Compl., Ex. A, at 7.

      d.         claiming Mr. Obeidallah "thinks White people should be arrested and punished," Compl., Ex. A, at 9.

Each of the Defendants' above-referenced statements regarding Mr. Obeidallah is false. *See, e.g.,* Compl. ¶ 23 ("As Defendants knew, these statements are false. Mr. Obeidallah, in fact, has no affiliation to ISIS, is not a terrorist, and is not wanted by any law enforcement authorities, including Europol, MI-5, and Interpol."); *id.* ¶ 24 ("Defendants published the false statements in the Article with knowledge of the falsity of those statements or with reckless disregard for the truth."); *id.* ¶¶ 29,

32, 34, 36, 38, 40, 42 (establishing falsity of each fabricated twitter messages); *id.* ¶ 43-44 (alleging "statements discussed in Paragraphs 28 – 42 contained in the Article (among others) are false, misleading, and defamatory").

Each of the Defendants' above-referenced statements regarding Mr. Obeidallah constitutes defamation per se. *Fuyao Glass Am. Inc.*, No. 3:17-CV-00186-TMR, 2017 WL 6262189, at *8 (S.D. Ohio Dec. 8, 2017). Under Ohio law, whether a statement is defamatory is a question of law. *See, e.g.*, *Guisinger v. E.A. Tow Transp., Inc.*, No. 2:17-CV-285, 2018 WL 2432751, at *5 (S.D. Ohio May 30, 2018) ("[W]hether a statement is defamatory per se is a question of law for the Court."). Statements may constitute: (1) defamation per se; or (2) defamation per quod. "Defamation per se occurs when material is defamatory on its face; [whereas] defamation per quod occurs when material is defamatory through interpretation or innuendo." *Pietrangelo v. Lorain Cty. Pr. & Pub. Co.*, 100 N.E.3d 1028, 1033 (Ohio Ct. App. 2017). Defamation per se includes: "1) words which import an indictable criminal offense involving moral turpitude; 2) words which impute a loathsome or contagious disease which excludes one from society; or 3) words which tend to injure one in his trade or business occupation." *Dunnigan v. City Of Lorain*, 2002 WL 31313216, at *6 (Ohio Ct. App. Oct. 16, 2012). The above-referenced statements satisfy the first and/or third types of defamation per se.

Categories 1 and 2 of the above-referenced statements constituted defamation per se because they import to Mr. Obeidallah "an indictable criminal offense" recognized under Ohio and federal law as involving moral turpitude. Specifically, Categories 1 and 2 suggest Mr. Obeidallah:

1. planned and perpetrated the Manchester Bombing, which resulted in 23 deaths and 250 injuries, *see, e.g.*, 18 U.S.C. § 2332b(a)(1) (acts of terrorism transcending national boundaries); *id.* § 2332f(a)(1) & (2) (bombing of places of public use, and attempts or conspiracies in relation thereto); Ohio Rev. Code §§ 2903.01 (aggravated murder); *id.* § 2903.02 (murder); Ohio Rev. Code § 2909.24 (acts of terrorism).

2.     provided material support to terrorists by using his SiriusXM radio show, appearances on CNN, and Twitter feed to aid: (a) in the preparation and/or execution of terrorist acts; and (b) ISIS, a designated foreign terrorist organization ("FTO"), *see, e.g.*, 18 U.S.C. § 2339A (material support to terrorists); *id.* § 2339B (material support or resources to designated FTOs); U.S. Department of State, *Foreign Terrorist Organizations*, https://www.state.gov/j/ct/rls/other/des/123085.htm (designating ISIS-Bangladesh, ISIS-Philippines, ISIS-West Africa, and ISIS-Greater Sahara as FTOs).

3.     threatened to kill or injure his SiriusXM radio show's listeners, *see, e.g.*, Ohio Rev. Code §§ 2903.13.

