IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEAN OBEIDALLAH,**

    **Plaintiff,**

                                          Case No. 2:17-cv-720
                                          Chief Judge Edmund A. Sargus, Jr.
    v.                                    Magistrate Judge Elizabeth P. Deavers

**ANDREW B. ANGLIN,** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff's Motion for Additional Discovery in Aid of Default Judgment. (ECF No. 46.) For the reasons that follow, Plaintiff's Motion is **GRANTED IN PART and DENIED IN PART**.

### I.

Plaintiff, an American Muslim, is a comedian and commentator who hosts a national daily radio show and resides in New York. (Complaint ¶ 11, ECF No. 1 ("Compl.").) Defendant Andrew B. Anglin is the founder and publisher of a website named the *Daily Stormer*, which is a popular white nationalist website. (*Id*. at ¶¶ 12, 21.) Defendant Moonbase Holdings, LLC ("Defendant Moonbase") is an Ohio, for-profit, limited liability corporation registered by Defendant Anglin that assists in the operation of the *Daily Stormer*. (*Id*. at ¶ 13.) Plaintiff alleges that on June 1, 2017, the *Daily Stormer* published an article authored by Defendant Anglin entitled, "Dean Obeidallah, Mastermind Behind Manchester Bombing, Calls on Trump to Declare Whites the Real Terrorists" ("the Article"). (*Id*. at ¶¶ 21–22.) Defendants also

1

republished the Article on Twitter. (*Id*. at ¶ 21.) The Article referred to Plaintiff as an "ISIS terrorist" and "the mastermind" behind the terrorist attack in Manchester, England. (*Id*. at ¶ 23.) The Article asserted that Plaintiff is "a confessed terrorist wanted by Europol, MI-5, Interpol and a litany of other international authorities." (*Id*.) Defendants also fabricated Twitter messages and included these messages in the Article to convince the Article's readers that Plaintiff had admitted a role in the Manchester bombing. (*Id*. at ¶¶ 27–45.) Plaintiff, however, is not affiliated with ISIS, is not a terrorist, is not wanted by any law enforcement authorities, and had no role in the Manchester bombing. (*Id*. at ¶¶ 23, 34.) In response to the Article, several commentators, believing the statements and messages within the Article, threatened Plaintiff with violence and/or death. (*Id*. at ¶¶ 46–58.)

On August 16, 2017, Plaintiff filed this action, asserting claims for libel, false light invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, common-law misappropriation of name and likeness, and civil conspiracy. (*See generally* Compl.) After Plaintiff effected service of process as to Defendant Moonbase and it failed to enter an appearance, file a responsive pleading, or seek an extension of time to answer or move in response to the Complaint, Plaintiff applied for entry of default. (ECF No. 25.) On January 29, 2018, the Clerk entered default against Defendant Moonbase. (ECF No. 26.) Thereafter, Plaintiff filed his Motion for Limited Discovery in Aid of Default Judgment against Defendant Moonbase Holdings, LLC. (ECF No. 31.) The Court granted that Motion on August 20, 2018. (ECF No. 39.) In the interim, Plaintiff effectuated service of process by publication on Defendant Anglin. (ECF No. 36.) When Defendant Anglin failed to respond, Plaintiff applied for and the Clerk entered default against him. (ECF Nos. 37 & 38.)

In its Order granting Plaintiff's Motion for Limited Discovery in Aid of Default Judgment, the Court acknowledged Plaintiff's good cause for limited third-party discovery in order to determine "(1) the need for immediate entry of default judgment against Defendant Moonbase; (2) how liability should be apportioned among the Defendants; and (3) the extent of Plaintiff's damages attributable to Defendant Moonbase." (Order, ECF No. 39, at p. 9.) As a result of that previously-authorized discovery, Plaintiff represents that he has now identified certain financial institutions and accounts used by Defendants Anglin and Moonbase to funnel contributions from the *Daily Stormer's* readership and pay for the *Daily Stormer's* operations. Plaintiff posits that the financial details of these accounts are relevant to the second and third points for which the Court authorized discovery and to the calculation of appropriate compensatory and punitive damages for Defendants' alleged wrongful actions. Plaintiff, therefore, seeks leave to take additional, limited, third-party discovery from these financial institutions in aid of establishing a sum-certain of default judgment damages.

