# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**DEAN OBEIDALLAH,**

    **Plaintiff,**

    vs.

**ANDREW B. ANGLIN,** *et al.*,

    **Defendants.**

Case No. 2:17-cv-720

Chief Judge Edmund A. Sargus, Jr.

Chief Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of the continued sealing of certain documents. For the reasons that follow, Plaintiff is **DIRECTED** to file unredacted versions of Greg Anglin's deposition transcript, correspondence with Greg Anglin's attorneys and the subpoena issued to "Bank 1" within **FOURTEEN (14) DAYS** of the date of this Order.

**I.**

Plaintiff, an American Muslim, is a comedian and commentator who hosts a national daily radio show and resides in New York. (Complaint ¶ 11, ECF No. 1 ("Compl.").) Defendant Andrew B. Anglin is the founder and publisher of a website named the *Daily Stormer*, which is a popular white nationalist website. (*Id*. at ¶¶ 12, 21.) Defendant Moonbase Holdings, LLC ("Defendant Moonbase") is an Ohio, for-profit, limited liability corporation registered by Defendant Anglin that assists in the operation of the *Daily Stormer*. (*Id*. at ¶ 13.) Plaintiff alleges that on June 1, 2017, the *Daily Stormer* published an article authored by Defendant Anglin entitled, "Dean Obeidallah, Mastermind Behind Manchester Bombing, Calls on Trump to

Declare Whites the Real Terrorists" ("the Article"). (*Id*. at ¶¶ 21–22.) Defendants also republished the Article on Twitter. (*Id*. at ¶ 21.) The Article referred to Plaintiff as an "ISIS terrorist" and "the mastermind" behind the terrorist attack in Manchester, England. (*Id*. at ¶ 23.) The Article asserted that Plaintiff is "a confessed terrorist wanted by Europol, MI-5, Interpol and a litany of other international authorities." (*Id*.) Defendants also fabricated Twitter messages and included these messages in the Article to convince the Article's readers that Plaintiff had admitted a role in the Manchester bombing. (*Id.* at ¶¶ 27–45.) Plaintiff, however, is not affiliated with ISIS, is not a terrorist, is not wanted by any law enforcement authorities, and had no role in the Manchester bombing. (*Id*. at ¶¶ 23, 34.) In response to the Article, several commentators, believing the statements and messages within the Article, threatened Plaintiff with violence and/or death. (*Id*. at ¶¶ 46–58.)

On August 17, 2017, Plaintiff initiated this action asserting claims for libel, false light invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, common-law misappropriation of name and likeness, and civil conspiracy. (*See generally* Compl.). After Plaintiff obtained service of process over Defendants and they did not file an Answer or other responsive pleading, he applied and obtained entries of default. (ECF Nos. 26 (Moonbase) and 38 (Anglin).). Thereafter, he moved for Default Judgment. (ECF No. 44.).

Plaintiff then moved the Court for discovery in aid of the Default Judgment. He sought to serve subpoenas on certain financial institutions which he had discovered Defendant Anglin used to deposit donations he received from readers of the *Daily Stormer*. (ECF No. 46.). He also sought to subpoena banks that Defendant Anglin's father, Greg Anglin, sometimes used in connection with assisting his son with depositing contributions. (*Id*.). The Court granted in part

2

and denied in part the Motion.  In particular, the Court denied Plaintiff's request to subpoena Greg Anglin's bank records, finding that majority of the transactions Plaintiff sought to track would have been recorded by Defendant Anglin's bank such that Plaintiff had not justified the need to audit the personal banking accounts of his father, Greg Anglin, who is not a party to this lawsuit.  (ECF No. 47, at p. 10.)  The Court, however, granted Plaintiff the authority to issue a subpoena to a bank he had only referred to as "Bank 1," which is Defendant Anglin's bank account.  (ECF No. 47.).

At that time, the Court instructed Plaintiff to file the subpoena disclosing the identity of the financial institution *ex parte* and under seal and indicated that it would later determine whether to keep the document under seal.  (*Id.*).  Having examined the docket more fully, the Court determines that the subpoena as well as other previously-redacted documents, should not remain sealed.

