IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEAN OBEIDALLAH, | CASE NO. 2:17-CV-00720-EAS-EPD |
| Plaintiff, | Chief Judge Edmund A. Sargus |
| v. | Magistrate Judge Elizabeth Preston Deavers |
| ANDREW B. ANGLIN, DBA *Daily Stormer*, | |
| and | |
| MOONBASE HOLDINGS, LLC, DBA Andrew Anglin, | |
| and | |
| JOHN DOES NUMBERS 1–10, Individuals who also assisted in the publication or representation of false statements regarding Mr. Obeidallah, | |
| Defendants. | |
| **PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** | |

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS**

Plaintiff Dean Obeidallah respectfully moves this Court for an award from Defendants Andrew B. Anglin and Moonbase Holdings, LLC, in accordance with the Court's June 13, 2019 Order, ECF No. 74, of $188,993.48, consisting of: (1) attorneys' fees incurred litigating this matter ($187,239.56); (2) attorneys' fees incurred preparing this motion ($1,180.00); (3) costs ($573.92); and (4) post-judgment interest.  A memorandum and supporting evidence are attached.

MEMORANDUM IN SUPPORT OF PLAINTIFF DEAN OBEIDALLAH'S
MOTION FOR ATTORNEYS' FEES AND COSTS

## I.  INTRODUCTION

Plaintiff Dean Obeidallah recently obtained judgment against Defendants Andrew B. Anglin and Moonbase Holdings, LLC (collectively, "Defendants") in the above-captioned action (the "Action"). The Court entered judgment in Mr. Obeidallah's favor on the issue of liability on May 1, 2019, *see* Ord., ECF No. 63, and, following a damages hearing on June 12 2019, granted Mr. Obeidallah: (1) $470,000 in economic damages; (2) $350,000 in non-economic damages; (3) $3.28 million in punitive damages; (4) a permanent injunction; and (5) "attorneys' fees and costs, to be determined at a later date," *see* Ord. 1-2, ECF No. 74.

In accordance with that order, Mr. Obeidallah respectfully moves for a total award of $188,993.48, as well as pre-judgment interest. The requested total award consists of:

- $148,376.06 in fees (466.9 hours) billed by Latham & Watkins LLP ("Latham");

- $38,863.50 in fees (86.7 hours) billed by The Chandra Law Firm ("Chandra Law");

- $573.92 in expenses; and

- $1,180.00 (1.3 hours) in fees associated with the preparation of this Motion.

## II.  BACKGROUND

Mr. Obeidallah filed the Complaint in this case on August 16, 2017. Compl., ECF No. 1. The Complaint describes Defendants' publication of a false and defamatory article, titled "Dean Obeidallah, Mastermind Behind Manchester Bombing, Calls on Trump to Declare Whites the Real Terrorists," on June 1, 2017 (the "Article"). The Article falsely attributed to Mr. Obeidallah responsibility for a horrific terrorist act in Manchester, United Kingdom (the "Manchester Bombing"). *Id.* ¶¶ 3, 21–23. Defendants published the article on the *Daily Stormer*, a popular Neo-Nazi and white-supremacist website that claims "to do 'the job other news websites won't do.'" *Id.* ¶¶ 1–2. In addition

to numerous false and malicious allegations about Mr. Obeidallah, Defendants altered messages associated with his Twitter account, misleading readers into believing that Mr. Obeidallah was claiming responsibility for the Manchester Bombing. *Id.* ¶¶ 27–45.

Less than two weeks later, on August 29, 2017, Defendant Anglin published another article on his website titled "Steven Crowder Allegedly Hunting Manchester Bombing Mastermind Dean Obeidallah in ISIS-Occupied Syria!." In that article, Defendants acknowledged and mocked the existence of this lawsuit and the Complaint's contents, and once again published further false and defamatory statements about Mr. Obeidallah.

Mr. Obeidallah moved for issuance of summonses with respect to Defendants on September 8, 2017, ECF Nos. 11 & 12, and those summonses were issued on September 11, 2017, ECF No. 13. Mr. Obeidallah immediately undertook efforts to serve the Defendants and, to assist in those efforts, Mr. Obeidallah engaged a licensed professional private-investigative agency whose staff has more than 28 years of experience in investigations and service of process (the "First Investigator"). *See* InfoCorp Decl., ECF No. 17-1. Mr. Obeidallah's counsel worked closely with the First Investigator and supervised all aspects of its work. The First Investigator conducted database searches and obtained information from the Ohio Bureau of Motor Vehicles regarding Defendant Anglin's whereabouts. Based on that information and its professional experience, the First Investigator concluded that Defendant Anglin is living in or around Worthington, Ohio. The First Investigator then identified Defendant Anglin's five most recent known addresses. *See Id.* ¶¶ 4–9. On September 8, 2017, the Court issued summonses directed to these five addresses. *See* Summonses, ECF No. 13.