Each of these crimes reflects an "offense involving moral turpitude" under Ohio and/or federal law. Ohio defines crimes of moral turpitude to include any "offense of violence," which in turn is defined to include acts of terrorism, murder, aggravated murder, and assault. *See* Ohio Rev. Code. § 4776.10(A)(3) (defining "[c]rime of moral turpitude" to include an "offense of violence" as defined in Ohio Rev. Code § 2901.01); *Id.* § 2901.01 (defining "[o]ffense of violence" to include violations of Ohio Rev. Code §§ 2903.01 (aggravated murder), 2903.02 (murder), 2903.13 (assault), and 2909.24 (terrorism)). Similarly, the Sixth Circuit has suggested that crimes of moral turpitude under federal law include "those that involve a certain degree of 'baseness or depravity,' such as murder, rape, robbery, kidnapping, abuse, or some forms of aggravated assault." *Ruiz-Lopez v. Holder*, 682 F.3d 513, 519 (6th Cir. 2012).

The above-referenced statements also constitute defamation per se because they "tend to injure" Mr. Obeidallah's "trade or business occupation." To establish defamation per se based on such injury, a plaintiff "need not prove that he was actually injured; he need only prove that the content of the statement is such that it would tend to injure . . . [plaintiff] in his trade or occupation." *Guisinger v. E.A. Tow Transp.*, Inc., No. 2:17-CV-285, 2018 WL 2432751, at *5 (S.D. Ohio May 30, 2018). As

alleged in the Complaint, Mr. Obeidallah "is a comedian and commentator who hosts *The Dean Obeidallah Show* on SiriusXM radio, . . . [and] [h]e also writes political-opinion pieces to several news outlets, including CNN and *The Daily Beast*." Compl. ¶ 11, ECF No. 1.

The false and defamatory statements listed in Categories 1 and 2 tend to injure Mr. Obeidallah's trade and business occupation because both media organizations and his audience are likely to distance themselves from Mr. Obeidallah insofar as they believe he commits violent, terrorist acts, or threatens to kill his listeners. This is particularly true since the statements in Category 1 suggest that Mr. Obeidallah exploits his media appearances to lend material support to terrorism. Similarly, Defendants' statements in Categories 3, 4, and 5 claim that Mr. Obeidallah is affiliated with and praises terrorists, and is evading law enforcement to obstruct an investigation into the Manchester Bombing, all of which damage Mr. Obeidallah's reputation with his media partners and audience. The statements in Category No. 6 claim that Mr. Obeidallah supports an Islamic Caliphate and/or "Takeover," both of which are extreme and unfounded positions that would hamper his career as a comedian and political commentator. Finally, the statements in Category No. 7 suggest that Mr. Obeidallah espouses significant, dangerous prejudices toward Caucasians, an important demographic of his comedy shows, SiriusXM radio show, and political commentary.

As alleged in the Complaint, "Defendants published false factual statements and fabricated evidence on the Daily Stormer that was meant to—and did, in fact—harm Mr. Obeidallah's reputation and business." Compl. ¶ 9, ECF No. 1; *see also id.* ¶ 68 (alleging Defendants published the Defamatory Article "with the intent of . . . injuring [Mr. Obeidallah's] reputations, and harming business opportunities"); *id.* ¶ 71 (stating that Defendants' defamatory "statements were published with the intent of harming Mr. Obeidallah's reputation and career"). Taking the Complaint's factual allegations as true, *see DT Fashion*, 2018 WL 542268, at *2, this Court has found defamation per se under similar circumstances, *see, e.g., King Memory LLC v. Computer Memory Sols., Inc.*, No. 2:16-CV-529, 2017 WL

57866, at \*3 (S.D. Ohio Jan. 3, 2017) (Sargus, C.J.) (finding plaintiff adequately alleged defamation per se claim where "Defendant's statements have purportedly injured Plaintiffs' trade or occupation" by negatively impacting plaintiff's Amazon seller metrics which, in turn, harmed plaintiff's "selling privileges" and its "ability to obtain financing from Amazon"); *Guisinger v. E.A. Tow Transp., Inc.*, No. 2:17-CV-285, 2018 WL 2432751, at \*5 (S.D. Ohio May 30, 2018) (denying summary judgment on counterclaim of defamation per se where the alleged "statements tend to injure [Plaintiff / Counterclaim Defendants'] professional reputation in his . . . business."