## II.

Plaintiff, invoking Federal Rule of Civil Procedure 26, seeks expedited discovery to assist in his ability to support his contemporaneously-filed Motion for Default Judgment against Defendants Anglin and Moonbase. (ECF No. 46.) Rule 26 prohibits discovery before the Rule 26(f) conference except under certain circumstances, including when a court orders such discovery. Fed. R. Civ. P. 26(d)(1). Thus, Rule 26(d) vests the district court with discretion to order expedited discovery. *See Lemkin v. Bell's Precision Grinding*, No. 2:08-CV-789, 2009 WL 1542731, at *1 (S.D. Ohio June 2, 2009) (citing *Qwest Communs. Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003)). Courts considering a motion for expedited discovery typically apply a good cause standard. *Lemkin*, 2009 WL 1542731, at *2;

*see also* 8A Fed. Prac. & Proc. Civ. § 2046.1 (3d ed.) ("Although the rule [26] does not say so, it is implicit that some showing of good cause should be made to justify such an order, and courts presented with requests for immediate discovery have frequently treated the question whether to authorize early discovery as governed by a good cause standard."). The burden of demonstrating good cause rests with the party seeking the expedited discovery. *Lemkin*, 2009 WL 1542731, at *2 (citations omitted).

Outside of this circuit, courts have found good cause where a defendant defaulted and "absent limited discovery to obtain information relevant to the issues of class certification and damages, [the plaintiff] cannot pursue his claims in this action. Since [the defendant] has not appeared in this action and is in default, [the plaintiff] is effectively precluded from engaging in a Rule 26(f) conference." *Sheridan v. Oak Street Mortg., LLC*, 244 F.R.D. 520, 522 (E.D. Wis. 2007) (authorizing the plaintiff to seek limited discovery from defaulting defendant); *see also Twitch Interactive, Inc. v. Johnston*, No. 16-cv-03404, 2017 WL 1133520, at *2 (N.D. Cal. Mar. 27, 2017) ("Good cause may also exist in cases where a defendant has failed to appear, resulting in the entry of default against the defendant, and the plaintiff is in need of evidence to establish damages."). Another court has concluded that good cause existed to permit limited discovery of a non-party in order to obtain information relating to the plaintiff's damages. *See Antoine v. Boutte*, No. 15-561, 2016 WL 6138252, at *3–4 (M.D. La. Oct. 20, 2016) ("Under the good cause analysis, 'some courts have allowed limited, expedited discovery when failing to do so would have substantially impacted the case from progressing on the court's docket.'" (citations omitted) (collecting cases)).

In addition, although not specifically considering the good cause standard, other courts have authorized limited expedited discovery in connection with the filing of a motion for default

judgment. *See*, *e.g.*, *Alstom Power, Inc. v. Graham*, No. 3:15-cv-174, 2016 WL 354754, at *3 (E.D. Va. Jan. 27, 2016) (recognizing that courts have "broad discretion" to supervise discovery, including that Rule 26(d) authorizes discovery in the absence of a Rule 26(f) conference, and permitting discovery before the filing of a motion for default judgment because doing so "best serves judicial economy" where the plaintiff "will have to make the appropriate showing of damages in its eventual motion for default judgment"); *see also Nutrition Distrib. LLC v. Ironx LLC*, No.: 17-CV-839, 2017 WL 4391709, at *2 (S.D. Cal. Oct. 3, 2017) (granting the plaintiff leave to conduct "discovery to ascertain the existence and amount of damages" after the entry of default and in connection with the plaintiff's forthcoming motion for default judgment). Similarly, some courts in this circuit, invoking Federal Rule of Civil Procedure 55(b), have authorized discovery as to damages in connection with a motion for default judgment. *See*, *e.g.*, *Provectus Biopharm., Inc. v. Dees*, No. 3:16-cv-222, 2016 WL 8738436, at *3 (E.D. Tenn. Aug. 29, 2016) ("Because the extent of Provectus's damages is not fully known at this juncture, the Court will GRANT Provectus's motion for leave to conduct discovery (Doc. 22), and will RESERVE RULING on Provectus's motion for default judgment (Doc. 21) pending an evidentiary hearing on the amount of damages."); *Allied Enter., Inc. v. Brillcast, Inc*., No. 1:15–cv–749, 2015 WL 13122945, at *3 (W.D. Mich. Nov. 17, 2015) (granting motion for default judgment in part for certain period of time and ordering that the plaintiff "shall conduct discovery in accordance with the rules governing non-party witnesses to determine the amount of unpaid commissions due for the [particular] period"); *Tr. of Ohio Bricklayers Health and Welfare Fund v. Workman Masonry, LLC*, No. 1:09cv482, 2010 WL 170422, at *1 (S.D. Ohio Jan. 15, 2010) (adopting recommendation that an unopposed motion for default judgment be granted in part and ordering the defaulting defendant to "cooperate with Plaintiffs in regards to