**II.**

It is well established that "every court has supervisory power over its own records and files." *Nixon v. Warner Commc'ns,* 435 U.S. 589, (1978).  A court's discretion to seal records from public inspection, however, is limited by "the presumptive right of the public to inspect and copy judicial documents and files," which the United States Court of Appeals for the Sixth Circuit as described as a 'long-established legal tradition." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 473–74 (6th Cir. 1983); *see also Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1178–80 (6th Cir. 1983) (discussing the justifications for the "strong presumption in favor of openness").  Certainly, a court may limit public access in extraordinary cases, where the court files may "become a vehicle for improper purpose." *Nixon*, 435 U.S. at 598; *see also In re Perrigo Co.*, 128 F.3d 430, 446 (6th Cir. 1997) (Moore, J., concurring in part

3

and dissenting in part) (declaring that "[s]ealing court records . . . is a drastic step, and only the most compelling reasons should ever justify non-disclosure of judicial records"). The Sixth Circuit has indicated that the exceptions to the presumption fall into two categories: (1) exceptions "based on the need to keep order and dignity in the courtroom"; and (2) "content-based exemptions," which "include certain privacy rights of participants or third parties, trade secrets, and national security." *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179 (citations omitted). "Simply showing that the information would harm [a party's] reputation is not sufficient to overcome the strong common law presumption in favor of public access to court proceedings and records." *Id*. at 1179–80 (citing *Joy v. North*, 692 F.2d 880 (2nd Cir. 1982)).[1]

### III.

Here, Plaintiff did not move the Court and demonstrate good cause to file the subpoena to "Bank 1" and other documents under seal. Plaintiff represented that he was not identifying the financial institutions "due to the controversial nature of the *Daily Stormer*." (ECF No. 46 at p. 4 n.4.). The Court notes that, in addition to the subpoena, Plaintiff also filed a redacted version of the transcript of the deposition of Greg Anglin, Defendant Anglin's father, and the names of the attorneys who represented Mr. Anglin in email correspondence presumably for the same stated reason. (Pl's Stat. Rpt., ECF No. 45-5, 6 &7; Pl's Mot. for Add'l Disc., ECF No. 46-6.).

At this juncture, Plaintiff has not demonstrated good cause to keep the identity of the financial institutions at issue in this case and the attorneys who represented Greg Anglin under seal. The proponent of sealing must "'analyze in detail, document by document, the propriety of

---

[1] Moreover, Local Rule 5.2.1 requires a party to move, demonstrate good cause and be granted leave of Court before filing any documents under seal. S.D. Ohio Civ. R. 5.2.1 ("Unless permitted by statute, parties cannot file documents under seal without leave of Court. . . . The Court may strike any document filed under seal if the filing party failed to obtain leave of Court.")

secrecy, providing reasons and legal citations.'" *Shane Group, Inc. v. Blue Cross Blue Shield*, 825 F.3d 299, 305–06 (6th Cir. 2016) (quoting *Baxter Int'l, Inc. v. Abbott Labs*, 297 F.3d 544, 548 (7th Cir. 2002)).  Here, Plaintiff offers only that the *Daily Stormer* is a controversial publication rather than any analysis of the propriety of keeping this information secret.  Yet, the controversial nature of the *Daily Stormer* is precisely why the public has an interest in this case and all of the documents that relate to it.  Indeed, "the greater the public interest in the litigation's subject matter, the greater the showing necessary to overcome the presumption of access." *Id*. at 305.

The Court recognizes that Plaintiff was merely attempting to protect the individual and institutions from negative attention because of the deeply offensive nature of the messages Defendant Anglin and the *Daily Stormer* present.  The business affiliations that the financial institutions and attorneys have to this case, however, in no way translate into an endorsement of Defendant Anglin's actions or the content of the *Daily Stormer*.  In any event, the Court has a constitutional obligation to permit access to its proceedings and must guard against unnecessarily prohibiting materials from the public purview.

### IV.

For the foregoing reasons, Plaintiff is **DIRECTED** to file unredacted versions of Greg Anglin's deposition transcript, correspondence with his attorneys and the subpoena to "Bank 1" within **FOURTEEN (14) DAYS** of the date of this Order.

      **IT IS SO ORDERED.**

**DATED:  February 22, 2019**　　　　　　　/s/ *Elizabeth A. Preston Deavers*
　　　　　　　　　　　　　　　　　　　　　　**ELIZABETH A. PRESTON DEAVERS**
　　　　　　　　　　　　　　　　　　　　　　**CHIEF UNITED STATES MAGISTRATE JUDGE**