From September 12, 2017 to October 2, 2017, the First Investigator made multiple attempts to serve Defendant Anglin at each of those five addresses. *See* InfoCorp. Decl. ¶ 10(a)-(e). Mr. Obeidallah's counsel was in regular communication with the First Investigator during that period in an effort to facilitate the service attempts and provide whatever additional information they had

gleaned about Defendant Anglin while preparing the Complaint. Based on the foregoing, the First Investigator concluded that Defendant Anglin did not reside at any of the five addresses for which summonses were issued. *Id.*

On October 23, 2017, Mr. Obeidallah filed a Motion to Conduct Limited Discovery in Aid of Service and to Extend Time for Service, ECF No. 17. In addition to an extension of the deadline to effect service, Mr. Obeidallah sought limited discovery to uncover Defendant Anglin's location and effectuate service. Such a request was necessary because Rule 26(d) of the Federal Rules of Civil Procedure prohibits discovery prior to the parties' Rule 26(f) conference, which could not take place given the Defendants' unwillingness to enter an appearance in this matter. Mr. Obeidallah's counsel spent considerable time and effort drafting the motion in an effort to show "good cause" for the requested discovery, which included: (1) third-party subpoenas to entities that Defendant Anglin relies upon, or had relied upon, to publish the *Daily Stormer*; (2) third-party document subpoenas to particular government entities, including the U.S. Post Office; (3) deposition and document subpoenas to Mr. Greg Anglin; (4) deposition and document subpoena to Mr. Mitchell Anglin, Defendant Anglin's brother; and (5) any other discovery necessary for the limited purpose of identifying, locating, and serving Defendant Anglin in this action. *Id.* at 13.

Shortly thereafter, on October 26, 2017, Mr. Obeidallah began pursuing alternative options to serve the Defendants. First, Mr. Obeidallah sent a letter to the Office of the Clerk for the U.S. District Court for the Southern District of Ohio requesting, in accordance with S.D. Ohio Civil Rule 4.2, the Clerk's assistance in serving Defendant Anglin by certified mail. *See* Ltr. from Abid R. Qureshi, Partner, Latham & Watkins LLP, to Office of the Clerk, U.S. District Court, Southern District of Ohio, Columbus Division (Oct. 26, 2017) (on file with author). Second, Mr. Obeidallah sent a letter to the Ohio Secretary of State requesting, in accordance with Ohio law, that the Secretary of State effectuate service on Moonbase Holdings, LLC ("Defendant Moonbase") through its registered agent

for service—Defendant Anglin. *See* Ltr. from Abid R. Qureshi, Partner, Latham & Watkins LLP, to Ohio Secretary of State, Paralegal Division (Oct. 26, 2017) (on file with author).

On November 9, 2017, the Court issued an Order, ECF No. 19, granting the extension of the deadline for service but denying Mr. Obeidallah's initial Motion for Pre-Service Discovery, ECF No. 17. The Court explained that currently-available evidence suggests Defendant Anglin is "conceal[ing] his whereabouts and evad[ing] service," but nonetheless denied the Initial Motion without prejudice, stating that it would take the matter under further advisement "[s]hould Plaintiff narrow the scope of his requests, and provide the requisite specificity to demonstrate his need." Ord. 7-8, ECF No. 19.

Mr. Obeidallah filed a Renewed Motion for Leave to Conduct Limited Discovery in Aid of Service on December 22, 2017. ECF No. 23. The Renewed Motion sought leave to serve particular narrowly-tailored subpoenas *duces tecum* on: (1) Greg Anglin; (2) Zappitelli CPAs; (3) GoDaddy, an Internet domain registrar; (4) Bandwidth, an enterprise communications company; and (5) the U.S. Postal Service. Mr. Obeidallah had discovered, through his counsel's investigation and documentary evidence, that each of those persons and entities had a long-standing relationship with Defendant Anglin and, at least indirectly, the Daily Stormer. Mr. Obeidallah also represented that those relationships overlapped with publication of the Defamatory Article on June 1, 2017. The Renewed Motion sought to establish "good cause" for the requested discovery, and proffered a proposed document request, with respect to each of those individuals and entities. *See id.* at 8-15 ("good cause" argument); Pl.'s RFPs, ECF No. 23-2.

On January 26, 2018, Mr. Obeidallah also filed a Motion for Service by Publication and to Extend Time for Service. ECF No. 24. The Motion requested, among other things, that the Court authorize Mr. Obeidallah to undertake serving Defendant Anglin by publication in accordance with Rule 4(e)(1) of the Federal Rules of Civil Procedure and Rule 4.4(A)(1) of the Ohio Rules of Civil

Procedure. *Id.* at 1. As required by Ohio law, Mr. Obeidallah explained that the requisite notice would "be published at least once a week for six successive weeks . . . . [and] [s]ervice shall be complete at the date of the last publication." *Id.* at 3 (citing Oh. R. Civ. P. 4(A)(1)).

That same day, Mr. Obeidallah also filed a Request for Entry of Default Against Defendant Moonbase Holdings, LLC, ECF No. 25. In that Motion, Mr. Obeidallah explained that he had effected service on Defendant Moonbase on October 31, 2017 in accordance with Ohio Rev. Code § 1705.06, which authorizes service upon the Ohio Secretary of State as the agent of a limited liability company. Defendant Moonbase was required to file a responsive pleading on or before November 21, 2017 and, having failed to do so, Mr. Obeidallah respectfully requested that the Clerk of the Court enter default against Moonbase in accordance with Rule 55(a) of the Federal Rules of Civil Procedure. *Id.* at 1.

As requested by Mr. Obeidallah, the Clerk filed an Entry of Default with respect to Defendant Moonbase on January 29, 2019. ECF No. 26. Approximately one week later, on February 7, 2018, the Court entered an Order extending Mr. Obeidallah's deadline to effectuate service on Defendant Anglin until March 30, 2018, the second such extension. The Court's Order did not, however, address Mr. Obeidallah's pending Renewed Motion for Leave to Conducted Limited Discovery in Aid of Service, ECF No. 23, or Motion for Service by Publication, ECF No. 24. On March 26, 2018, the Court granted, *sua sponte*, another extension of Mr. Obeidallah's deadline to effectuate service. Ord., ECF No. 30. The new deadline was April 17, 2018.