Second, the third element of Mr. Obeidallah's libel claim is satisfied because the defamatory statements were "published without privilege to a third party."[4] As alleged in the Complaint, Defendants published the Defamatory Article on the website the *Daily Stormer* on June 1, 2017. *See, e.g.*, Compl. ¶ 1, ECF No. 1. The *Daily Stormer* "holds itself out as a news website that is willing to do 'the job other news websites won't do,'" and during the one-month period immediately preceding and following the Defamatory Article's publication the *Daily Stormer* was "estimated to have had 3.18 million visits, with 11.4 million page views." *Id.* ¶ 21. There is also evidence that numerous third parties did, in fact, read the Defamatory Article based on comments posted on the *Daily Stormer*'s then-existent message board. *See, e.g.*, *id.* ¶¶ 46-51.

Finally, Defendants published the defamatory statements "with fault or at least negligence," thereby satisfying the fourth element of Mr. Obeidallah's defamation claim. "The fourth element of fault is determined by whether the alleged defamer acted reasonably in attempting to discover the

---

[4] Mr. Obeidallah was not required to plead that the defamatory statements were published "without privilege" because, under Ohio law, "privilege is an affirmative defense to a defamation claim" and it is unnecessary to "plead facts to defeat an affirmative defense." *MedChoice Fin., LLC v. ADS All. Data Sys., Inc.*, 857 F. Supp. 2d 665, 674 (S.D. Ohio 2012); *see also In re Fair Fin. Co.*, 834 F.3d 651, 678 (6th Cir. 2016) (stating that "a basic principle of federal civil procedure: a plaintiff is not required to plead facts necessary to defeat an affirmative defense"); *Reddy v. JPMorgan Chase Bank, N.A.*, No. 2:09-CV-1152, 2011 WL 1641261, at \*3 (S.D. Ohio May 2, 2011) ("Privilege is an affirmative defense under the law of defamation.").

truth or falsity or defamatory character of the publication." *Konica Minolta Business Solutions, U.S.A., Inc. v. Allied Office Products, Inc.*, 724 F. Supp. 2d 861, 2010 WL 2760723, at *4 (S.D. Ohio July 13, 2010) (quoting *Franks v. Lima News*, 672 N.E.2d 245, 248 (Ohio App. 3rd Dist. 1996)). Under Ohio law, the level of "fault" required depends on whether the plaintiff is a: (1) private person; (2) public official; (3) public figure; or (4) limited purpose public figure. *Ehrlich v. Kovack*, 135 F. Supp. 3d 638, 673 (N.D. Ohio 2015) (citing *Kassouf v. Cleveland Magazine City Magazines*, 755 N.E.2d 976 (Ohio App. 11th Dist. 2001)). That determination is a question of law. *Id.* "[A] private plaintiff must show . . . that the defendant was at least negligent in publishing the false statement." *Kassouf*, 755 N.E.2d at 982–83. Alternatively, a plaintiff who qualifies as a public official, public figure, or limited purpose public figure must show "actual malice," which "is demonstrated by evidence that shows that the defendant published the statement with knowledge that it was false or that the defendant published the statement with reckless disregard as to whether it was false or not." *Id.* at 983.

The Complaint's allegations easily satisfy the fourth element of Mr. Obeidallah's libel claim, even if the Court concludes that Mr. Obeidallah was required to allege the heightened "actual malice" standard. Mr. Obeidallah alleged that "Defendants published the false statements in the Article with knowledge of the falsity of those statements or with reckless disregard for the truth." Compl. ¶ 24, ECF No. 1; *see also, e.g.*, *id.* ¶ 71 (same). The Complaint also sets forth numerous facts in support of that allegation. For example, Mr. Obeidallah alleged that

> [n]ews outlets widely reported the identities of many of those suspected of planning and perpetrating the Manchester Bombing, including the bomber, Salman Abedi, before the [Defamatory] Article's publication," and that "Defendants, with malice and knowledge, or reckless disregard, ignored these widespread news reports in publishing the [Defamatory] Article, and . . . possessed no information to support their false statements of facts regarding Mr. Obeidallah.