whatever other discovery deemed necessary in this case to calculate any and all damages due and owing Plaintiffs"); *DIRECTV, Inc. v. Guzzi*, 308 F. Supp. 2d 788,790–91 (E.D. Mich. 2004) (granting default judgment as to liability only and, after noting that the court "is unable to make a meaningful individualized assessment of damages[,]" authorizing limited discovery "for the purpose of developing the factual circumstances necessary to allow the court to properly exercise its discretion in assessing a final damage award").

**III.**

Plaintiff took the deposition of Greg Anglin, who is Defendant Andrew Anglin's father, on October 31, 2018. Greg Anglin is Defendant Andrew Anglin's father. As relevant here with respect to Plaintiff's request to issue subpoenas to three financial institutions, during that deposition, Greg Anglin described how readers of the *Daily Stormer* have directed hundreds of thousands of dollars in financial contributions to Defendants Andrew Anglin and Moonbase. (ECF No. 46-5, G. Anglin Tr. 26:10-22 (estimating average monthly contributions of $1,500 until 2017, "and then there as a spike in the deposits"), 27:14-28:4 (estimating total contributions from *Daily Stormer* readership of $100,000 to $125,000). The funds were initially directed to Greg Anglin's office suite at 6827 N. High Street, Suite 121, Worthington, Ohio 43085 ("Suite 121"). In 2017, Greg Anglin established Post Office Box 208, Worthington, Ohio 43085 ("PO Box 208") on Moonbase's behalf, to which the *Daily Stormer* redirected its readers' contributions. (*Id*. at 107:14-108:7; 116:3-13.)

From 2013 to December 2017, Greg Anglin collected contributions that readers of *Daily Stormer* directed to "Andrew Anglin" at Suite 121 and PO Box 208. (*Id*. at 26:2-9.) Greg Anglin most often deposited the funds, approximately once a month, into an account at a bank ("Bank

6

1")[1] in the name of "Andrew Anglin." (*Id*. at 24:16-25:2; 25:8-11.)  If the contributions were foreign currency, Greg Anglin would deposit that currency into his personal account at another bank ("Bank 2"), and then write a check to Defendant Anglin, which he then deposited at Bank 1. (*Id*. at 31:2-14.)  Beginning in 2017, Greg Anglin deposited contributions from the *Daily Stormer's* readers in United States currency into his personal account at Bank 2, and then wrote checks to the account of "Andrew Anglin" at Bank 1. (*Id*. at 31:15-32:13. Greg Anglin would also use the contributions directed to "Andrew Anglin" as "reimbursement" for services that he would perform on behalf of the Defendants, including those relating to the Daily Stormer.  (*Id*. at 49:7-51:25 (Greg Anglin "reimbursed" for paying a fee to register Moonbase with Ohio Secretary of State by keeping cash from Daily Stormer contributions), 54:11-55:3 (Greg Anglin "reimbursed" for paying a fee to register "Andrew Anglin" as trade name for Moonbase).  Greg Anglin would pay fees associated with those services from his personal bank account at Bank 2 or his personal credit card before seeking such "reimbursement."  (*Id*. at 52:12-52:25 (check from Bank 2 to pay fee associated with filing Moonbase's Articles of Organization), 53:23-55:6 (potential check from Bank 2 to pay for Moonbase's registration of trade name "Andrew Anglin"), 80:20-81:22 (Greg Anglin's personal credit card to register domain www.dailystormer.com).

Greg Anglin "borrowed" $60,038 from Defendant Anglin for a "real estate rehab." He testified that he paid it back by writing a check from his personal account at another bank ("Bank 3") and depositing it into the account for "Andrew Anglin" at Bank 1.  (*Id*. at 120:8-121:6 (Greg Anglin "borrowed" $60,038), 123:4-23 (check from Bank 3 to Bank 1).

---

[1] Plaintiff indicates that he has not named the financial institutions that have likely received donations from Defendants Anglin and Moonbase due to the controversial nature of the *Daily Stormer*.