On March 26, 2018, Mr. Obeidallah filed a Motion for Limited Discovery in Aid of Default Judgment Against Defendant Moonbase Holdings, LLC, ECF No. 31. As explained in that Motion, the Federal Rules of Civil Procedure discourage entry of default judgment against one defendant but not their co-defendant(s). But limited exceptions exist, such as when there is evidence of a defaulting defendant's impending insolvency. Mr. Obeidallah reasonably feared that Defendant Moonbase may

be rendered insolvent, and thus sought limited discovery from Greg Anglin and Zappitelli CPAs for the purpose of, among other things, answering that question. *Id.* at 10. Specifically, Mr. Obeidallah sought the Court's leave to issue document and deposition subpoenas to Greg Anglin and Zappitelli CPAs, *id.* at 18, and proffered proposed requests for production and matters for examination with respect to each, *see* Pl.'s Proposed RFPs & Matters for Exam., ECF No. 31-1.

On April 11, 2018, Mr. Obeidallah filed another motion to extend service. ECF No. 33.

The Court issued an omnibus Opinion and Order on April 13, 2018, addressing many of Mr. Obeidallah's pending motions. ECF No. 34. First, with regard to Mr. Obeidallah's Renewed Motion for Leave to Conducted Limited Discovery in Aid of Service, ECF No. 23, the Court "recognize[d[ that locating Defendant Anglin has been both challenging and frustrating and acknowledge[d] Defendant Anglin's apparent attempts to conceal his whereabouts and evade service," Op. & Ord. 6, ECF No. 34. The Court stated that, "[n]evertheless, . . . [it] remain[ed] concerned about the scope of Plaintiff's requested discovery." *Id.* The Court again denied Mr. Obeidallah's request for pre-service discovery, but did so without prejudice. *Id.*

Alternatively, the Court's Opinion and Order granted Mr. Obeidallah's Motion for Service by Publication, ECF No. 24, and further extended Mr. Obeidallah's deadline to effectuate service to June 1, 2018.

Mr. Obeidallah thereafter arranged for public notice consistent with Ohio law and the Court's Opinion and Order to run in the *Daily Report* from April 25 to May 30, 2018, thereby effectuating service on Defendant Anglin in accordance with federal and Ohio law. Pl.'s Notice, ECF No. 36. As provided in each notice, Defendant Anglin was required to file a responsive pleading to the Complaint on or before June 29, 2018. *Id.* at 2.

On July 2, 2018, Mr. Obeidallah filed a Request for Entry of Default Against Defendant Andrew B. Anglin, ECF No. 37, based on his failure to timely file a responsive pleading in this action.

The Clerk of the Court filed an Entry of Default, ECF No. 38, with respect to Defendant Anglin on July 3, 2018.

On August 20, 2018, the Court entered another Opinion and Order, ECF No. 39, this time addressing Mr. Obeidallah's Motion for Limited Discovery in Aid of Default Judgment Against Defendant Moonbase Holdings, LLC, ECF No. 31. The Court found good cause for issuance of the requested document and deposition subpoenas to Greg Anglin and Zappitelli CPAs. Op. & Ord. 9-10, ECF No. 39. The Court directed Mr. Obeidallah to "carefully articulate requests to avoid objections based on scope and relevance." *Id.* at 10. The Court also ordered Mr. Obeidallah to file a written status report on or before October 1, 2018 unless he had filed a motion for default judgment against Defendant Moonbase by that date. *Id.*

Consistent with the Court's directive, Mr. Obeidallah further narrowed the document requests that he intended to direct to Greg Anglin and Zappitelli CPAs. The subpoenas to both Zappitelli Inc. and Greg Anglin were transmitted to a process server (the "Second Investigator") on August 30, 2018.

With regard to Zappitelli Inc., the process server effected in-person service of its registered agent, Shamus B. Cassidy, Esq., on September 5, 2018. The subpoenas directed to Zappitelli Inc. required that responsive documents be produced on or before Wednesday, September 19, 2018, and a 30(b)(6) deposition was scheduled for Tuesday, September 25, 2018. Mr. Cassidy, the attorney who serves as Zappitelli Inc.'s registered agent, indicated he did not represent Zappitelli Inc. and that the entity was not represented by counsel.

Mr. Obeidallah's counsel subsequently had numerous conversations with Mr. Zappitelli and his wife, Karen Zappitelli, both of whom work at Zappitelli Inc. but perform different functions. Mr. Zappitelli represented that, on Wednesday, September 19, 2018, he, on Zappitelli Inc.'s behalf, produced all materials responsive to the document subpoena. In addition, in lieu of the 30(b)(6) deposition scheduled for Tuesday, September 25, 2018, Mr. Obeidallah agreed to accept sworn

declarations from Mr. and Mrs. Zappitelli that could serve as reasonable substitutes for their testimony.

As for Greg Anglin, the Second Investigator began efforts to effect in-person service on August 30, 2018. The subpoenas originally commanded that Greg Anglin produce responsive documents on or before Wednesday, September 19, 2018, and sit for a deposition on Monday, September 24, 2018. The Second Investigator made multiple attempts to serve Greg Anglin at four (4) addresses where he is known to reside or use for business purposes. All those attempts failed. But on September 25, 2018, the Second Investigator located and served Mr. Greg Anglin. Greg Anglin was legally obligated to produce responsive documents on or before Friday, October 12, 2018, and to testify at a deposition in Columbus, Ohio on Tuesday, October 16, 2018.