*Id.* ¶ 25. He further alleged that "Defendants conducted no independent investigation regarding any of the Article's false statements of fact regarding Mr. Obeidallah," and "ignored readily available public information to assert that Mr. Obeidallah planned the Manchester Bombing, was wanted by

international law enforcement, and/or that he fled to Syria to seek asylum." *Id.* ¶ 26. Finally, Mr. Obeidallah alleged that Defendants "fabricated Twitter messages," sought to "confuse readers and prevent them from identifying which of the [Defamatory] Article's statements were false" by "includ[ing] some authentic, unaltered material authored by Mr. Obeidallah, and "published the Article on the *Daily Stormer*, which represents itself as a news website." *Id.* ¶ 27(a)-(c).

### 2.    False Light Invasion of Privacy (Count II)

Under Ohio's tort for false light invasion of privacy ("false light"), "'one who gives publicity to a matter concerning another that places the other before the public in a false light' is liable if '(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Roe v. Amazon.com*, 714 F. App'x 565, 568 (6th Cir. 2017) (quoting *Welling v. Weinfeld*, 866 N.E.2d 1051, 1059 (2007)).

The Ohio Supreme Court has, however, stated that while false light "will afford an alternative or additional remedy" to libel or slander, and "the plaintiff can proceed upon either theory, or both, . . . he can have but one recovery for a single instance of publicity." *Welling*, 866 N.E.2d at 1058. As explained above in Part B.1, the Defamatory Article reflects 32 false statements, all of which constitute defamation per se under Ohio law. As a result, Mr. Obeidallah seeks recovery for false light (Count II) only to the extent that the Court concludes that any of the 32 statements identified in Part B.1 do not constitute defamation per se under Ohio law (Count I).

First, to establish a claim for false light "the statement made must be untrue." *Welling*, 866 N.E.2d at 1057. As explained above, there are no fewer than 32 statements found in the Defamatory Article regarding Mr. Obeidallah which are false. This conclusion is well supported by the Complaint's allegations, *see supra* Part B.1.

Second, the false "information must be 'publicized,' which is different from 'published.'" *Welling*, 866 N.E.2d at 1057. The term "publication," as used in regard to defamation, "is a word of art, which includes any communication by the defendant to a third person." *Id.* Alternatively, "publicity" means "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* The Complaint's allegations establish that Defendants "publicized" the Defamatory Article, which was published on the *Daily Stormer* on June 1, 2017. Compl. ¶ 1, ECF No. 1. The Complaint cites statistics from "Alexa, a prominent website tracking company owned by Amazon," to show that "from May 13 – June 12, 2017 the *Daily Stormer* was the most popular white nationalist / Neo-Nazi website on the Internet," with an "estimated . . . 3.18 million visits, . . . [and] 11.4 million page views, during this time period." *Id.* ¶ 21. The Complaint also alleges that the Defamatory Article was, in fact, viewed by the *Daily Stormer*'s audience, having offered screen shots and descriptions of numerous threatening messages posted to the *Daily Stormer*'s message board by readers who believed Defendants' false statements regarding Mr. Obeidallah. *Id.* ¶¶ 46-52.

Third, false light requires that "the misrepresentation made must be serious enough to be highly offensive to a reasonable person." *Welling*, 866 N.E.2d at 1057. This occurs when "there is such a major misrepresentation of [the plaintiff's] character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable man in his position." *Id.* at 1057-58. The statements set forth under Categories 1, 2, and 3 in Part B.1 meet the standard because they claim that Mr. Obeidallah is involved in terrorist activities and has sought to obstruct law enforcement's investigation into the Manchester Bombing. *See King v. Semi Valley Sound*, L.L.C., 2011 WL 2853215, at *3-4 (Oh. App. Ct. June 20, 2011) (denying motion to dismiss where magazine identified plaintiff as "registered" sex offender at a time when he was not so registered); Restatement of the Law 2d, Torts, Section 652D, Comment c (stating, in Illustration 7, that false light would arise where individual