7

Based on these facts, Plaintiff seeks the following discovery:

**I.     BANK 1**

A.     Documents to Be Produced

1. Documents sufficient to show the transactional information during the Relevant Period,[2] including dollar value, date, deposit slips, and images, of any checks deposited into or withdrawn from any account associated with: (a) Andrew B. Anglin; or (b) Moonbase Holdings, LLC.

2. Documents sufficient to show the transactional information during the Relevant Period, including dollar value, date, and deposit slips, of any cash deposited into or withdrawn from any account associated with: (a) Andrew B. Anglin; or (b) Moonbase Holdings, LLC.

3. Documents sufficient to show the history of account balances and transactions during the Relevant Period, including amounts that have been deposited or withdrawn, and merchant names and transaction descriptions, for any account associated with: (a) Andrew B. Anglin; or (b) Moonbase Holdings, LLC.

**II.    BANK 2**

A.     Documents to Be Produced

1. Documents sufficient to show the transactional information during the Relevant Period, including dollar value, date, recipient, and images, of any checks withdrawn from or deposited into any account associated with Gregory Mark Anglin where the transaction involved one or more of the following parties: (a) Andrew B. Anglin; (b) Moonbase Holdings, LLC; (c) the Daily Stormer; (d) GoDaddy; (e) Zappitelli CPA Inc.; (f) the U.S. Postal Service; or (g) the Ohio Secretary of State.

2. Documents sufficient to show the transactional information during the Relevant Period, including dollar value, date, and any associated deposit slips or receipts, of any cash

---

[2] Plaintiff proposes defining "Relevant Period," as used in each request, as March 1, 2013 to the present.

> withdrawn from or deposited into any account associated with Gregory Mark Anglin.
>
> 3. Documents sufficient to show the transactional information during the Relevant Period, including dollar value, date, merchant name, and description, of any credit or debit account associated with Gregory Mark Anglin where the transaction involved one or more of the following parties: (a) Andrew B. Anglin; (b) Moonbase Holdings, LLC; (c) the Daily Stormer; (d) GoDaddy; (e) Zappitelli CPA Inc.; (f) the U.S. Postal Service; or (g) the Ohio Secretary of State.
>
> **III. BANK 3**
>
> A. Documents to Be Produced
>
> 1. Documents sufficient to show the transactional information during the Relevant Period, including dollar value, date, recipient, and images, of any checks withdrawn from or deposited into any account associated with Gregory Mark Anglin where the transaction involved one or more of the following parties: (a) Andrew B. Anglin; (b) Moonbase Holdings, LLC; (c) the Daily Stormer; (d) GoDaddy; (e) Zappitelli CPA Inc.; (f) the U.S. Postal Service; or (g) the Ohio Secretary of State.
>
> 2. Documents sufficient to show the transactional information during the Relevant Period, including dollar value, date, and any associated deposit slips or receipts, of any cash withdrawn from or deposited into any account associated with Gregory Mark Anglin.
>
> 3. Documents sufficient to show the transactional information during the Relevant Period, including dollar value, date, merchant name, and description, of any credit or debit account associated with Gregory Mark Anglin where the transaction involved one or more of the following parties: (a) Andrew B. Anglin; (b) Moonbase Holdings, LLC; (c) the Daily Stormer; (d) GoDaddy; (e) Zappitelli CPA Inc.; (f) the U.S. Postal Service; or (g) the Ohio Secretary of State.

(Motion, Exhibit 2 (ECF No. 46-3).) Plaintiff provides the proposed requests for information, but "[f]or the sake of brevity," he did not provide "definitions, instructions, and other portions of

the proposed subpoenas which are ancillary to assessing whether the requests are narrowly tailored and minimize burden." (*Id*. at PAGEID # 851.) Plaintiff offers to provide "fuller versions of the subpoenas" upon request.

Plaintiff has demonstrated good cause for the discovery he seeks as to Bank 1, but not for the personal accounts of Greg Anglin at Bank 2 and Bank 3. As set forth above, Greg Anglin testified that he would deposit any contributions directed to Andrew Anglin and the *Daily Stormer* into Andrew Anglin's account at Bank 1. If Greg Anglin received currency, he would put it into his personal accounts but then write a check for the amounts into Andrew Anglin's account at Bank 1. When he "borrowed" a large sum of money, he paid it back by depositing a check into Andrew Anglin's account at Bank 1. Put another way, the vast majority of the transactions Plaintiff seeks to track would have been recorded by Bank 1. Plaintiff has not justified the need to audit the personal banking accounts of a non-party to this lawsuit.