Mr. Obeidallah filed the requested Status Report with the Court on October 1, 2018, in which he recounted these and other events. Status Rep., ECF No. 40. In that Status Report, Mr. Obeidallah sought to file a Motion for Default Judgment on or before November 16, 2018, or alternatively to file a written status report justifying the need for additional time. *Id.* at 3. The Court issued an Order granting the requested extension on October 2, 2018. Ord., ECF No. 41.

On October 5, 2018, Mr. Obeidallah's counsel sent Greg Anglin an email requesting an opportunity to speak to his attorney regarding the subpoenas. Email, ECF No. 45-4. Greg Anglin responded on October 8, 2018, stating that "logistical difficulties have rendered these dates impossible" and that "[m]y counsel will contact you, likely prior to the 16th." *Id.* The response did not elaborate on what "logistical difficulties" rendered his timely compliance "impossible."

On October 12, 2018, Mr. Obeidallah's counsel received a call from an attorney who stated that he represented Greg Anglin in regard to the subpoenas ("Attorney 1"). Attorney 1 represented that Greg Anglin was not prepared to comply with the deadlines set forth in the document or deposition subpoenas, and was non-committal as to when Mr. Obeidallah could reasonably expect

compliance. *See* T. Williams Decl. ¶¶ 1-3, ECF No. 45-1. Later that afternoon, Mr. Obeidallah's counsel sent an email to Attorney 1 detailing Greg Anglin's non-compliance and offering, as a courtesy, to: (1) "extend the deadline to produce materials responsive to the document subpoena to Wednesday, October 17, 2018 at 9:00 AM"; and (2) take Greg Anglin's deposition on October 23, 30, or 31, 2018, whichever would be most convenient. *See* Email, ECF No. 45-5. Mr. Obeidallah's counsel requested a response to this proposal on or before Monday, October 15, 2018 at 12:00 PM Eastern.

Mr. Obeidallah did not receive any further response to the October 12, 2018 proposal. Instead, on October 17, 2018, Mr. Obeidallah's counsel received a voicemail from another attorney stating he represented Greg Anglin in regard to the subpoenas ("Attorney 2"). *See* T. Williams Decl. ¶ 5, ECF No. 45-1. Mr. Obeidallah's counsel and Attorney 2 exchanged emails and convened a teleconference to discuss Greg Anglin's non-compliance with the subpoenas that same day. Attorney 2 represented that he would confer with his client, Greg Anglin, and follow-up with Mr. Obeidallah's counsel the next day regarding both subpoenas. On October 18, 2018, Attorney 2's paralegal confirmed Greg Anglin's availability for a deposition on October 31, 2018.

On October 31, 2018, Mr. Obeidallah's counsel took Greg Anglin's deposition testimony in Columbus, Ohio. With regard to the document subpoena, Greg Anglin, by and through Attorney 2, merely provided Mr. Obeidallah's counsel with printed copies of previously filed exhibits. *See* G. Anglin Prod. Vol., ECF No. 45-8.

On November 16, 2018, Mr. Obeidallah filed three substantive documents with the Court. First, Mr. Obeidallah filed a Motion for Default Judgment Against Defendants Andrew B. Anglin and Moonbase Holdings, LLC, ECF No. 44. In that Motion, Mr. Obeidallah sought to establish Defendants' liability under the prevailing federal standard, but respectfully requested that he be given until February 15, 2019 to submit supplemental evidence in support of his claim for appropriate

default damages. Second, Mr. Obeidallah filed another Status Report, ECF No. 45, recounting relevant events since October 1, 2018, and reiterating his request for leave to supplement the Motion for Default Judgment, ECF No. 44, on or before February 15, 2019. Third, Mr. Obeidallah filed a Motion for Additional Discovery in Aid of Default Judgment, ECF No. 45. In that Motion, Mr. Obeidallah sought leave to take limited discovery in aid of establishing a sum-certain of default judgment damages against the Defendants. *Id.* at 1. Specifically, based on information that Mr. Obeidallah gleaned from Greg Anglin's deposition on October 31, 2018, Mr. Obeidallah sought to serve subpoenas seeking documents regarding: (1) a bank account in the name of "Andrew Anglin" where Greg Anglin would deposit contributions from the *Daily Stormer*'s readership; (2) a bank account owned by Greg Anglin where Greg Anglin would deposit, among other things, contributions in U.S. and foreign currency from the *Daily Stormer*'s readership; and (3) a bank account owned by Greg Anglin from which Greg Anglin had written a large check to Defendant Anglin, allegedly for the purpose of paying back an interest-free loan he had taken from Defendant Anglin in the form of *Daily Stormer* contributions. *Id.* at 4-5.

On December 21, 2018, the Court issued an Opinion and Order, ECF No. 47, granting in part and denying in part Mr. Obeidallah's Motion for Additional Discovery in Aid of Default Judgment, ECF No. 45. The Court authorized Mr. Obeidallah to serve the proposed subpoena on Bank 1. Op. & Ord. 12, ECF No. 47.

Mr. Obeidallah subsequently served Bank 1 with the subpoena, and received its production of responsive documents on February 15, 2019. That same day, Mr. Obeidallah file a Motion to Extend Time, ECF No. 53, seeking a one-week extension to supplement the previously filed Motion for Default Judgment, ECF No. 44, on the issue of appropriate damages. On February 19, 2019, the Court issued an Order granting the requested extension. ECF No. 54.

On February 22, 2019, Mr. Obeidallah filed a Supplement to Plaintiff's Motion for Default Judgment Against Defendants Andrew B. Anglin and Moonbase Holdings, LLC, ECF No. 55. The supplement, as well as the documentary evidence attached to it, were intended to support Mr. Obeidallah's request for default damages. *Id.*

On May 1, 2019, the Court issued an Opinion and Order, ECF No. 63, granting in part and denying in part Mr. Obeidallah's Motion for Default Judgment, ECF No. 44, and the Supplement, ECF No. 55, thereto. The Court "conclude[d] that Obeidallah has adequately stated his claims and is entitled to monetary relief," but further stated that "[b]ecause Obeidallah's evidence does not provide definitive figures of his injuries, . . . the Court will hold an evidentiary hearing to determine the proper amount of damages." Op. & Ord. 4, ECF No. 63. The Court scheduled the hearing for June 12, 2019. *See* Notice of Hr'g, ECF No. 64.

Mr. Obeidallah and his counsel of record appeared before the Court on June 12, 2019 for the scheduled evidentiary hearing. At that hearing, Mr. Obeidallah testified, as did Greg Anglin and John Bambenek, an expert witness whom Mr. Obeidallah had retained to provide testimony regarding Defendant Anglin's cryptocurrency assets and deposits into his bank account. At the conclusion of the hearing, the Court issued an order from the bench granting Mr. Obeidallah all relief sought for Defendants' tortious conduct.

On June 13, 2019, the Court issued an Order memorializing its earlier ruling and granting "Obeidallah's request for monetary relief against Defendants, jointly and severally, as follows": (1) $470,000 in economic damages; (2) $350,000 in non-economic damages; (3) $3.28 million in punitive damages; (4) a permanent injunction; and (5) attorneys' fees and costs. Ord. 1-2, ECF No. 74.

## III.  REASONABLENESS OF ATTORNEYS' FEES

Mr. Obeidallah respectfully requests a total award of $189,819.50 in attorneys' fees, costs, and expenses incurred in association with litigating this matter and submitting this Motion.  A federal court exercising diversity jurisdiction over state law claims should apply state law in determining the fee award.  *See, e.g.*, *Williamson v. Rexam Beverage Can Co.*, No. 3:06-CV-225, 2007 WL 4270601, at *2 (S.D. Ohio Nov. 30, 2007) (applying Ohio law to determine reasonableness of attorneys' fees in the context of Ohio state law trade secret claim); *Cooley v. Lincoln Elec. Co.*, 776 F. Supp. 2d 511, 556 (N.D. Ohio 2011) ("[E]very federal appellate court agrees that, [i]n diversity cases such as this one, state law governs the award of attorneys' fees." (citation omitted)).

"The fee inquiry can be messy and complicated"; therefore, courts may use "any piece of relevant information that might inform whether or not the time and money expended qualify as reasonable."  *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, No. 2:08-CV-390, 2014 WL 12652324, at *15 (S.D. Ohio Mar. 4, 2014).  "The determination of what evidence will be heard by the trial court is left to the discretion of the trial court itself," but in any case the evidence must allow the trial court to reach a "reasonable" award.  *Hardy Indus. Techs., LLC v. BJB LLC*, No. 1:12-CV-3097, 2016 WL 7325152, at *8 (N.D. Ohio Dec. 16, 2016).

In calculating fees under Ohio law, "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Bittner v. Tri-Cty. Toyota, Inc.*, 569 N.E.2d 464, 466 (Ohio 1991); *see also Braun v. Ultimate Jetcharters, Inc.*, No. 5:12-CV-1635, 2014 WL 3749418, at *13 (N.D. Ohio July 30, 2014) (citing *Bittner*, 569 N.E.2d at 464, in awarding fees as part of punitive damages for state law retaliation claim).  "This product has come to be known as the 'lodestar.'"  *Id.* (citing *Garner v. Cuyahoga Cty. Juvenile Court*, 554 F.3d 624, 642 (6th Cir. 2009)).  After calculating the lodestar, "the court may modify

the amount by applying the factors listed in Ohio Rule of Professional Conduct 1.5(a)." *Id.* (listing ten factors, discussed *infra*).

Here, an award of $188,419.56 in attorneys' fees is eminently reasonable in view of the hours expended, applicable billing rates, and the result achieved through this litigation.

### A. Reasonableness of Hours Expended

In assessing what hours are reasonably expended, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Libertarian Party of Ohio v. Husted*, No. 2:11-CV-722, 2013 WL 4833033, at *3 (S.D. Ohio Sept. 11, 2013). "[W]here the plaintiff's claims for relief involve common facts or related legal theories, such that much of counsel's time will have been devoted generally to the litigation as a whole, the court should focus on the significance of the overall relief obtained by plaintiff in relation to the hours reasonably expended on the litigation." *Imwalle v. Reliance Med. Prod., Inc.*, 515 F.3d 531, 552 (6th Cir. 2008). The type of evidence which is sufficient to show the reasonableness of hours expended is a matter of the Court's discretion, but courts have commonly taken into consideration: (1) testimony, affidavits, or other sworn evidence, *Hardy*, 2016 WL 7325152, at *8; (2) summaries explaining how the hours were expended, *Kendall Holdings,* 2014 WL 12652324, at *13; and (3) other documentation sufficient to distinguish time actually expended from that reasonably expended, *Braun*, 2014 WL 3749418, at *15.

In support of his request for attorneys' fees and costs, Mr. Obeidallah has submitted charts reflecting the hours expended in this Action and the purpose for those hours. First, Latham has submitted a chart seeking attorneys' fees based on the expenditure of 466.9 hours in relation to this Action. *See* Ex. 1-A, Latham Adj. *Pro Forma.* The bullets set forth below describe, in very general terms, the work performed by Latham since the Defamatory Article's publication on June 1, 2017:

- <u>June 10, 2017 to August 15, 2017 (60.6 Hours)</u>:  Research and draft a cease-and-desist letter, which was transmitted to Defendant Andrew Anglin; research and draft the Complaint, and assemble exhibits in support of the same; research service of process; confer internally and with co-counsel regarding the same.

- <u>August 16, 2017 to October 23, 2017 (41.0 Hours)</u>:  Research service of process; coordinate with process server in effort to effectuate in-person service on Defendants; research discovery in aid of service of process; research and draft motion for leave to conduct limited discovery in aid of service; confer internally and with co-counsel regarding the same.

- <u>October 24, 2017 to December 22, 2017 (67.3 Hours)</u>:  Research and coordinate alternative means to effectuate service on Defendants (*e.g.*, certified mail; Ohio Secretary of State); draft subpoenas *duces tecum* and *ad testificum* in aid of request for pre-service discovery; review and analyze Magistrate Judge Deavers' Order denying initial request for pre-service discovery without prejudice; draft and research renewed motion for pre-service discovery based on Magistrate Judge Deavers' Order; confer internally and with co-counsel regarding the same.

- <u>December 23, 2017 to March 26, 2018 (70.2 Hours)</u>:  Research and draft memorandum regarding entry of default and default judgment; research and draft motion for service of Defendant Anglin by publication; research and draft motion for default judgment; research and draft motion for discovery in aid of default judgment against Defendant Moonbase; draft letter to clerk regarding service of process; draft motions for extension of time to effectuate service of process; confer internally and with co-counsel regarding the same.

- <u>March 27, 2018 to July 3, 2018 (95.8 Hours)</u>:  Draft and research notice of supplemental authority; draft and edit motion for extension of time to effectuate service of process; review and analyze Magistrate Judge Deavers' Opinion and Order denying renewed motion for leave to conduct limited discovery in aid of service; draft and edit renewed motion for pre-service discovery and subpoenas based on Magistrate Judge Deavers' Opinion and Order; research and draft motion for leave to effectuate service of Defendant Anglin by email; draft and edit communications to Defendants regarding service of process; draft request for entry of default; research quantification of damages in analogous cases; confer internally and with co-counsel regarding the same.

- <u>July 4, 2018 to November 16, 2018 (173.7 Hours)</u>:  Research quantification of damages in analogous cases; research and confer with potential damages experts; research and coordinate efforts to effectuate service of non-party deposition subpoena on Greg Anglin and Zappitelli CPA, Inc.; prepare for and attend Greg Anglin's deposition; confer with Zappitelli CPA, Inc. regarding declarations as substitute for deposition testimony; research and draft motion for default judgment addressing issue of liability; research and draft status report; research and draft motion for additional discovery in aid of default judgment based on facts discovered through Greg Anglin's deposition testimony; confer internally and with co-counsel regarding the same.

- <u>November 17, 2018 to May 1, 2019 (129.3 Hours):</u>  Research quantification of damages in analogous cases; draft motion for default judgment regarding appropriate damages; effectuate service of subpoena on third-party financial institution; review and analyze records produced in accordance with the same; confer with Dean Obeidallah regarding declaration in support of motion for default judgment; confer internally and with co-counsel regarding the same.

- <u>May 2, 2019 to June 12, 2019 (180.7 Hours):</u>  Research and draft motion to utilize Greg Anglin's deposition testimony at evidentiary hearing; coordinate service of hearing subpoena; research and draft responses to potential hearsay and authentication objections; research and draft outlines for examination of Dean Obeidallah, Greg Anglin, and John Bambenek at evidentiary hearing; confer internally and with co-counsel regarding the same.

*See generally* Ex. 1-A, Latham Adj. *Pro Forma.*

Mr. Obeidallah notes that Latham attorneys and support staff spent over 2,000 hours in relation to this Action.  Mr. Obeidallah, however, only seeks reimbursement for less than 25% (466.9 hours) of the total time expended by Latham.  Although Mr. Obeidallah is confident that the totality of those hours would satisfy Ohio's reasonableness standard, he has purposefully excluded from the request: (1) any time expended by Latham's support staff; (2) most time billed exclusively for purpose of internal conferences among Latham attorneys and/or co-counsel; and (3) time which, due to Defendants' avoidance of service, required Latham attorneys to coordinate matters that did not primarily concern legal research and analysis.

In addition to the aforementioned hours, Chandra Law has also attached a detailed invoice reflecting its expenditure of 86.7 hours ($38,863.50) litigating this matter and 1.3 hours ($1,180.00) in preparing this motion.  *See* Ex. 2-3, Chandra Invoice.  Chandra Law has also submitted a declaration authored by Subodh Chandra, Chandra Law's founding and managing partner, in support of this Motion.  As reflected in Mr. Chandra's declaration, Chandra Law has excluded from its request much of the work it performed.  The remaining attorneys' fees requested primarily reflect the Mr. Obeidallah's efforts to comply with additional requirements (*e.g.,* for service) compelled by the Court in light of Defendant Anglin's avoidance of service to ensure the fairness of the proceeding.

**B.**     **Reasonableness of Billing Rates**

"A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Braun*, 2014 WL 3749418, at *15.  "In determining a reasonable hourly rate, the Court uses the prevailing market rate as a guideline: the rate that lawyers of comparable skill and experience can reasonably expect to command within a court's venue." *Kendall Holdings*, 2014 WL 12652324, at *15.  In evaluating Ohio market rates, courts have drawn on the 1983 Rubin Committee rates, with a 4% annual cost-of-living adjustment.  *See, e.g.*, *Linneman v. Vita-Mix Corp.*, No. 15-CV-748, 2019 WL 2603567, at *13 (S.D. Ohio June 25, 2019) ("Judges in the Southern District of Ohio often refer to the 1983 Rubin Committee rates and apply a 4% annual cost-of-living allowance to measure the reasonableness of fees requested."); *Hunter v. Hamilton Cty. Bd. of Elections*, No. 1:10-CV-820, 2013 WL 5467751, at *17 (S.D. Ohio Sept. 30, 2013) (finding Rubin Committee rates reflected market value in the Southern District of Ohio).  However, because "the practice of law has become an increasingly national practice," courts may also "consider the nature of the case and attorneys involved in assessing the reasonableness of attorney hourly rates." *Palombaro v. Emery Fed. Credit Union*, No. 1:15-CV-792, 2018 WL 5312687, at *10 (S.D. Ohio Oct. 25, 2018).  As a result, courts have varied upward from the Rubin Committee's rates in light of "the nature of the case and attorneys involved." *Linneman*, 2019 WL 2603567, at *14; *see also Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan*, 995 F. Supp. 2d 835, 845 (S.D. Ohio 2014) (collecting cases).

The following table represents the Rubin Committee rates and provides a point of reference for determining the current market rates.

| Table # 1: Market Rates in Ohio (Rubin Committee[1]) | | |
|---|---|---|
| Years of Experience | Pre-Adjusted Rate | Adjusted Rate (2019) |
| Paralegals | $37.91 | $155.58 |
| Law Clerks | $23.96 | $98.33 |
| 1–2 | $61.77 | $253.50 |
| 2–4 | $71.62 | $293.92 |
| 4–5 | $82.81 | $339.85 |
| 6–10 | $96.39 | $395.58 |
| 11–20 | $113.43 | $465.51 |
| 21 or more | $128.34 | $526.70 |

As noted above, "the court may modify the amount by applying the factors listed in Ohio Rule of Professional Conduct 1.5(a)." *Braun*, 2014 WL 3749418, at *13; *see also* Oh. R. Prof'l Conduct 1.5(a) (listing eight factors).

Mr. Obeidallah seeks application of the Rubin Committee's rates in this case with respect to Latham, which, as explained below, is well supported by the factors applicable to this Action:

- <u>Time and Labor Required; Novelty and Difficulty:</u>  Although the Action was resolved on a motion for default judgment, it presented numerous novel and difficult questions of law. At the outset, Mr. Obeidallah's counsel extensively researched and considered the First Amendment defenses raised by Defendant Anglin in the *Gersh v. Anglin*, 9:17-CV-00050-DLC-JCL (D. Mont.) action.   Mr. Obeidallah's counsel also spent extensive time researching atypical questions of law and procedure relating to the effectuation of service. Finally, due to Defendant Anglin's avoidance of service, which effectively denied Mr. Obeidallah discovery on numerous issues, Mr. Obeidallah spent significant time collecting evidence and developing theories to quantify Mr. Obeidallah's damages.

---

[1] *See Hunter*, 2013 WL 5467751, at *17 n.9 (setting forth the following categories and hourly rates for 1983: "Paralegals—$37.91/hour; Law Clerks—$23.96/hour; Young Associates (2 years of experience or less)—$61.77/hour; Intermediate Associates (2 to 4 years of experience)—$71.62/hour; Senior Associates (4 to 5 years of experience)—$82.81/hour; Young Partners (6 to 10 years of experience)—$96.39/hour; Intermediate Partners (11 to 20 years of experience)—$113.43/hour; and Senior Partners (21 or more years of experience)—$128.34/hour"). The Adjusted Rate reflects an annual cost-of-living adjustment of 4%. *Id.* at *17.

- Experience, Reputation, and Ability of Lawyers:  Mr. Obeidallah respectfully submits that the experience, reputation, and ability of the lawyers at Latham and Chandra Law who worked on this Action strongly support the reasonableness of the adjusted Rubin Committee's rates.

  The Latham team was led by Mr. Abid R. Qureshi, an accomplished trial attorney who previously served as the Chair of Latham's Pro Bono Committee and Co-Chair of Latham's Litigation and Trial Department in Washington, D.C.  He was recognized in Chambers USA 2018 for Litigation: General Commercial and is listed as a leading lawyer in America by *Lawdragon 500* 2017.  Mr. Qureshi was also recognized in the 2014 Washington, D.C. Super Lawyers list, which recognizes individuals who have distinguished themselves in their legal practice.  In September 2016, President Obama nominated Mr. Qureshi to fill a vacancy on the United States District Court for the District of Columbia.

  Mr. Qureshi supervised the Latham team since the matter's inception in mid-June 2017, which included approximately eleven (11) attorneys and clerks, as well as forty-three (43) administrative staff.  The other attorneys who worked on this matter are all accomplished and promising litigators who attended well-regarded law schools, and many have served as federal clerks and/or obtained substantive work experience in legal fields before law school.

Chandra Law seeks slightly reduced rates for its personnel.  These rates are slightly less than the Rubin Committee's rates, but are consistent with those charged by Chandra Law to its fee-paying clients.

### C.     Fee Request

In light of the foregoing, Mr. Obeidallah submits the following lodestar calculation:

| Table # 2: Total Fee Request | | | | |
|---|---|---|---|---|
| **Attorney** | **Date of First Bar Admittance** | **Hours (Adjusted)** | **Fee** | **Amount Requested** |
| Abid Qureshi | 10/09/1997 | 78.3 | $526.70 | $41,240.61 |
| Briana Clark | Clerk | 8.3 | $98.33 | $816.14 |
| Cherish Drain | 12/09/2016 | 28.8 | $293.92 | $8,464.90 |
| Chris Fawal | 10/19/2011 | 19.5 | $339.85 | $6,627.08 |
| David Zucker | 12/09/2015 | 55.3 | $293.92 | $16,253.78 |

| Jenny Wang | Clerk | 22.3 | $253.50 | $2,192.76 |
|---|---|---|---|---|
| Maureen Long | 12/09/2016 | 41.6 | $253.50 | $10,545.60 |
| Robyn Greenberg | 01/01/2010 | 43.5 | $395.58 | $17,207.73 |
| Ryan Grover | 11/18/2013 | 52.2 | $293.92 | $15,342.62 |
| Tyler Williams | 12/04/2017 | 117.1 | $253.50 | $29,684.85 |
| Subodh Chandra | 1995 | 25.1 | $500.00 | $12,550.00 |
| Donald Screen | 1990 | 44.0 | $500.00 | $22,000.00 |
| S. Gupta | 2005 | 1.8 | $350.00 | $630.00 |
| P. Kabat | 2013 | 0.6 | $335.00 | $201.00 |
| P. Haney | 2014 | 0.1 | $295.00 | $29.50 |
| M. Brown | 2017 | 17.2 | $265.00 | $4,558.00 |
| Law Clerk/Paralegal | N/A | 0.5 | $150.00 | $75.00 |
| **Total** | **N/A** | **556.2** | **N/A** | **$188,419.57** |

*See* Ex. 1, C. Drain Decl.; Ex. 1-A, Latham Adj. *Pro Forma*; Ex. 2, S. Chandra Decl.; Ex. 2-3, Chandra Law Invoice.

## IV.    AWARD OF COSTS

In addition to the aforementioned attorneys' fees, Mr. Obeidallah requests an award of costs pursuant to Federal Rule of Civil Procedure 54(d)(1) and Ohio law.  Under 28 U.S.C. § 1920, the Court may tax as costs the following items:

(1) Fees of the clerk and marshal;
(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5) Docket fees under section 1923 of this title[.]

28 U.S.C. § 1920. "It is incumbent upon the unsuccessful party to show circumstances sufficient to overcome the presumption favoring an award of costs to the prevailing party." *O'Donnell v. Genzyme Corp.*, No. 14-CV-1767, 2016 WL 1165156, at *1 (N.D. Ohio Mar. 25, 2016); *see also Soberay Mach. Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 770 (6th Cir. 1999) (recognizing "a presumption in favor of awarding costs"). Under Ohio law, miscellaneous expenses "necessary and reasonable to the litigation" are also recoverable. *See Compton v. Kolvoord*, 992 F.2d 1216 (6th Cir. 1993) (Table).

"Section 1920 expressly permits the taxing as costs those expenses associated with depositions regardless of whether they are actually used at trial." *Swartz v. Di Carlo*, No. 12-CV-3112, 2019 WL 2559443, at *3 (June 20, 2019) (noting that the Circuit permits taxing as costs "video deposition costs" and "stenographic transcripts" and that costs associated with copying, including the cost of binders and tabs, were reasonable "in order to properly present evidence").

Mr. Obeidallah respectfully requests $573.92 in costs, which are reflected on the invoices submitted by Chandra Law. *See* Ex. 2-3, Chandra Expenses.

## V.    POST-JUDGMENT INTEREST

Mr. Obeidallah also requests an award of post-judgment interest pursuant to 28 U.S.C. § 1961. The purpose of post-judgment interest is "to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the [judgment] and the payment by the defendant." *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990). This Court should award Mr. Obeidallah post-judgment interest from the date of its order. *See Swartz*, 2019 WL 2559443, at *1 (awarding post-judgment interest in a defamation action under Ohio law).

## VI.    CONCLUSION

For reasons set forth above, Mr. Obeidallah respectfully requests that the Court award the total sum of $188,993.48, consisting of: (1) attorneys' fees incurred litigating this matter ($187,239.56); (2) attorneys' fees incurred preparing this motion ($1,180.00); (3) costs ($573.92); and (4) post-judgment interest.

Dated: July 17, 2019

Respectfully submitted,

/s/ *Subodh Chandra  (Trial Counsel)*

Abid R. Qureshi (D.C. Bar No. 459227)
Robyn J. Greenberg (D.C. Bar No. 1022302)
Cherish A. Drain[2] (PA Bar No. 323101)
Tyler S. Williams (D.C. Bar No. 888242297)
LATHAM & WATKINS LLP
555 Eleventh Street NW, Suite 1000
Washington, D.C. 20004-1304
Phone: 202.637.2200 Fx: 202.637.2201
abid.qureshi@lw.com
robyn.greenberg@lw.com
cherish.drain@lw.com
tyler.williams@lw.com

Subodh Chandra (Ohio Bar No. 0069233)
Donald Screen (Ohio Bar No. 0044070)
THE CHANDRA LAW FIRM LLC
1265 W. 6th St., Suite 400
Cleveland, OH 44113-1326
Phone: 216.578.1700 Fx: 216.578.1800
Subodh.Chandra@ChandraLaw.com
Donald.Screen@ChandraLaw.com

*Attorneys for Plaintiff Dean Obeidallah*

Sirine Shebaya (D.C. Bar No. 1019748)
Juvaria Khan (N.Y. Bar No. 5027461)
MUSLIM ADVOCATES
P.O. Box 66408
Washington, D.C. 20035
Phone: 202.897.1894 Fx: 202.508.1007
sirine@muslimadvocates.org
juvaria@muslimadvocates.org

*Admitted pro hac vice*

---

[2]    Not licensed to practice in the District of Columbia.  All work supervised by a member of the D.C. Bar.