is falsely identified as a convicted criminal); Compl. ¶ 77 (alleging "Mr. Obeidallah, like any reasonable person, was highly offended by being labeled a member of ISIS and/or a terrorist mastermind."). Alternatively, the statements under Categories 4, 5, 6, and 7 meet the standard because they falsely claim that Mr. Obeidallah is sympathetic to radical Islamist ideology and efforts to harm Caucasians. *See, e.g., Boulger v. Woods*, 306 F. Supp. 3d 985, 1004 (S.D. Ohio 2018) (stating "the Court has no trouble concluding that [defendant's] tweet" falsely suggesting plaintiff was a Nazi sympathizer "would be highly offensive to a reasonable person").

Finally, false light requires "that the defendant 'had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" *Welling*, 866 N.E.2d at 1058 (quoting Restatement of the Law 2d, Torts, Section 652E(b)). The falsity of Defendants' statements in the Defamatory Article is well established by the Complaint's allegations and Mr. Obeidallah's declaration. *See supra* Part B.1 . Additionally, Mr. Obeidallah alleged that "Defendants acted without regard to the false light in which the [Defamatory] Article would place Mr. Obeidallah." Compl. ¶ 81, ECF No. 1.

### 3. Intentional Infliction of Emotional Distress (Count III)

To establish a claim for intentional infliction of emotional distress under Ohio law[5], a plaintiff must allege facts showing that:

> 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go beyond all bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; 3) that the actor's actions were the proximate cause of plaintiff's psychic injury; and 4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable man could be expected to endure it.

---

[5] Mr. Obeidallah also alleged, in Count IV of the Complaint, a claim for negligent infliction of emotional distress. Since Mr. Obeidallah is pursuing relief under Count III for intentional infliction of emotional distress, he is no longer seeking recovery under Count IV.

*Daniels v. Pike Cty. Commissioners*, 706 F. App'x 281, 293 (6th Cir. 2017) (citations omitted).

First, the Complaint establishes that Defendants acted intentionally, or at least with disregard, in causing Mr. Obeidallah's severe and serious emotional distress. The Complaint alleges that "Defendants intended to cause Mr. Obeidallah severe and serious emotional distress through, among other things, their publication of false statements of fact and their efforts to elicit threats of death and bodily harm against Mr. Obeidallah." Compl. ¶ 83, ECF No. 1. The Complaint further alleges that "Defendants knew or should have known that their actions would result in Mr. Obeidallah's severe and serious emotional distress by, among other things, impacting his reputation amongst his audience and potential employers and eliciting threats of death and bodily harm against Mr. Obeidallah in response to their false and defamatory statements." *Id.* at ¶ 84.

Second, "whether an individual's conduct rises to the level of 'extreme and outrageous' is a matter of law." *Garner v. Harrod*, No. 2:13-CV-678, 2015 WL 5793934, at *11 (S.D. Ohio Sept. 30, 2015) (Sargus, C.J.), *aff'd*, 656 F. App'x 755 (6th Cir. 2016). The Court's analysis is driven by the standard adopted by the Ohio Supreme Court which, in turn, is borrowed from the Restatement (Second) of Torts:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' . . . The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions or other trivialities.

*Hookman v. Aaron's Inc.*, No. 2:15-CV-2318, 2017 WL 1155925, at *4 (S.D. Ohio Mar. 27, 2017) (Sargus, C.J.) (quoting *Yeager v. Local Union 20*, 453 N.E. 2d 666, 671 (1983), *abrogated on other grounds*,

*Wellington v. Weinfeld*, 866 N.E. 2d 1051 (2007)); *see also* Restatement (Second) of Torts § 46, cmt. d (1965).

The Restatement (Second) of Torts, from which the Ohio Supreme Court borrowed its "extreme and outrageous" standard, provides an instructive illustration:

> A, the president of an association of rubbish collectors, summons B to a meeting of the association, and in the presence of an intimidating group of associates tells B that B has been collecting rubbish in territory which the association regards as exclusively allocated to one of its members. A demands that B pay over the proceeds of his rubbish collection, and tells B that if he does not do so the association will beat him up, destroy his truck, and put him out of business. B is badly frightened, and suffers severe emotional distress. A is subject to liability to B for his emotional distress, and if it results in illness, A is also subject to liability to B for his illness.

Restatement (Second) Torts § 46, cmt. d (Illustration No. 2).

Defendants' conduct, as alleged in the Complaint, is largely analogous to this illustration. Defendants published the Defamatory Article on the *Daily Stormer* and falsely state that Mr. Obeidallah: (1) "is the 'mastermind' of the Manchester Bombing, has celebrated the death of the innocent victims, and has encouraged others to carry out similar attacks"; and (2) "has fled to Syria and is wanted by law enforcement for his alleged role in that terrorist act"; and (3) "uses his radio show and social-media platforms to promote terrorism and violence towards non-Muslims." Compl. ¶ 3, ECF No. 1. Defendants then invited the *Daily Stormer*'s readership to "confront" Mr. Obeidallah regarding these false statements, and published the Defamatory Article as part of "their efforts to elicit threats of death and bodily harm against Mr. Obeidallah." *Id.* ¶ 8, 83. Moreover, Defendants knew or reasonably should have known that Mr. Obeidallah would perceive the Defamatory Article's audience—the *Daily Stormer*'s readership—as intimidating given their responsibility for a rash of recent, serious racially motivated attacks (including in New York, New York, where Mr. Obeidallah resides). *Id.* ¶ 56.

Third, Mr. Obeidallah has alleged that "Defendants' conduct is the proximate cause of Mr. Obeidallah's emotional distress." Compl. ¶ 87, ECF No. 1. Specifically, "Mr. Obeidallah did not

suffer from emotional distress before learning of Defendants' false and defamatory statements and the concomitant threats of death and bodily harm that the Article elicited." *Id.* However, "Mr. Obeidallah has continually feared for his life and well being since . . . learning" of the Defamatory Article's publication and the resultant threats. *Id.*

Finally, the Complaint alleges that Mr. Obeidallah suffered "severe" and "serious" emotional distress as a result of Defendants' conduct, *see e.g.*, Compl. ¶¶ 84, 90, 94, ECF No. 1, and that "[n]o defamatory statements and the concomitant threats of death and bodily harm that the Article elicited," *id.* ¶ 88.

    4.    <u>Common Law Misappropriation of Mr. Obeidallah's Name and Likeness (Count V)</u>

Under Ohio common law, "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of privacy, and the use or benefit need not necessarily be commercial." *Roe v. Amazon.com*, 170 F. Supp. 3d 1028, 1034 (S.D. Ohio 2016) (quoting *Zacchini v. Scripps–Howard Broad., Co.*, 351 N.E.2d 454 (Ohio 1976)), *aff'd*, 714 F. App'x 565 (6th Cir. 2017). The Ohio Supreme Court explained that the interest this tort protects "is that of each individual to the exclusive use of his own identity, and that interests [sic] is entitled to protection from misuse whether the misuse is for commercial purposes or otherwise." *Zacchini*, 351 N.E.2d at 458. It further quoted with approval those principles set forth in the Restatement (Second) of Torts § 652C, which further explains that misappropriation occurs where "the defendant . . . appropriated to his own use or benefit the reputation, prestige, social or commercial standing, public interest or other values of the plaintiff's name or likeness." *Id.* at 458 n.4 (quoting Restatement (Second) of Torts § 652C, cmt. c). In other words, "the complaint must allege that plaintiff's name or likeness has some intrinsic value, which was taken by defendants for its own benefit, commercial or otherwise." *Jackson v. Playboy Enterprises, Inc.*, 574 F. Supp. 10, 13 (S.D. Ohio 1983).

First, Mr. Obeidallah alleges that "Defendants misappropriated Mr. Obeidallah's name" and "numerous photos reflecting Mr. Obeidallah's likeness in the [Defamatory] Article". *See* Compl. ¶¶ 96-98, ECF No. 1. "Mr. Obeidallah did not consent to Defendants' use of his name or likeness." *Id.* ¶ 99.

Second, Defendants committed the misappropriation "for commercial and non-commercial purposes". *Id.* ¶ 96. Defendants used Mr. Obeidallah's name and likeness for commercial purposes to: (1) [p]romot[e] . . . the *Daily Stormer* and the reputation of 'Andrew Anglin,' the *Daily Stormer*'s Publisher"; (2) "[e]nhance[] . . . the value of Defendant Moonbase Holdings and its trade name 'Andrew Anglin'"; (3) "[s]olicit . . . donations from readers in exchange for content found on the *Daily Stormer*, including the Article"; and (4) "[d]irect[] *Daily Stormer* readers to visit the website's corporate sponsor, Smerff Electrical, a link to which appears on the same page as the Article." *Id.* ¶ 100(A)-(D).

Alternatively, Defendants used numerous facets of Mr. Obeidallah's name and likeness—including, but not limited to, his reputation, prestige, and social standing as a prominent American-Muslim comedian—for the non-commercial purposes of "distribut[ing] false and defamatory statements regarding Mr. Obeidallah, and elicit[ing] threats of death and bodily injury against Mr. Obeidallah." *Id.* ¶ 4 (describing Mr. Obeidallah's reputation, prestige, and social standing); ¶ 101 (non-commercial purposes).

## III. DAMAGES

As explained in Mr. Obeidallah's Status Report, which is being filed in conjunction with this Motion, Mr. Obeidallah is seeking leave to take additional, limited discovery from financial institutions identified by Greg Anglin as being involved in Defendants' funneling of funds received from the *Daily Stormer*'s readership. The information sought is relevant and necessary in calculating appropriate damages in this matter. As a result, Mr. Obeidallah seeks leave in the Status Report to supplement this Motion for Default Judgment on or before Friday, February 15, 2019, or in the alternative to file

a written status report justifying the need for additional time.  Mr. Obeidallah believes that this will afford him sufficient time to obtain the discovery sought and to present the Court with additional briefing and an expert report regarding appropriate damages.

## IV.    CONCLUSION

Based on the foregoing, Mr. Obeidallah respectfully requests that the Court find Defendants Anglin and Moonbase are liable for: (1) libel (Count I); (2) false light invasion of privacy (Count II); (3) intentional infliction of emotional distress (Counts III); and (4) common law misappropriation of Mr. Obeidallah's name and likeness (Count V).  Mr. Obeidallah further requests leave to supplement this Motion for Default Judgment on or before Friday, February 15, 2019, which will afford Mr. Obeidallah sufficient time to obtain the discovery sought and present the Court with additional briefing and an expert report regarding appropriate damages.

November 16, 2018                               Respectfully submitted,

|  |  |
|---|---|
|  | */s/ Subodh Chandra (trial counsel)* |
| Abid R. Qureshi (D.C. Bar No. 459227) | Subodh Chandra (OH Bar No. 0069233) |
| LATHAM & WATKINS LLP | Donald Screen (OH Bar No. 0044070) |
| 555 Eleventh St., NW, Suite 1000 | THE CHANDRA LAW FIRM LLC |
| Washington, D.C. 20004-1304 | 1265 W. 6th St., Suite 400 |
| Phone: 202.637.2200 Fx: 202.637.2201 | Cleveland, OH 44113-1326 |
| abid.qureshi@lw.com | Phone: 216.578.1700 Fx: 216.578.1800 |
|  | Subodh.Chandra@ChandraLaw.com |
| Johnathan Smith (D.C. Bar No. 1029373) | Donald.Screen@ChandraLaw.com |
| Juvaria Khan (N.Y. Bar No. 5027461) |  |
| MUSLIM ADVOCATES | *Attorneys for Plaintiff Dean Obeidallah* |
| P.O. Box 66408 |  |
| Washington, D.C. 20035 |  |
| Phone: 202.897.1894 |  |
| johnathan@muslimadvocates.org |  |
| juvaria@muslimadvocates.org |  |

*Admitted pro hac vice*