As to Bank 1, Plaintiff has demonstrated good cause to take limited discovery in aid of establishing a sum-certain of default-judgment damages. Plaintiff has established the need for the discovery he seeks in order to quantify the amount of compensatory and punitive damages attributable to and apportionable between Defendants Anglin and Moonbase. Plaintiff seeks punitive damages for the false and defamatory actions and statements made by Defendants Anglin and Moonbase. As Plaintiff points out, the Supreme Court of Ohio has noted that the purposes of punitive damages are "(1) to punish the wrongdoer, and (2) to deter others from similar conduct." *Wagner v. McDaniels*, 459 N.E.2d 561, 564 (Ohio 1984). Whether a damages award succeeds in punishing a wrongdoer or deterring others depends on the scale of the damages award relative to the net worth of the defendant, and in particular, to the amount of profit that that wrongful action generated for the wrongdoer. *See id*. (holding that "evidence of a

defendant's net worth may be considered by the fact-finder in determining appropriate punitive damages"). In this case, Defendants Anglin and Moonbase likely received over a hundred thousand dollars in contributions from readers of the *Daily Stormer*. (G. Anglin Tr. at 27:22-28:4.) Defendant Anglin has used his wrongful actions against Plaintiff as the basis to request additional contributions from the *Daily Stormer* readers.[3] The requested discovery from Bank 1 regarding the amount of money received by Defendants Anglin and Moonbase and the timing of those payments are relevant to Plaintiff's ability to craft a reasonable and appropriate damages request in this case.

In addition to punitive damages, information about the Defendants' financial conditions is relevant to the preliminary calculation of damages for Plaintiff's claims. For instance, as to his claim for common-law misappropriation of name and likeness, courts have specifically noted that "the monetary benefit that [defendant] received as a result of a wrongful use of [plaintiff]'s name is an appropriate (although not exclusive) measure of damages." *James v. Bob Ross* Buick, Inc., 167 Ohio App. 3d 338, 345855 N.E.2d 119, 124 (Ohio Ct. App. 2006).

In short, the Court finds good cause to permit Plaintiff to issue a subpoena to Bank 1 regarding the following topics: (1) the need for the entry of default judgment against Defendants Anglin and Moonbase; (2) how liability should be apportioned among the Defendants; and (3) the extent of Plaintiff's compensatory and punitive damages attributable to Defendants Anglin and Moonbase. *See Lemkin*, 2009 WL 1542731, at *2; *Sheridan*, 244 F.R.D. at 522; *Twitch Interactive, Inc.*, 2017 WL 1133520, at *2; *Antoine*, 2016 WL 6138252, at *3–4; *cf. Alstom*

---

[3] Defendant Anglin posted on the *Daily Stormer* "Presumably, even if Dean [Obeidallah] disappears, the Association of Moslems will still sue me. So send me some money, lmao." *Daily Stormer*, *Steven Crowder Allegedly Hunting Manchester Bombing Mastermind Dean Obeidallah in Isis-Occupied Syria* (Aug. 29, 2017)

11

*Power, Inc.*, 2016 WL 354754, at *3; *Nutrition Distrib. LLC*, 2017 WL 4391709, at *2; *Provectus Biopharm., Inc.*, 2016 WL 8738436, at *3.

In reaching this conclusion, the Court has considered Plaintiff's proposed document requests as topics directed to Bank 1.  (ECF No. 46-3.)  As Plaintiff was previously advised, *see* Opinion and Order, ECF No. 34, Plaintiff is **CAUTIONED** to carefully articulate requests to avoid objections based on scope and relevance.  Moreover, Plaintiff is **DIRECTED** to file with the Court, *ex parte* and under seal, the complete subpoena with the full name of the financial institution to which it will be issued within **FOURTEEN (14) DAYS** of the date of this Order.  The Court will then determine whether to keep the document under seal.

## IV.

Plaintiff's Motion for Additional Discovery in Aid of Default Judgment (ECF No. 46) is **GRANTED IN PART and DENIED IN PART** consistent with the foregoing.

**IT IS SO ORDERED.**


Date: December 21, 2018  　　　　　　　　　　　　　　/s/ *Elizabeth A. Preston Deavers*
　　　　　　　　　　　　　　　　　　　　　　　　ELIZABETH A. PRESTON DEAVERS
　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE